U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 DEC 28 AM 11: 37

CLERK
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

Donna Browe, the Estate of Beverly
Burgess, Tyler Burgess,
Bonnie Jamieson, Philip Jordan,
and Lucille Launderville

                Plaintiffs,

-against-

CTC Corporation; and
Bruce Laumeister

                Defendants.

COMPLAINT
AND DEMAND FOR
JURY TRIAL

Civil Action No. _____

2:15-cv-267

## NATURE OF THE ACTION

This is an action arising under the Employment Retirement Income Security Act of 1974, as amended (ERISA), for equitable relief and damages based on Defendants' wrongful denial of benefits to the Plaintiffs, participants and beneficiaries of one "CTC Deferred Compensation Plan" (the Plan). Rather than paying Plaintiffs the benefits they were and are owed under the Plan, Defendants CTC Corporation and Laumeister have, instead, raided the funds they were charged with holding in trust, and spent the money for their own purposes. These Defendants—fiduciaries under the meaning of ERISA— violated their statutorily prescribed duties by perpetrating this unlawful scheme. Defendants have also violated ERISA by, *inter alia*, maintaining a Plan with multiple

Page 1 of 19

illegal terms, failing to provide accountings to Plaintiffs under the Plan as required by law, and paying benefits to certain other Plan participants, but not to the Plaintiffs (ERISA does not permit cherry picking favored employees to receive benefits, while forcing others to go without).

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1337.

2. Venue is proper in the District of Vermont under 28 U.S.C. § 1391(b) & (c), since the Defendants are subject to personal jurisdiction in this state and therefore residents for purposes of venue. Venue is also proper under 28 U.S.C. § 1391(g), since a substantial part of the events giving rise to Plaintiffs' claims occurred here. Venue is proper pursuant to 29 U.S.C. § 1132(e) because the Plan is administered in this District.

## PARTIES

3. Plaintiff Donna Browe is, and has been at all relevant times, a citizen of Vermont and a resident of Bennington County.

4. Ms. Browe is a participant of the Plan within the meaning of ERISA, 29 U.S.C. § 1002(7).

5. Ms. Browe was employed at Defendant CTC from a period of 1980, when CTC first opened for business, until on or about November 12, 2012.

6. Beverly Burgess, now deceased, was at all times relevant a citizen of

Page 2 of 19

Vermont and a resident of Bennington County.

7. Ms. Burgess was, at all relevant times, a participant of the Plan within the meaning of ERISA, 29 U.S.C. § 1002(7).

8. Ms. Burgess was employed at Defendant CTC from a period of 1980, when CTC first opened for business, until on or about November 2004, the month that she died.

9. The Estate of Beverly Burgess is administered by Beverly's daughter, Plaintiff Bonnie Jamieson, and was duly formed in the State of Vermont, Bennington County Probate Court, Docket No. P-48-04 BnT.

10. The Estate of Beverly Burgess is a beneficiary of the Plan within the meaning of ERISA, 29 U.S.C. § 1002(8).

11. Plaintiff Tyler Burgess is Beverly's son. Mr. Burgess is, and has been at all relevant times, a citizen of Vermont and a resident of Bennington County.

12. Mr. Burgess is a beneficiary of the Plan within the meaning of ERISA, 29 U.S.C. § 1002(8).

13. Mr. Burgess was named a beneficiary by his mother, Beverly Burgess.

14. Ms. Jamieson is, and has been at all relevant times, a citizen of Vermont and a resident of Bennington County.

15. Ms. Jamieson is a beneficiary of the Plan within the meaning of ERISA, 29 U.S.C. § 1002(8).

16. Ms. Jamieson was named a beneficiary by her mother, Beverly Burgess.

17. Plaintiff Philip Jordan is, and has been at all relevant times, a citizen of Vermont and a resident of Bennington County.

18. Mr. Jordan is a participant of the Plan within the meaning of ERISA, 29 U.S.C. § 1002(7).

19. Mr. Jordan was employed at Defendant CTC from the period of on or about 1980, when Defendant CTC first opened for business, until on or about October 1986; and then from the period of on or about October 1988 to January 4, 2008.

20. Plaintiff Lucille Launderville is, and has been at all relevant times, a citizen of Vermont and a resident of Bennington County.

21. Ms. Launderville is a participant of the Plan within the meaning of ERISA, 29 U.S.C. § 1002(7).

22. Ms. Launderville was employed at Defendant CTC from a period of on or about 1980, when Defendant CTC first opened for business, until March 14, 2008.

23. Defendant CTC Corporation is a Vermont corporation, with a principal place of business in Bennington, Vermont, in Bennington County, Vermont.

24. Upon information and belief, Defendant CTC operated a wholesale and retail photo-finishing facility and retail store, CTC Vermont Color Photo Lab, on Benmont Avenue in Bennington, Vermont from on or about 1980 to 2014.

25. While it was operational, Defendant CTC serviced both local and regional

customers, as well as mail-order customers. CTC, and its affiliated corporate entities, also operated over 20 "brick-and-mortar" one-hour photo labs in Vermont, Connecticut, Massachusetts, and New York.

**26.** According to the Vermont Secretary of State Corporations Division, Defendant CTC dissolved as of October 6, 2014.

**27.** Defendant CTC, at all relevant times, exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control over the management or disposition of the Plan's assets, had discretionary authority or responsibility in the administration of the Plan, and therefore was a fiduciary, within the meaning of 29 U.S.C. § 1002(21)(A), to the Plan.

**28.** Defendant CTC is an employer within the meaning of ERISA, 29 U.S.C. § 1002(5).

**29.** Defendant Laumeister is an individual residing in Bennington, Vermont, in Bennington County, Vermont.

**30.** Defendant Laumeister is the CEO, President, sole shareholder, and Registered Agent of Defendant CTC.

**31.** Defendant Laumeister, at all relevant times, exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control over the management or disposition of the Plan's assets, had discretionary authority or responsibility in the administration of the Plan, and therefore

was a fiduciary, within the meaning of 29 U.S.C. § 1002(21)(A), to the Plan.

**32.** Defendant Laumeister is an employer within the meaning of ERISA, 29 U.S.C. § 1002(5).

## STATEMENT OF FACTS

### THE WRITTEN AGREEMENTS

**33.** The CTC Deferred Compensation Plan is a plan or employee benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(3).

**34.** The Plan is operated pursuant to the terms of certain written agreements.

**35.** Upon information and belief, the first written agreement governing the Plan is dated December 10, 1990 (1990 Agreement).

**36.** Upon information and belief, the most recent written agreement is dated August 20, 1997 (Agreement).

**37.** Participants, including the Plaintiff participants, were asked to complete "Application" forms to participate in the Plan as defined by the Agreement. The application form for the Agreement provides that "I . . . . understand that this plan supersedes any and all deferred compensation plan documents provided by CTC Corporation." Accordingly, Defendants have taken the position that the Agreement supersedes all other agreements, including the 1990 Agreement.

**38.** The Agreement provides:

    6.    BENEFITS UNDER PLAN - The Plan provides for alternative types

Page 6 of 19

of payment as follows:

> Deferred Compensation Payments, payable upon the happening of any of the following events:
>
> 1) Retirement of the Participant [defined as "withdrawal from full time active employment at or after age 65[,]" at Agreement ¶ 3, c.]
>
> 2) Death Benefits, payable when a Participant dies before Deferred Compensation payments start.
>
>> a) death benefit equals market value of a participant's account, less any insurance payment provided under 2b.
>>
>> b) employer has also funded, group term life insurance equal to one time participant's annual salary, for which the participant has named a beneficiary. (This benefit is in addition to the one time salary provided with the participant's group insurance benefit package, and will be equal to one time the Participant's current annual salary.)
>
> . . . .
>
> Subject to all provisions hereof, the employer agrees to pay Deferred Compensation as follows:
>
>> In the event of normal, or postponed retirement, and in the event of disability, to the Participant so qualifying, payment for 120 consecutive months. . . . A monthly payout amount will be computed, subject to periodic review and adjustment based on the rate of growth, to plan exhaustion of the Participant's fund at the final, 120th, payment.
>
> . . . .

WITTEN, WOOLMINGTON, CAMPBELL, & BERNAL, P.C.
BENNINGTON and MANCHESTER, VERMONT

(Agreement, at ¶ 6.)

39. The Agreement also provides that "[a] Participant may designate one or more beneficiaries, but any beneficiaries must be a member of his/her immediate family, that is spouse and or children under the age of twenty-one, of Participant." (Agreement, at ¶ 6.)

40. In the event of death benefits, the Agreement provides that such payments "will commence on the first day of the month following the Participant's death and be payable for 120 consecutive months, or lump sum at the option of the beneficiary." (Agreement, at ¶ 6.)

41. The Agreement designates the Plan as "an employer paid fund" and provides that "Employer agrees to contribute funds which will accumulate and be payable in accordance with Section 6." (Agreement, at ¶¶ 2 & 5.)

42. The Agreement nowhere states the amount that the "Employer" will contribute, or when such contributions will be made.

43. The Agreement also provides that "The Employer will advise the Participant of the actual cash value of their account annually, and at the time of retirement." (Agreement, at ¶ 6.)

### DEFENDANTS' FAILURE TO ADHERE TO PLAN TERMS AND ERISA MANDATES

44. The Defendants have failed to provide the Plaintiffs with annual

Page 8 of 19

accountings, despite their obligation under the Plan to do so. Nonetheless, Laumeister periodically provided the Participants with account statements purporting to show the value of the Plan as of certain dates.

45. One such statement shows the Plan value as $355,071.84, as of June 23, 2000. According to that statement, the Participants' funds were held jointly (i.e., were not maintained in separate trust accounts for the benefit of each participant) and were characterized by the Defendants as comprising a "Mutual Discovery Fund."

46. Another statement, purporting to show the value of the Plan as of March 18, 1997, projected "total payouts" to the Participants of $3,034,470.00, including $169,920 to Beverly Burgess; $269,280.00 to Philip Jordan; $215,280 to Donna Browe; and $592,470.00 to Lucille Launderville.

47. During a conversation between Laumeister and Plaintiff Launderville on the afternoon of April 24, 2006, Laumeister admitted to Launderville that he had been using Plan assets to pay for CTC's business expenses, including to pay its creditors. During that conversation, Laumeister told Launderville that whereas the Plan had recently been valued at $263,490.40, based on his appropriation of Plan assets, the Plan's value had fallen to $136,745.00. Laumeister told Launderville not to worry and that he would "make up the difference, strictly between you and me."

48. Soon after the time of the April 24, 2006 meeting, Laumeister admitted during a company meeting, with Launderville and multiple other employees present,

WITTEN, WOOLMINGTON, CAMPBELL, & BERNAL, P.C.
BENNINGTON and MANCHESTER, VERMONT

that he had been raiding the Plan's assets for CTC's expenditures, and attributed this course of action to the difficult economic climate for print-film developers in light of the advent of digital photography.

49.  In an email of January 1, 2008 from Laumeister to Launderville, Laumeister wrote: "The potential pension amounts for you, Donna and Phil will be part of my future plans. I will, shortly, set up an increased fund with Mission Management and Trust that will fund the pay out of all of your pensionover [sic] the 10 years (as specified in the agreement) at your retirement or if your employment has to terminate earlier, with my agreement, at that time."

50.  In an email of February 24, 2008 from Laumeister to Launderville, Laumeister wrote: "My intention is exactly what I showed you before. I am putting [sic] in my will and trust and instructing Mission Trust to pay your d.c. when you are 65 or when I check out. Donna's will be in the same instruction."

51.  In or about October 2014 at a meeting in Jensen's Restaurant in Bennington, Laumeister told Plaintiffs Launderville and Browe that the CTC business was failing, but reiterated that he would personally fund the Plan benefits that had been promised to them, but, for the first time, made that payment conditional on his ability to first sell or lease certain real estate.

52.  At the October 2014 meeting, Laumeister did not specify the amount of the promised Plan benefits he expected to be able to personally fund.

Page 10 of 19

WITTEN, WOOLMINGTON, CAMPBELL, & BERNAL, P.C.
BENNINGTON and MANCHESTER, VERMONT

53. In an email of April 5, 2015 from Laumeister to Launderville, Laumeister reiterated that he had "promise[d] to personally fulfill your deferred comp, though it was a CTC responsibility." In the same email, Laumeister wrote again that any payment of "deferred comp" would be contingent on his leasing or selling certain real property.

54. Despite the fact that Beverly Burgess died on November 29, 2004 and that benefits are payable pursuant to the terms of the Plan on the first date of the next month following her death, neither her Estate nor her named beneficiaries, Tyler Burgess and Bonnie Jamieson, have received any benefits under the Plan.

55. Soon after Beverly Burgess's death, Bonnie Jamieson recalls going to the CTC offices in Bennington and asking Launderville whether she and her brother (Tyler Burgess), or her mother's estate, would be entitled to any benefits or payments in connection with her mother's employment with Defendants. Launderville told Jamieson that no such benefits or payments were available, which statement Launderville then believed to be true and correct, based on the information that had been provided to her by the Defendants.

56. Neither the Estate, nor Tyler Burgess, nor Bonnie Jamieson, were aware of their entitlement to receive Plan assets until they were contacted by Launderville in the fourth quarter of 2015, and Launderville communicated to them that they would, in fact, be entitled to Plan assets which had improperly been denied to them by Defendants.

57. Despite Laumeister's promises to personally fund deferred compensation

Page 11 of 19

payments for, at least, Plaintiffs Browe and Launderville, upon information and belief, Laumeister has taken no steps to fulfill these promises.

**58.** Despite the fact that Defendants have not paid any benefits to Ms. Burgess or her named beneficiaries, and despite the fact that Defendants have now disavowed any obligation to pay any deferred-compensation benefits, absent CTC and Laumeister's completion of certain real-estate transactions, other Plan participants, including Eileen Bliss, William Elliot, Hope Leonard, Don Loseby and Wayne Massari have received significant payments under the Plan.

**59.** Indicative of the lack of separation between CTC, Laumeister, and the Plan, an accounting reflecting these payments to Leonard, Loseby and Massari reflects certain "pymnts received from Bruce [Laumeister]" to these individuals.

## COUNT I - DENIAL OF BENEFITS

**60.** Plaintiffs incorporate the foregoing paragraphs by reference.

**61.** The refusal to provide Plaintiffs the CTC Plan benefits is a violation of ERISA, 29 U.S.C. § 1132(a)(1)(B).

**62.** As a result of this refusal, Plaintiffs (including Estate of Beverly Burgess, Tyler Burgess, and Bonnie Jamieson) have suffered a denial of benefits and seek to be awarded their benefits with interest and their reasonable attorneys' fees.

### COUNT II - DISAVOWAL OF OBLIGATION TO PROVIDE FUTURE BENEFITS - DECLARATORY JUDGMENT (28 U.S.C. §§ 2201 AND 2202)

63. Plaintiffs incorporate the foregoing paragraphs by reference.

64. Laumeister's disavowal of any obligation for the Defendants to provide Plan benefits, absent the completion of certain real-estate transactions, is a violation of ERISA, 29 U.S.C. § 1132(a)(1)(B). Additionally, Laumeister had provided no assurances of the extent to which he and CTC plan to honor their obligation to provide the Plaintiffs with Plan benefits, even if these real-estate transactions do eventually transpire.

65. Plaintiff Browe will turn 65 years old on October 6, 2016; Plaintiff Launderville will turn 65 years old on November 18, 2016; and Plaintiff Jordan will turn 65 on October 18, 2017, at which times each will become eligible to receive deferred compensation payments under the Plan.

66. If this Court does not enjoin the Defendants from further violations of ERISA, Plaintiffs will be further damaged as a result, in ways and amounts that cannot be accurately measured in terms of money, either as to extent or amount.

67. The Defendants have failed to comply with their obligations to Plaintiffs, despite demand for compliance, and thus, upon information and belief, unless this Court enjoins Defendants from violating ERISA, the Defendants will continue to fail to remit timely required contributions and reports, causing additional serious and irreparable harm, and endangering the payment of promised benefits from the Plan to

WITTEN, WOOLMINGTON, CAMPBELL, & BERNAL, P.C.
BENNINGTON and MANCHESTER, VERMONT

Plaintiffs.

68. The Defendants' continuing failure to comply with their obligations to Plaintiffs has reduced the corpus and income of the Plan, thereby jeopardizing the stability and soundness of the Plan as well as its ability to pay benefits therefrom.

69. Based on the foregoing instances of serious, substantial, and irreparable injury and damage, a mere money judgment is an inadequate remedy at law.

70. Unless this Court enjoins Defendants from breaching ERISA, and unless Defendants are compelled to remit all monies and reports that become due or are determined to be due to Plaintiffs, whether arising before or after commencement of this action, greater injury will be inflicted on Plaintiffs by denial of relief, than could possibly be inflicted on Defendants by granting such relief.

71. Based on the aforementioned conduct, Plaintiffs are entitled to an order to enforce their rights under the terms of the Plan and to clarify their rights to future benefits under the Plan, pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B) and 28 U.S.C. §§ 2201 and 2202.

### COUNT III - FIDUCIARY VIOLATIONS (WITHHOLDING PLAN ASSETS)

72. Plaintiffs incorporate the foregoing paragraphs by reference.

73. Pursuant to ERISA, 29 U.S.C. § 1004(a)(1)(A), fiduciaries must discharge their duties with respect to an ERISA covered plan "solely in the interests of the of the participants and beneficiaries" and "for the exclusive purpose of providing benefits" and

Page 14 of 19

"defraying reasonable administrative expenses."

74. At all relevant times Laumeister completely owned and controlled and dominated the affairs of CTC and carried on the business of CTC for his own personal ends.

75. At all relevant times Laumeister had managerial discretion over CTC, and made all decisions concerning payments by CTC.

76. At all relevant times Laumeister and CTC, while acting as Plan fiduciaries, determined not to pay the Plaintiffs any benefits under the Plan.

77. By Laumeister's own admission, while acting as Plan fiduciaries, Laumeister and CTC have commingled Plan assets with CTC's general assets, and have used such Plan assets to pay other creditors of CTC, rather than paying these Plan assets to Plaintiffs or holding them in trust to pay to Plaintiffs at the appropriate times.

78. By Laumeister's own admission, while acting as Plan fiduciaries, Laumeister and CTC have failed to see to the adequate funding of the Plan, in violation of their fiduciary obligation to do so.

79. By withholding plan assets, Laumeister and CTC received for their own use benefits which were rightfully assets of the Plaintiffs, in violation of ERISA, 29 U.S.C. § 1104(a)(1)(A), and violated their fiduciary obligations owed to Plaintiffs.

80. By withholding plan assets, Laumeister and CTC failed to abide by the documents and instruments governing the Plan in violation of ERISA, 29 U.S.C. §

Page 15 of 19

1104(a)(1)(D), and their fiduciary obligation owed to Plaintiffs.

81. Laumeister is individually and personally liable for the above-described violations of his fiduciary obligations owed to Plaintiffs under ERISA, 29 U.S.C. §1109(a).

82. By reason of the foregoing, Laumeister and CTC are liable, jointly and severally, to Plaintiffs for all diverted plan assets, which remain unpaid, as well as for all other damages permissible under ERISA, pursuant to ERISA, 29 U.S.C. § 1109(a), and their fiduciary obligations owed to Plaintiffs.

### COUNT IV - ADDITIONAL FIDUCIARY VIOLATIONS (ILLEGAL PLAN)

83. Plaintiffs incorporate the foregoing paragraphs by reference.

84. Plan fiduciaries owe a duty to ensure that plans are in compliance with ERISA.

85. The Agreement, pursuant to which the Plan was administrated, does not comply with ERISA in at least the following ways:

   a. The Plan provides that "[i]n the event that a Participant fails to continue funding the IRA, pursuant to this agreement, the Employer will terminate funding the plan on behalf of the Participant **and all benefits accrued will be forfeited to the Employer**." (Agreement, at ¶ 6.) (Violation of ERISA, 29 U.S.C. § 1103 ("the assets of a plan shall never inure to the benefit of any employer"); and

   b. The Plan provides that, absent death or disability of a Participant, benefits will only become payable upon a Participant retiring "at or after age 65." (Agreement, at ¶ 6.) (Violation of 29 U.S.C. § 1053[a] [setting forth minimum vesting requirements before retirement age during which time

WITTEN, WOOLMINGTON, CAMPBELL, & BERNAL, P.C.
BENNINGTON and MANCHESTER, VERMONT

# (removed)

certain specified percentages of one's benefits become nonforfeitable]).

86. By maintaining an illegal plan, Laumeister is individually and personally liable for the violations of ERISA described above, and for violation of his fiduciary obligations owed to Plaintiffs.

87. By reason of the foregoing, Laumeister and CTC are liable, jointly and severally, to Plaintiffs for all damages permissible under ERISA, pursuant to ERISA, 29 U.S.C. § 1109, and their fiduciary obligations owed to Plaintiffs.

## COUNT V FIDUCIARY VIOLATIONS (SELF DEALING)

88. Plaintiffs incorporate the foregoing paragraphs by reference.

89. Pursuant to ERISA, 29 U.S.C. § 1106(a)(1)(A) and (B), it is unlawful for fiduciaries to permit ERISA-covered plans to engage in certain transactions with parties in interest, including transactions that exchange property or extend credit. Absent an exemption, ERISA makes it unlawful for fiduciaries to deal with plan assets for their personal benefit. 29 U.S.C. § 1106(b)(1)-(3).

90. At all relevant times Laumeister and CTC were parties in interest with respect to the Plan within the meaning of ERISA, 29 U.S.C. § 1002(14).

91. By withholding Plan assets from the Plaintiffs, Laumeister and CTC dealt with Plan assets in their own interest and/or exchanged property or extended credit from Plan assets for their own use and benefit in violation of ERISA, 29 U.S.C. § 1106(a) and (b).

Page 17 of 19

92. By favoring certain other employees, and paying them Plan assets instead of the Plaintiffs, Laumeister has violated his duties as a Plan fiduciary to act "solely in the interest of the participants and beneficiaries" and has wrongfully withheld those distributed Plan assets from Plaintiffs.

93. By reason of the foregoing, Laumeister is individually and personally liable for the violations of ERISA described above, and for violation of his fiduciary obligations owed to Plaintiffs.

94. By reason of the foregoing, Laumeister and CTC are liable, jointly and severally, to Plaintiffs for all diverted plan assets, which remain unpaid, as well as for all other damages permissible under ERISA, pursuant to ERISA, 29 U.S.C. § 1109, and their fiduciary obligations owed to Plaintiffs.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court:

A. Enter judgment against the Defendants, jointly and severally, awarding damages for all unpaid Plan benefits, plus interest thereon from the time each such amount was due;

B. Enter judgment against Defendants CTC Corporation and Bruce Laumeister, jointly and severally, awarding damages based on their breaches of their fiduciary duties owed to the Plaintiffs;

C. Enter judgment enjoining and directing the Defendants, and each of them, to

Page 18 of 19

comply in all respects with the terms and conditions of the Plan, to pay Plan benefits in an amount to be determined at trial, and to supply all required information, in accordance with the Defendants' obligations under ERISA and the terms of the Plan;

**D.** Award Plaintiffs their reasonable attorneys' fees and costs, as authorized by ERISA;

**E.** Appoint a special master, pursuant to F.R.C.P. 53(a)(ii), for the purposes of performing an accounting of all Plan benefits due to Plaintiffs, and impose a constructive trust, in the event there is a disagreement as to the amounts reflected in the accounting, for the purpose of effectuating the parties' rights and obligations pursuant to the Plan; and

**F.** Grant such other relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Date: December 23, 2015

_____
Patrick J. Bernal, Esq.
Attorney for the Plaintiffs
Witten, Woolmington & Campbell, P.C.
4900 Main Street
P.O. Box 2748
Manchester Center, VT 05255
pjb@wittenetal.com
802-362-2560