UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2017 FEB 24  PM 12: 43

CLERK

BY _____
DEPUTY CLERK

DONNA BROWE, TYLER BURGESS,       )
BONNIE JAMIESON, PHILIP JORDAN,   )
LUCILLE LAUNDERVILLE, and         )
THE ESTATE OF BEVERLY BURGESS,    )
                                  )
        Plaintiffs,               )
                                  )
    v.                            )    Case No. 2:15-cv-267
                                  )
CTC CORPORATION and               )
BRUCE LAUMEISTER,                 )
                                  )
        Defendants.               )

**OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFFS' MOTION FOR LEAVE
TO FILE SECOND AMENDED COMPLAINT AND
GRANTING DEFENDANTS' MOTION TO STRIKE JURY DEMAND**
(Docs. 81 & 91)

This matter came before the court on the motion of Plaintiffs Donna Browe, Tyler
Burgess, Bonnie Jamieson, Philip Jordan, Lucille Launderville, and the Estate of Beverly
Burgess (collectively, "Plaintiffs") for leave to file a Second Amended Complaint. (Doc.
81.)

Plaintiffs assert that leave to amend should be granted because their proposed
amendments are timely under the court's scheduling order. Defendants CTC Corporation
("CTC") and Bruce Laumeister (collectively, "Defendants") oppose the proposed
amendments on the grounds of futility and prejudice. Defendants also move to strike
Plaintiffs' jury demand, contending that Plaintiffs have no right to a jury trial under the
Employment Retirement Income Security Act of 1974 ("ERISA").

Patrick J. Bernal, Esq. and John D. Stasny, Esq. represent Plaintiffs. A. Jay
Kenlan, Esq. represents Defendants.

## I.    Factual and Procedural Background.

On December 28, 2015, Plaintiffs filed a five-count Complaint, alleging that Defendants, jointly and severally, violated ERISA by wrongfully denying Plaintiffs and their beneficiaries benefits under CTC's deferred compensation benefit plan (the "Plan"). Plaintiffs demanded a jury trial. Defendants answered on March 31, 2016 and Plaintiffs filed their First Amended Complaint on April 4, 2016. Thereafter, Defendants moved to dismiss Plaintiffs' First Amended Complaint for failure to state a claim (Doc. 28). The court denied Defendants' motion to dismiss on August 8, 2016 (Doc. 49).

On November 15, 2016, Plaintiffs moved for leave to amend their Complaint a second time. The proposed Second Amended Complaint seeks to include twenty-four new paragraphs of factual allegations, as well as additions or changes to factual allegations set forth in Plaintiffs' First Amended Complaint. Plaintiffs further seek to add Count VI, alleging Defendants failed to comply with ERISA's reporting and disclosure requirements. Finally, Plaintiffs seek to include a request to pierce CTC's corporate veil, add various Vermont state law theories of liability, and amend their prayer for relief to seek restoration of profits and statutorily-authorized damages.

## II.    Conclusions of Law and Analysis.

### A.    Standard of Review.

Because Plaintiffs have previously amended their Complaint and because Defendants oppose the proposed amendments, Plaintiffs' Second Amended Complaint may be allowed only by leave of court. *See* Fed. R. Civ. P. (15)(a)(2) (providing that after a party has amended its complaint once, thereafter "a party may amend its pleading only with the opposing party's written consent or the court's leave"). "The court should freely give leave [to amend] when justice so requires." *Id.*; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded.").

The Second Circuit has held that a Rule 15(a) motion "should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *Aetna Cas. & Sur. Co. v.*

2

*Aniero Concrete Co., Inc.*, 404 F.3d 566, 603 (2d Cir. 2005) (quoting *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987)). The party opposing amendment bears the burden of demonstrating that amendment should be denied. *See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) ("'The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.'") (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).

### B.   Whether the Proposed Second Amended Complaint Unduly Prejudices Defendants.

Defendants argue that Plaintiffs' proposed amendments are prejudicial because they consist of a reformulation of the claims that Plaintiffs made in their initial Complaint, repeated in their First Amended Complaint, and now seek to assert in a third manner after discovery is well underway. Defendants insist that Plaintiffs knew or should have known of their new allegations when they filed their initial Complaint and that allowing amendment now will require Defendants to expend additional time, effort, and resources because Plaintiffs neglected to seek amendment in a timely manner.

In determining what constitutes "prejudice," the Second Circuit has explained that courts should "consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block*, 988 F.2d at 350.

Plaintiffs have moved for leave to amend within the discovery order for amendment of pleadings and therefore the possibility of such amendments was foreseeable by Defendants and, indeed, consented to by them in the parties' stipulated discovery schedule. *See Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 200 (S.D.N.Y. 2014) ("A court is more likely to find an amendment prejudicial if discovery has closed."). In addition, Plaintiffs' counsel advised Defendants' counsel that Plaintiffs may seek leave to amend their complaint in October of 2016. As a result, Defendants have been on notice for some time that amendment may be imminent and could have

3

adjusted their discovery plans accordingly. *See Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 455 (S.D.N.Y. 2016) ("Whether a party had prior notice of a claim and whether the new claim arises from the same transaction as the claims in the original pleading are central to the undue prejudice analysis."). Plaintiffs' alleged delay in seeking leave to amend is therefore insufficient to preclude amendment. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) ("Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend.") (internal quotation marks omitted).

Even if allowance of the Second Amended Complaint would result in additional discovery, "the fact that one party has spent time and money preparing for trial will usually not be deemed prejudice sufficient to warrant a deviation from the rule broadly allowing amendment to pleadings." *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000). Plaintiffs do not seek to add new defendants and their proposed amendments do not materially broaden the scope of their claims. Defendants do not identify any discovery that will need to be duplicated in light of the proposed amendments. They have therefore not met their burden of establishing undue prejudice as a result of the proposed Second Amended Complaint.

C.    **Whether Plaintiffs' Proposed Amendments Are Preempted by ERISA.**

Defendants contend that leave to amend should be denied because Plaintiffs' proposed state law amendments are futile as they are preempted by ERISA. Plaintiffs counter that there is no preemption issue because they are not seeking to plead new state law causes of action but are, instead, seeking to include new theories of liability.

"In addressing the proposed futility of an amendment, the proper inquiry is comparable to that required upon a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Aetna*, 404 F.3d at 604 (internal quotation marks omitted). A claim premised on state law cannot survive a motion to dismiss if it is preempted by federal law. *See Arditi v. Lighthouse Int'l*, 676 F.3d 294, 301 (2d Cir. 2012) (affirming the dismissal of plaintiff's complaint because his claims were preempted by ERISA and therefore "he failed to state a claim for relief that was plausible on its face").

4

In relevant part, § 514(a) of ERISA provides, "[e]xcept as provided in subsection
(b) of this section, the provisions of this subchapter . . . shall supersede any and all State
laws insofar as they may now or hereafter relate to any employee benefit plan described
in section 1003(a) of this title and not exempt under section 1003(b) of this title."
29 U.S.C. § 1144(a). "In determining the scope of ERISA's preemption provision, our
touchstone is congressional intent, primarily as evidenced by statutory language."
*Stevenson v. Bank of N.Y. Co., Inc.*, 609 F.3d 56, 59 (2d Cir. 2010). The Second Circuit
has held that "the analysis of ERISA preemption must start with the presumption that
'Congress does not intend to supplant state law.'" *Id.* (quoting *Gerosa v. Savasta & Co.*,
329 F.3d 317, 323 (2d Cir. 2003)).

"Congress enacted ERISA to 'protect . . . the interests of participants in employee
benefit plans and their beneficiaries' by setting out substantive regulatory requirements
for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and
ready access to the Federal courts.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208
(2004) (quoting 29 U.S.C. § 1001(b)). "Among other things, ERISA creates a
comprehensive civil enforcement scheme that completely preempts any state-law cause
of action that 'duplicates, supplements, or supplants' an ERISA remedy." *Montefiore
Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011) (quoting *Davila*,
542 U.S. at 209); *see also Davila*, 542 U.S. at 216 (explaining that a state cause of action
need not be "strictly duplicative" to be preempted, noting that "Congress' intent to make
the ERISA civil enforcement mechanism exclusive would be undermined if state causes
of action that supplement the ERISA § 502(a) remedies were permitted, even if the
elements of the state cause of action did not precisely duplicate the elements of an ERISA
claim").

The Second Circuit has expressed a "reluctance to find ERISA preemption where
state laws do not affect the relationships among 'the core ERISA entities: beneficiaries,
participants, administrators, employers, trustees and other fiduciaries.'" *Stevenson*,
609 F.3d at 59 (quoting *Gerosa*, 329 F.3d at 324). "On the other hand, 'state laws that
would tend to control or supersede central ERISA functions—such as state laws affecting

5

the determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits—have typically been found to be preempted.'" *Id.* (quoting *Gerosa*, 329 F.3d at 324).

Plaintiffs allege that Defendant Laumeister breached a fiduciary duty under Vermont law to creditors of insolvent CTC by "syphoning assets away from CTC and the Plan, advancing his own interests, and failing to manage assets of CTC and the Plan in a manner adequate to protect creditors." (Doc. 81-3 at ¶¶ 86-88.) Notwithstanding Plaintiffs' framing of this as a "theory of liability" rather than a cause of action, this allegation, and any liability derived therefrom, relies upon the alleged breach of a fiduciary duty owed under ERISA. Thus, this claim "derives entirely from the particular rights and obligations established by the benefit plans." *Davila*, 542 U.S. at 213. It is therefore preempted by ERISA because, as framed, it seeks to "duplicate[], supplement[], or supplant[] an ERISA remedy." *Montefiore*, 642 F.3d at 327 (internal quotation marks omitted).

For the same reason, Plaintiffs' two remaining state law claims are preempted by ERISA. Plaintiffs' claim that Defendant Laumeister failed to comply with payment and distribution obligations to known and unknown creditors and shareholders under Vermont law when dissolving CTC is preempted because it duplicates and supplants Defendants' ERISA obligations to the Plan. Plaintiffs' argument that Defendant Laumeister is personally liable because he personally guaranteed the payment of benefits under the Plan is preempted because this claim seeks to supplement the ERISA remedy of recovery of amounts owed. Plaintiffs' request for leave to amend to add these state law causes of action or theories of liability is therefore DENIED.

Plaintiffs' proposed inclusion of restoration of profits as a remedy for Defendants' alleged breaches of fiduciary duties warrants different treatment because it is squarely authorized by ERISA:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any

6

profits of such fiduciary which have been made through use of assets of the
plan by the fiduciary, and shall be subject to such other equitable or
remedial relief as the court may deem appropriate, including removal of
such fiduciary.

29 U.S.C. § 1109(a); *see also id.* § 1132(a)(2) (providing that a "civil action may be

brought . . . by the Secretary, or by a participant, beneficiary or fiduciary for appropriate

relief under section 1109").[1]

Likewise, Plaintiffs' proposed new Count VI, which alleges that Defendants failed

to comply with ERISA's reporting and disclosure provisions applicable to the Plan, is

expressly authorized by ERISA. *See id.* § 1132(c)(1) ("Any administrator . . . who fails

or refuses to comply with a request for any information which such administrator is

required by this subchapter to furnish to a participant or beneficiary . . . by mailing the

material requested to the last known address of the requesting participant or beneficiary

within 30 days after such request may in the court's discretion be personally liable to

such participant or beneficiary in the amount of up to $100 a day from the date of such

failure or refusal, and the court may in its discretion order such other relief as it deems

proper.").

Plaintiffs' proposed inclusion of a request to pierce CTC's corporate veil and hold

Defendant Laumeister personally liable as its alter ego is also available under ERISA.

*See Peacock v. Thomas*, 516 U.S. 349, 354 (1996) ("Piercing the corporate veil is not

itself an independent ERISA cause of action, but rather is a means of imposing liability

on an underlying cause of action.") (internal quotation marks omitted); *see also Ret. Plan*

*of UNITE HERE Nat. Ret. Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 288 (2d Cir.

2010) ("Although developed in the context of the National Labor Relations Act, the alter

ego doctrine has relevance in the ERISA context as well.").

---

[1] The Supreme Court has held that, "although [29 U.S.C. § 1132(a)(2)] does not provide a
remedy for individual injuries distinct from plan injuries, that provision does authorize recovery
for fiduciary breaches that impair the value of plan assets in a participant's individual account."
*LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008).

7

## D.    Whether Plaintiffs' Proposed Amendments Are Futile Because They Are Not Plausible.

In the event Plaintiffs' claims of piercing the corporate veil and disgorgement of profits are not preempted, Defendants oppose leave to amend on the alternative ground that such theories are not plausibly pled. To determine whether a complaint states a claim for relief, the court must apply a "plausibility standard, which is guided by two working principles." *See Harris Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks and alterations omitted). First, although "a court must accept as true all of the allegations contained in a complaint," that "tenet" "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Neither *Iqbal* nor *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) impose a "heightened" pleading standard. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119-21 (2d Cir. 2010) (rejecting a "heightened pleading standard" under *Iqbal/Twombly* and also rejecting the "contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records*, 604 F.3d at 120 (internal citations and quotations omitted).

"ERISA does not render corporate officers personally liable for a company's unpaid benefit-fund contributions unless the officers and the company are 'alter egos' under traditional common law principles." *Leddy v. Standard Drywall, Inc.*, 875 F.2d 383, 387 (2d Cir. 1989). "The purpose of the alter ego doctrine in the ERISA context is to prevent an employer from evading its obligations under the labor laws through a sham transaction or technical change in operations." *UNITE HERE*, 629 F.3d at 288 (internal quotation marks omitted). Thus, "[t]o protect employee benefits, courts observe 'a general federal policy of piercing the corporate veil when necessary.'" *Id.* (quoting *N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 647 (2d Cir. 2005)); *see also Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1220 (2d Cir. 1987) ("In determining whether to disregard the corporate form, we must consider the importance of the use of that form in the federal statutory scheme, an inquiry that generally gives less deference to the corporate form than does the strict *alter ego* doctrine of state law.") (internal citations omitted).

The Second Circuit has recognized that the corporate veil may be disregarded in "special circumstances." *See Sasso v. Cervoni*, 985 F.2d 49, 50 (2d Cir. 1993) ("[W]e have recognized that special circumstances, beyond an individual's officer status or corporate duties, might warrant the imposition of personal liability for a corporation's ERISA obligations."). "The test of alter ego status is flexible, allowing courts to weigh the circumstances of the individual case." *UNITE HERE*, 629 F.3d at 288 (internal alterations and quotation marks omitted). The Second Circuit has held that where corporate officers acted together with fiduciaries in breaching fiduciary obligations, comingled assets of the corporation with their own, and used corporate assets for their own benefit instead of ERISA obligations, the individual corporate officers were properly held liable for the corporation's ERISA obligations. *See Lowen*, 829 F.2d at 1220-21 (holding that ERISA's "prohibitions would be empty rhetoric if the corporate form might so easily shield those who profit from prohibited transactions").

As Defendants point out, in this case, Plaintiffs' proposed amendments include numerous conclusions of law that, "because they are no more than conclusions, are not

9

entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Plaintiffs, however, also propose to allege a number of facts that, if established, may give rise to Defendant Laumeister's alter ego status. For example, the proposed Second Amended Complaint alleges that Defendant Laumeister "failed to hold most periodic board of director meetings for CTC," (Doc. 81-3 at 6, ¶ 34), "comingled his own assets with those of CTC, and specifically comingled his own assets with assets of the Plan," *id.* at 6, ¶ 35, and, "[u]pon information and belief," Defendant Laumeister used his personal credit card to pay CTC expenses, then used CTC money to pay his personal credit card bill and thereby received the credit card reward points for personal travel, *id.* at 6, ¶ 36. The proposed amendments further allege that, "[u]pon information and belief," Defendant Laumeister used CTC employees, "without arm's length negotiation, and without any participation by CTC's board or directors or adequate information," to serve an arts foundation, the Bennington Center for the Arts, created by Defendant Laumeister. *Id.* at 6-7, ¶¶ 39-40. Plaintiffs claim that Defendant Laumeister named his son as an employee of CTC for the purpose of providing his son with health care, even though his son was not a bona fide employee of CTC. *Id.* at 7, ¶ 41. These factual allegations support Plaintiffs' conclusions of law and render Plaintiffs' piercing the corporate veil claim plausible at the pleading stage.

Similarly, the proposed Second Amended Complaint alleges sufficient facts, if accepted as true, to support Plaintiffs' request for restoration of profits. To be entitled to such a remedy, a plaintiff must establish that a fiduciary breached "any of the responsibilities, obligations, or duties" under ERISA. *See* 29 U.S.C. § 1109(a). Here, Plaintiffs have specifically alleged that Defendant Laumeister is a fiduciary who breached several duties imposed upon him under ERISA, including by failing to act "solely in the interests of the participants and beneficiaries," Doc. 81-3 at 18, ¶ 101, maintaining an illegal plan, and engaging in self-dealing.

For the foregoing reasons, Plaintiffs' motion for leave to amend is GRANTED IN PART AND DENIED IN PART. Plaintiffs may amend their complaint to assert a request to pierce CTC's corporate veil, to restore profits to the CTC Plan, and to include

Count VI. Plaintiffs may also include their new allegations in the Second Amended Complaint, regardless of whether they are conclusory in nature. Plaintiffs' requests to add any other state law causes of action or new theories of liability with are DENIED.

### E.    Whether Defendants' Motion to Strike Plaintiffs' Jury Demand Should Be Granted.

Defendants ask the court to strike Plaintiffs' demand for a jury trial, contending that there is no right to a jury trial in an ERISA case. Second Circuit precedent confirms that there is "no right to a jury trial in a suit brought to recover ERISA benefits." *O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 642 F.3d 110, 116 (2d Cir. 2011); *see also Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003) ("[T]here is no right to a jury trial under ERISA."). Plaintiffs contend, however, that although there may be no right to a jury trial for some of their ERISA claims, "the issue is not as clear for other types of ERISA claims." (Doc. 92 at 6.) Plaintiffs do not clarify which of their six counts or various prayers for relief entitle them to trial by jury, but cite to *Bona v. Barasch*, 2003 WL 1395932 (S.D.N.Y. Mar. 20, 2003) in support of their contention.

*Barasch* does not support Plaintiffs' jury demand. In that case, the district court recognized that "[t]he Second Circuit has repeatedly held that there is no jury trial available where plaintiffs seek equitable relief under ERISA." *Id.* at *33 (citing *Sullivan v. LTV Aero. & Def. Co.*, 82 F.3d 1251, 1258 (2d Cir. 1996) and *Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir. 1984), *cert. denied sub nom. Cody v. Donovan*, 469 U.S. 1072). Accordingly, the district court concluded that "[b]ased on *Sullivan* and *Katsaros,* plaintiffs have no right to a jury trial on their section 502(a)(3) claims." *Id.* However, because one of the plaintiffs in that case was an ERISA fiduciary suing the trustees of an ERISA plan, the court analyzed whether that fiduciary was suing the trustees for damages or whether the fiduciary was seeking an equitable remedy. Ultimately, the court concluded that "[b]ecause the remedy sought against the trustees of the Employee Benefit Funds is a legal remedy, the motion to strike plaintiffs' jury demand on the ERISA causes of action is denied." *Id.* at *35.

In contrast, Plaintiffs in this case are not fiduciaries suing for the legal remedy of damages, but are plan beneficiaries alleging wrongful denial of benefits (Count I); breaches of fiduciary duties (Counts III-V); and violations of ERISA's reporting and disclosure provisions (Count VI). The remedies that Plaintiffs seek under these claims are thus equitable in nature and *Barasch* is not on point.

In addition to the general proposition that there is no right to a jury trial under ERISA, Plaintiffs' specific claims also lack this right. For example, it is well settled that Plaintiffs' claim in Count I for restitution is not entitled to trial by jury. *See Katsaros*, 744 F.2d 278 ("There is no right to a jury trial of ERISA actions against pension fund trustees seeking the equitable remedy of restitution."). Plaintiffs' claims in Counts III-V for various alleged breaches of fiduciary duties are also not entitled to trial by jury. *See N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 134 (2d Cir.) ("We add that where, as here, a plan participant brings suit against a plan fiduciary (whom ERISA typically treats as a trustee) for breach of fiduciary duty relating to the terms of a plan, any resulting injunction coupled with surcharge—monetary compensation for a loss resulting from a [fiduciary's] breach of duty, or to prevent the [fiduciary's] unjust enrichment—constitutes equitable relief under § 502(a)(3).") (internal quotation marks omitted), *cert. denied sub nom. UnitedHealth Grp., Inc. v. Denbo*, 136 S. Ct. 506 (2015); *see also Bauer-Ramazani v. Teachers Ins. & Annuity Ass'n of Am.-Coll. Ret. & Equities Fund*, 2013 WL 6189802, at *11 (D. Vt. Nov. 27, 2013) (granting defendants' motion to strike jury demand after concluding that the "the remedy Plaintiffs seek—'the value of the use of the plan assets' and 'disgorgement of any investment profits made through the use of [Plaintiffs'] funds,'—for Defendants' alleged breach of fiduciary duty is equitable in nature") (citation and internal quotation marks omitted). Finally, Plaintiffs' claim that Defendants failed to comply with ERISA's reporting and disclosure provisions as proposed in Count VI is also one for which there is no jury trial right. *See Pane v. RCA Corp.*, 868 F.2d 631, 636-37 (3d Cir. 1989) (holding that the relief available under § 1132(c) "involves the furnishing of information; a form of relief for which there is no

counterpart at common law," and relief pursuant to a cause of action under ERISA's disclosure requirement is "equitable, not legal, in nature").

To the extent Plaintiffs have asserted any other claims under ERISA, they have not established that they are entitled to have a jury decide them. Defendants' motion to strike Plaintiffs' jury trial demand is therefore GRANTED.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART Plaintiffs' motion for leave to file their Second Amended Complaint. Leave to amend is GRANTED to add Count VI and to include the remedy of restoration of profits to the Plan in Counts III, IV, V, and the prayer for relief. Leave is also GRANTED to amend Counts I, III, IV, and V to include Plaintiffs' request to pierce CTC's corporate veil. Leave to amend is GRANTED to permit Plaintiffs' additional factual allegations and conclusions of law. Leave to amend is DENIED with regard to Plaintiffs' remaining state law causes of action or theories of liability. The court GRANTS Defendants' motion to strike Plaintiffs' jury demand. Plaintiffs are directed to file a Second Amended Complaint that conforms to these rulings within twenty (20) days of this Order.
SO ORDERED.

Dated at Burlington, in the District of Vermont, this _24_ day of February, 2017.

Christina Reiss, Chief Judge
United States District Court