U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2018 OCT 18  PM 4: 44

CLERK

BY_____
DEPUTY CLERK

DONNA BROWE, TYLER BURGESS, )
BONNIE JAMIESON, PHILIP JORDAN, )
LUCILLE LAUNDERVILLE, and )
THE ESTATE OF BEVERLY BURGESS, )
)
     Plaintiffs, )
)
v. )    Case No. 2:15-cv-267
)
CTC CORPORATION and )
BRUCE LAUMEISTER, )
)
    Defendants. )

## OPINION AND ORDER REGARDING POST-TRIAL ISSUES

In this action, Plaintiffs Donna Browe, Tyler Burgess, Bonnie Jamieson, Philip

Jordan, Lucille Launderville, and the Estate of Beverly Burgess (collectively,

"Plaintiffs") assert Defendants CTC Corporation ("CTC") and Bruce Laumeister

(collectively, "Defendants") violated the Employee Retirement Income Security Act of

1974, 29 U.S.C. §§ 1001-1191c ("ERISA").

After a multi-day bench trial, the court issued Findings of Fact and Conclusions of

Law dated June 22, 2018 (the "6/22/18 Decision"). In its 6/22/18 Decision, the court

granted Plaintiffs thirty days to specify their requested relief on the counts of their

Second Amended Complaint on which they prevailed. The court granted Defendants

thirty days thereafter to oppose Plaintiffs' request and to specify the contribution and

indemnification they seek from Plaintiff Launderville. The parties' supplemental briefing

was completed on August 15, 2018.

In their Supplemental Post-Trial Memorandum, Plaintiffs respond to the court's

6/22/18 Decision as follows. First, they contend that the court erred in making certain

findings of fact and reaching certain conclusions of law, including failing to find that they

asserted claims on behalf of CTC's 1997 deferred compensation plan (the "Plan").

Second, they allege that they are entitled to a payment of benefits because their benefits are "nonforfeitable" under ERISA. Third, they assert the court should find Plaintiff Launderville has no responsibility to indemnify Defendant Laumeister or to contribute to any recovery on behalf of the Plan. And fourth, they allege they are entitled to substantial statutory penalties against Defendants for their failure to comply with ERISA's reporting and disclosure requirements.

Defendants oppose Plaintiffs' requests, arguing that they have failed to comply with the court's request for a specification of the relief they seek on the counts on which they prevailed and instead essentially seek untimely reconsideration of the court's 6/22/18 Decision.

## I.    Factual and Procedural Background.

After adequate time for discovery, the court held a bench trial in both December of 2017 and March of 2018 at which both parties focused their efforts towards establishing or negating whether the Plan was a nonqualified "top hat" plan under ERISA. They further disputed whether Plaintiff Launderville was a Plan Administrator and, if so, whether she was responsible for fiduciary violations of the Plan.

Prior to the court's bench trial, the parties were permitted to file proposed findings of fact. Both parties submitted proposals. After trial, the parties were permitted to file post-trial memoranda which were filed on or before March 26, 2018. The court thus finds that the parties had ample time to address both factual and legal issues.

Plaintiffs' Second Amended Complaint describes their claims as follows:

This is an action arising under [ERISA] based on Defendants' wrongful denial of benefits to the Plaintiffs, participants and beneficiaries of one "CTC Deferred Compensation Plan" (the Plan). Rather than paying Plaintiffs the benefits they were and are owed under the Plan, Defendants CTC Corporation and Laumeister have, instead, raided the funds they were charged with holding in trust, and spent the money for their own purposes. These Defendants—fiduciaries under the meaning of ERISA—violated their statutorily prescribed duties by perpetrating this unlawful scheme. Defendants have also violated ERISA by, *inter alia*, maintaining a Plan with multiple illegal terms, failing to provide accountings to Plaintiffs under the Plan as required by law, and paying benefits to certain other Plan

2

participants, but not to the Plaintiffs (ERISA does not permit cherry picking favored employees to receive benefits, while forcing others to go without).

(Doc. 105 at 1-2.)

In the description of the "parties," Plaintiffs are not identified as asserting claims on the Plan's behalf. The Second Amended Complaint contains no allegations regarding vesting or "nonforfeitable" benefits.

In Count I of their Second Amended Complaint, Plaintiffs allege a "Denial of Benefits" claim and assert "[t]he failure and refusal to provide Plaintiffs the CTC Plan benefits is a violation of ERISA, 29 U.S.C. § 1132(a)(1)(B)" and "[a]s a result of this failure and refusal, Plaintiffs . . . have suffered a denial of benefits and seek to be awarded their benefits with interest and reasonable attorneys' fees." *Id.* at 14-15, ¶¶ 80-81. The court decided Count I in Defendants' favor, concluding that Plaintiffs failed to establish their entitlement to benefits in accordance with the Plan's terms.

Count II seeks a declaratory judgment based upon Defendant Laumeister's alleged disavowal of any obligations under the Plan "to provide the Plaintiffs with Plan benefits" and requests an order to "enforce their rights under the terms of the Plan and to clarify their rights to future benefits under the Plan, pursuant to ERISA[.]" *Id.* at 16-17, ¶¶ 87, 94. The court denied this request as part of its 6/22/18 Decision because Plaintiffs did not qualify for benefits under the terms of the Plan, but nonetheless granted Plaintiffs a post-trial opportunity to specify their requested relief in conjunction with the claims on which they prevailed.

In Count III, Plaintiffs allege "Fiduciary Violations," asserting Defendants must "make good to the Plan all losses caused by breaches of their fiduciary duties, to restore to the Plan all profits made through the use of Plan assets and for all other relief permissible under ERISA[.]" *Id.* at 18-19, ¶ 107. In Count IV, Plaintiffs allege "Additional Fiduciary Violations" in the form of an "Illegal Plan" which they claim is a "violation of [Defendant Laumeister's] fiduciary obligations owed to Plaintiffs." *Id.* at 19-20, ¶ 111. They ask that "all profits of Laumeister and CTC made through use of Plan assets must be disgorged, in addition to other relief permissible under ERISA" and

3

further request that Defendants "make good to the Plan all losses caused by breaches of their fiduciary duties, [and] to restore to the Plan all profits made through the use of Plan assets[.]" (Doc. 105 at 20-21, ¶¶ 113-14.)

In Count V, Plaintiffs allege claims of self-dealing, asserting Defendants "dealt with Plan assets in their own interest and/or exchanged property or extended credit from Plan assets for their own use and benefit in violation of ERISA[]" and favored "certain other employees[] [by] paying them Plan assets instead of the Plaintiffs[.]" *Id.* at 21, ¶¶ 118-19. They request Defendants "make good to the Plan all losses caused by breaches of their fiduciary duties, which remain unpaid; to restore to the Plan all profits made through the use of Plan assets and for all relief permissible under ERISA[.]" *Id.* at 22, ¶ 123. In Count VI, Plaintiffs allege Defendants failed to comply with ERISA's reporting and disclosure requirements and ask the court to award "$100 per day to each Plaintiff, from the date of each such violation, together with all other relief permissible under ERISA." *Id.* at 23, ¶ 127.

In their Prayer for Relief, Plaintiffs ask the court to order repayment to the Plan of an amount necessary to make good all losses to the Plan caused by Defendants' breaches of their fiduciary duties and to restore all profits made through Defendants' use of Plan assets.

The court granted judgment in Plaintiffs' favor on Counts III through V, finding that Defendant Laumeister and Plaintiff Launderville, as Plan Administrators, breached their fiduciary duties to Plan Participants and beneficiaries. With regard to Count VI, the court also granted judgment in Plaintiffs' favor, finding that Defendant Laumeister and Plaintiff Launderville violated ERISA's reporting and disclosure requirements. The court granted judgment in Defendants' favor on the remaining counts and on their counterclaim seeking a right of contribution and indemnification from Plaintiff Launderville. The court "declined to award attorney's fees to either party at this time." (Doc. 216 at 62.)

Because at trial Plaintiffs did not address the issue of vesting, did not testify that they were asserting claims on the Plan's behalf, identified no profits made by the Plan, and identified no prejudice or other harm (other than in proving their claims) which they

4

had allegedly suffered as a result of noncompliance with ERISA's reporting and disclosure requirements, the court could not adequately discern the relief they requested. Their claims appeared targeted solely to ensuring Plaintiffs received benefits under the Plan without regard to the rights of other Plan Participants. Although they admitted they did not qualify for benefits in accordance with the plain language of the Plan, they did not address any alternative basis for their receipt.

Defendants, in turn, asked that Plaintiff Launderville be held liable for contribution and indemnification, but did not address the amount or apportionment of liability in the event the court concluded the Plan was not a "top hat" plan.

The parties have now completed their post-trial briefing but certain supporting evidence for their competing requests remains absent from the record. The court treats this as a failure of proof except where it would defeat ERISA's purposes to do so.

## II.    Conclusions of Law and Analysis.

### A.    Whether the Court Should Alter its Findings of Fact and Conclusions of Law.

In their Supplemental Post-Trial Memorandum, Plaintiffs effectively ask the court to amend its 6/22/18 Decision to include new factual findings and conclusions of law. Plaintiffs' proposed changes do not alter the court's conclusion that no Plaintiff established his, her, or its entitlement to benefits under the terms of the Plan,[1] even though proof of such compliance, if it existed, was presumably within their possession, custody, or control.[2]

In terms of a conclusion of law, the court did not err in finding that Plaintiffs failed to establish entitlement to benefits under the Plan. Indeed, Plaintiffs tacitly

---

[1] The court found that the claim by the Estate of Beverly Burgess presented the closest question, and noted that it was Plaintiff Launderville who communicated that no benefits under the Plan were available to the beneficiaries beyond Ms. Burgess's own IRA. No explanation for this determination was offered by Plaintiff Launderville and Ms. Burgess's beneficiaries were unable to find any proof of her participation in the Plan. The court thus treated this as a failure of proof.

[2] Plaintiffs maintained almost no records of their Plan participation, limited records of their CTC wages and bonuses, and no records of their contributions to their IRAs.

5

admitted as much.[3] *See Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.*, 404 F.3d 167, 170 (2d Cir. 2005) ("A suit for benefits due under the terms of an ERISA-governed plan necessarily fails where the participant does not qualify for those benefits"). The court thus declines to alter or amend the 6/22/18 Decision in the manner requested by Plaintiffs.

## B. Plaintiffs' Claims on Behalf of the Plan.

Plaintiffs argue that they brought claims on the Plan's behalf and are entitled to relief on that basis. Although not a model of clarity, their Second Amended Complaint requests relief on the Plan's behalf. At trial, however, Plaintiffs did not testify or claim they were acting as representatives of the Plan. The court does not treat this as a failure of proof because to do so would defeat ERISA's purposes.

Section 409(a) of ERISA, Liability for Breach of Fiduciary Duty, provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries in this subchapter shall be personally liable to make good *to such plan* any losses *to the plan* resulting from each such breach, and to restore *to such plan* any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a) (emphasis supplied). "A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985). Nonetheless, the Supreme Court has clarified that "ERISA specifically

---

[3] *See, e.g.*, Doc. 197 at 42-45 (cross-examination of Lucille Launderville) (Q. So, in other words, the plan would require you to be employed by CTC Corporation until you reached age 65 and then retired; is that correct? A. That's what it says. . . . Q. Is that what you agreed to? A. Yes. . . . Q. When you left the employ of CTC Corporation, had you reached your 65th birthday? A. No. . . . Q. And you weren't terminated by CTC Corporation. You chose your own termination; is that correct? A. Yes. . . . Q. [W]hen you agreed to be part of CTC Corporation['s] deferred compensation plan, you agreed that if you had—if you left CTC Corporation before age 65, you would not be entitled to benefits under the CTC Corporation plan; is that correct? A. At that time, yes. Q. Okay. And that's what you agreed to? A. Yes.).

6

provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims, . . . one that runs directly to the injured beneficiary." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

In its 6/22/18 Decision, the court found that "Mr. Laumeister and Ms. Launderville breached their fiduciary duties to the 1997 Plan and to Plan Participants and beneficiaries[.]" (Doc. 216 at 62.) It invited Plaintiffs to specify their requested relief. In response, Plaintiffs request, among other things, that the court "order repayment of the entire Plan balance, at least $727,002, under Counts III-V." (Doc. 217 at 2) (internal quotation marks and emphasis omitted). Plaintiffs further request the court to appoint an administrator or receiver to take custody of the repaid fund assets, invest and manage the funds, and to pay out vested benefits in accordance with ERISA.

As support for their requested relief, Plaintiffs assert that the court found Exhibit 3 "credible" from which they derive their request for $727,002. This overstates the court's findings of fact in its 6/22/18 Decision.[4] At trial, Plaintiffs' expert witness, Richard Heaps, testified that he was retained by Plaintiffs "to take a sum of money from a document and project or to . . . calculate what that total would be today if it had been invested in a manner that typical private retirement funds are invested." (Doc. 196 at 152:22-25.) Mr. Heaps opined that in September 2017, the balance would have grown to $727,002 using an initial amount of $261,368.14, with "no additional contributions or withdrawals by anyone." *Id.* at 160:12-13. Mr. Heaps conceded that this assumption of "no additional contributions or withdrawals by anyone" was inconsistent with the facts as he understood them. *Id.* He was aware of additional contributions and withdrawals in

---

[4] The court described Exhibit 3 as follows:

> 68. The court finds Plaintiffs' Exhibit 3 "worksheet" reliable for the following purposes. First, to establish that Mr. Laumeister was the primary decision-maker with regard to the 1997 Plan. Second, to reflect account balances adjusted to reflect "Actual Mutual Discovery Balance at 03-18-97." Third, to confirm that it was a document generated by [Wayne] Massari to project how the 1997 Plan might perform under certain assumptions, several of which are inconsistent with the 1997 Plan.

(Doc. 216 at 16.)

7

subsequent years, but he could not identify the precise amount of either. He also could not determine the manner in which Plan funds were invested and thus could not predict the actual return on investment.[5] His additional calculations in Tables 2 and 3 reflected further contributions and withdrawals to the Plan but were accompanied by the following caveat: "The Plan did not call for any specific amount of future contributions. It is unlikely CTC would have continued to do so given its financial condition. In addition, contributions would have decreased as employment decreased." (Ex. 26 at 5.)

Mr. Heaps was not asked to opine regarding the profits to be restored to the Plan, the amount of vested benefits in accordance with ERISA's minimum vesting standards, or the damages caused by any fiduciary or nondisclosure violations. To rebut Mr. Heaps's testimony, Defendants introduced the testimony of expert witness Art Woolf, who reviewed the Plan, Mr. Heaps's expert opinion, and Exhibit 3. Mr. Woolf opined that "the plan was very light on specifics in terms of dollars and things like that. So it was very hard for me to make a correlation." (Doc. 210 at 7-8.) Mr. Woolf further pointed out that the Plan reflects none of the assumptions in Exhibit 3. He noted Mr. Heaps's analysis, while reflecting actual withdrawals in Tables 2 and 3, did not project withdrawals paid to Plan participants retiring at age sixty-five.

The court concluded that Mr. Heaps's Tables 2 and 3 were inconsistent with the terms of the Plan and the known facts and essentially disregarded them. *See* Doc. 216 at 62-63. This left only Table 1 which includes facts and assumptions inconsistent with the Plan, but which reflects the Plan fund balance as March 18, 1997. Rather than treat Plaintiffs' evidence at trial as a failure of proof, the court uses reliable evidence of record for purposes of fashioning an award consistent with ERISA.

As of March 18, 1997 the Plan fund was $261,388.14 (the "Base Amount") which must be restored to the Plan. The court must next determine the extent to which the Plan Administrators must restore to the Plan any investment gains thereon. *See Donovan v.*

---

[5] Mr. Heaps admitted that: "As of [September 18, 2017], I do not know how the Fund was to be invested. I don't know what the Mutual Discovery Fund was." (Ex. 26 at 3.) It is not clear whether this information was available to Plaintiffs in discovery.

*Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985) ("One appropriate remedy in cases of breach of fiduciary duty is the restoration of the trust beneficiaries to the position they would have occupied but for the breach of trust") (citing Restatement (Second) of Trusts § 205(c) (1959) (stating trustee is liable for "any profit which would have accrued to the trust estate if there had been no breach of trust")). The court credits Mr. Heaps's unrebutted expert opinion as to how the Base Amount would increase or decrease in value if prudently invested as a private retirement fund. *See* Ex. 26 at 3 ("[F]or Table 1, I assume that the Fund yields would have been equal to that of all private retirement funds as reported by the Center for Retirement Research (CRR) at Boston College.").

At the time of CTC's dissolution on October 6, 2014, Mr. Heaps opined that the fund balance would have been approximately $643,376. This amount, however, ignores an approximately ten year period (from 2004 until dissolution) during which CTC was losing money and the number of its employees and Plan Participants was declining. *See* Doc. 216 at 18-19, ¶¶ 75-83. It also does not reflect known or reasonably anticipated pay-outs from the Plan. Accordingly, as a matter of pure mathematics, it overstates investment gain on the Base Amount.

In addition, both the $727,002 Plaintiffs request and the Table 1 Plan fund balance of $643,376 at the time of CTC's dissolution overly penalize Plan Administrators for a good faith, mistaken belief that the Plan was a nonqualified "top hat" plan. The Plan Administrators' fiduciary breaches were attributable to negligence and ignorance as opposed to willful noncompliance with ERISA. There is also no evidence of material personal gain by Plan Administrators. Any award of relief should reflect these realities as well as CTC's dissolution.

In 2004, the Plan was terminated albeit without proper disclosures. *Id.* at 18, ¶ 76. On or about this time, Defendant Laumeister told Plaintiff Launderville "that because of the deteriorating financial condition to CTC, the [P]lan was being terminated and the funds would be used to pay business operating expenses." (Doc. 216 at 18.) At that point in time, the Plan Administrators were on notice that they should investigate their

9

legal duties and responsibilities in light of Plan termination. They, however, instead chose to use Plan assets without disclosing that use to Plan Participants.

In approximately 2006, Defendant Laumeister explained to CTC employees that CTC was in dire financial straits and proposed a twenty percent pay-cut. By February 2008, the only remaining Plan Participants employed by CTC were Plaintiffs Launderville and Browe, both of whom participated in the use of Plan assets for CTC's operational expenses.

Based on the foregoing, when the Plan was terminated, Plan Participants should have received Plan benefits provided they were vested in the Plan under one of ERISA's minimum vesting schedules even if actual receipt was deferred until they reached the age of sixty-five. In 2004, the Plan fund prudently invested could be expected to be $350,603 at year's end. The court concludes that in the absence of more reliable evidence, this amount of investment gain should be restored to the Plan as a remedy for the Plan Administrators' fiduciary breaches. The court acknowledges that this amount reflects neither additional contributions nor withdrawals, both of which were probable. As Defendant Laumeister was responsible for the destruction of records that might produce a more accurate calculation, and as Plaintiff Launderville failed to keep her own records beyond a few isolated documents, they cannot reasonably complain about imprecision.

For the foregoing reasons, the ORDERS that $350,603 be restored to the Plan (the "Restoration Award") by the Plan Administrators as the proper of measure of harm suffered by the Plan as a result of their breaches of fiduciary duty.

## C.    Vesting and Remedies Based Thereon.

Although the 1997 Plan states that accrued benefits are not payable until a Plan Participant retires from CTC at or after the age of sixty-five or dies while employed by CTC, "[c]ourts must . . . interpret plans to adhere to ERISA requirements." *Fenwick v. Merrill Lynch & Co.*, 2009 WL 426464, at *1 (D. Conn. Feb. 20, 2009) (citing *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 742 (2004)). ERISA itself states that it was intended "to protect . . . the interests of participants . . . and . . . beneficiaries[] . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries . . .

10

and . . . providing for appropriate remedies[] . . . and ready access to the Federal courts."
29 U.S.C. § 1001(b). Accordingly, notwithstanding the terms of a plan, under ERISA's
vesting provisions, one hundred percent of an employee's accrued benefit derived from
employer contributions in an individual account plan is "nonforfeitable" after six years of
service with the employer. 29 U.S.C. § 1053(a)(2)(B)(iii). "[T]he statutory definition of
'nonforfeitable' assures that an employee's claim to the protected benefit is legally
enforceable[.]" *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 512 (1981). The
Second Circuit has held that this provision of ERISA is "properly interpreted as imposing
two distinct types of minimum vesting requirements, one of which is independent of the
employee's years of service." *Duchow v. N.Y. State Teamsters Conference Pension &
Ret. Fund*, 691 F.2d 74, 77 (2d Cir. 1982).

Plaintiffs' Second Amended Complaint is bereft of factual allegations regarding
compliance with ERISA's vesting standards. *See* 29 U.S.C. § 1053 (minimum vesting
standards). At trial, Plaintiffs introduced no testimony or other evidence regarding the
extent to which they were vested in the Plan.[6] In their Post-Trial Memorandum of Law,
Plaintiffs included a single sentence related to vesting: "By 1997, some, if not all, of the
[P]articipants of the Plan would have had vested rights, and ERISA's vesting provisions
and limitations on amendments would have prohibited changes in the Plan purporting to
strip many of those rights." (Doc. 213 at 2-3.) In their Supplemental Post-Trial
Memorandum, Plaintiffs offer vesting arguments but no vesting calculations. There thus
remains no evidence before the court regarding the extent to which Plan Participants are
entitled to benefits under ERISA's minimum vesting schedules.

The court's task in fashioning a remedy is further complicated by the reality that
CTC did not maintain employer contributions in individual accounts but maintained one
aggregate account with limited record keeping and wide-spread record destruction. Plan
Participants should not bear the burden of this noncompliance. The court thus offers Plan

---

[6] The only evidence Plaintiffs introduced at trial with regard to vesting pertained to Plaintiff
Launderville's retirement plan at Plasan Industries. *See* Doc. 197 at 81:10-11, 82:17 & 20; Doc.
209 at 30:9.

Participants a mechanism for establishing vesting under ERISA as a precondition to the receipt of Plan disbursements from the Restoration Award. It does so on a per capita basis in light of the absence of reliable documentation of individual account balances (including documentation maintained by Plaintiffs); to avoid windfalls to high earning employees; and to reflect a recovery on behalf of the Plan as a whole as opposed to individual Plan Participants who could not establish with any specificity the individualized amounts which they claim they are owed.

### D. Whether to Award Prejudgment Interest.

Although neither party has addressed the issue, the court must consider whether to award prejudgment interest. In *Wickham Contracting Co. v. Local Union No. 3*, 955 F.2d 831 (2d Cir. 1992), the Second Circuit acknowledged that "discretionary awards of prejudgment interest are permissible under federal law in certain circumstances." *Id.* at 833. In accordance with Second Circuit jurisprudence:

the award should be a function of (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court.

*Id.* at 833-34.

In this case, the court declines to award prejudgment interest. Although there is a need to fully compensate Plan Participants and their beneficiaries, the record before the court reveals that no Plan Participant anticipated the receipt of any benefits under the Plan until 2015 when Plaintiff Launderville solicited Plaintiffs' participation in this lawsuit. Having benefitted from the late discovery of their claims for statute of limitations purposes, they should not now be heard that they relied upon the availability of Plan benefits to their detriment. Moreover, the relative equities weigh strongly in favor of limiting the Plan Administrators' liability in the unique circumstances of this case. Wayne Massari, a competent, careful, and trusted CTC employee drafted the Plan without sufficient guidance. Thereafter, CTC adopted and administered the Plan without sufficient guidance. By adopting an egalitarian, merit-based approach to Plan

12

participation, Plan Administrators deprived the Plan of top hat status. Thereafter, they used Plan assets to keep CTC operational and to ensure Plan Participants remained employed. The Plan Administrators derived no personal gain or benefit from their failure to comply with ERISA and generally acted in good faith.

"The relative equities may make prejudgment interest inappropriate when the defendant acted innocently and had no reason to know of the wrongfulness of his actions; when there is a good faith dispute between the parties as to the existence of any liability; or when the plaintiff himself is responsible for the delay in recovery[.]" *Id.* at 834-35 (citations omitted). This is such a case.

## E.    Disbursement of the Restoration Award.

The Restoration Award of $350,603 shall be deposited with an escrow agent no later than ninety (90) days from the date of this Opinion and Order. The court will appoint a special master to oversee the escrow account and GRANTS the parties twenty (20) days to propose the names of no more than three individuals for appointment as a special master. If no names are submitted, the court shall choose the special master without further consultation with the parties. *See* Fed. R. Civ. P. 53(a)(1)(B) (stating the court may appoint a special master to "make or recommend findings of fact on issues to be decided without a jury").

The court further ORDERS that Plan benefits shall be awarded to each of the eighteen Plan Participants on a per capita basis within a hundred and twenty (120) days of this Opinion and Order, provided the Plan Participant or its beneficiaries submits a declaration subject to the penalties of perjury attesting to satisfaction of the following requirements: (1) he or she was a Plan Participant; (2) he or she was employed at CTC fulltime for six years (and the dates of such employment) after March 18, 1997; and (3) he or she has reached the age of sixty-five or the date on which he or she shall reach that age. If any Plan Participant fails to submit a declaration in accordance with the foregoing requirement, his or her portion of Plan benefits shall be forfeited and shall be disbursed to other Plan Participants on a per capita basis.

13

Within sixty (60) days of this Order, Defendant Laumeister and Plaintiff Launderville shall each provide a declaration subject to the penalties of perjury documenting their efforts to notify Plan Participants of this Opinion and Order.

### F.   Whether the Court Should Apportion Liability between Defendant Laumeister and Plaintiff Launderville.

During the court's bench trial, Plaintiffs argued that Lucille Launderville was not a Plan Administrator while Defendants contended that she was. The court decided this issue in Defendants' favor, finding:

> 72. Ms. Launderville was provided with the 1997 Plan which states that CTC's Directors are the Plan Administrators. She is identified in Plaintiffs' Exhibit 14 as a person to whom questions about the Plan could be directed. She proposed participants to the Plan, discussed potential Plan Participants with Mr. Laumeister and Mr. Massari, and voted on certain decisions with regard to the 1997 Plan.

(Doc. 216 at 17); *see also Varity Corp.*, 516 U.S. at 498 (noting under ERISA "a person is a fiduciary with respect to a plan, and therefore subject to ERISA fiduciary duties, to the extent that he or she exercises any discretionary authority or discretionary control respecting management of the plan, or has any discretionary authority or discretionary responsibility in the administration of the plan") (quoting 29 U.S.C. § 1002(21)(A)).

At trial, neither party requested the court to apportion blame as between Defendant Laumeister and Plaintiff Launderville. In their Supplemental Post-Trial Memorandum, Plaintiffs ask the court to relieve Plaintiff Launderville of any indemnification or contribution obligation, citing § 258 of the Restatement (Second) of Trusts in support of this request.

"ERISA establishes both a duty of loyalty and a duty of care. The Act's legislative history indicates that the 'crucible of congressional concern was the misuse and mismanagement of plan assets,' particularly self-dealing by plan managers." *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987) (citation omitted). With regard to breaches by a co-fiduciary, ERISA provides:

> In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a

breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

> (1)     if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2)     if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3)     if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a). In this case, neither Plaintiff Launderville nor Defendant Laumeister knowingly breached a fiduciary duty, but both affirmatively enabled each other's breaches. Under ERISA, they are thus responsible for their own conduct and for that of their co-fiduciary. The only question is whether this liability should be joint and several or reflect some form of apportionment to reflect their relative culpability.

In *Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12 (2d Cir. 1991), the Second Circuit held that ERISA does not preclude courts from allocating responsibility so that a single fiduciary who is only partially responsible for a loss does not "bear its full brunt." *Id.* at 16. The majority of the panel held that "the federal courts have been authorized to develop a federal common law under ERISA, and in doing so, are to be guided by the principles of traditional trust law." *Id.* In contrast, the dissent observed that Congress was aware of "both the problem at hand and its potential solution[]" and nonetheless "in crafting ERISA's interlocking, interrelated and interdependent remedial scheme, failed to provide remedies in favor of breaching fiduciaries." *Id.* at 19 (citation and internal quotation marks omitted).

There is currently "a circuit split as to whether one ERISA fiduciary may pursue a contribution against a co-fiduciary[.]" *Loo v. Cajun Operating Co.*, 130 F. Supp. 3d 1097, 1109 (E.D. Mich. 2015) (noting that "every district court in [the Sixth] Circuit to face the issue has held that there is no right of indemnification or contribution between

15

co-fiduciaries") (internal quotation marks omitted).[7] This court is bound by the majority decision in *Chemung Canal Trust* to conclude that contribution is authorized under ERISA and to be guided by trust law in determining its application.

In determining the relative responsibilities of the Plan Administrators, the court considers the fact that "the principal statutory duties imposed on the trustees relate to the proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." *Russell*, 473 U.S. at 142-43. ERISA requires a fiduciary to exercise "the care, skill, prudence, and diligence" of a "prudent [person] acting in a like capacity[.]" 29 U.S.C. § 1104(a)(1)(B). Its legislative history reflects the following considerations:

> The principles of fiduciary conduct are adopted from existing trust law, but with modifications appropriate for employee benefit plans. These salient principles place a twofold duty on every fiduciary: to act in his relationship to the plan's funds as a prudent man in a similar situation and under like conditions would act, and to act consistently with the principles of administering the trust for the exclusive purposes previously enumerated, and in accordance with the documents and instruments [g]overning the fund unless they are inconsistent with the fiduciary principles of the section.

H.R. Rep. No. 993-533, at 4651 (1974) (quoted in *Russell*, 473 U.S. at 152 n.6 (Brennan, J., concurring)).

---

[7] *Compare Kim v. Fujikawa*, 871 F.2d 1427, 1432-33 (9th Cir. 1989) ("[S]ection 409 of ERISA, 29 U.S.C. § 1109, only establishes remedies for the benefit of the *plan*. Therefore, this section cannot be read as providing for an equitable remedy of contribution in favor of a *breaching fiduciary*[] . . . implying a right of contribution is particularly inappropriate where[] . . . the party seeking contribution is a member of the class . . . whose activities Congress intended to regulate for the protection of . . . ERISA plans[] . . . and where there is no indication in the legislative history that Congress was concerned with softening the blow on joint wrongdoers.") (internal quotation marks omitted), *and Travelers Cas. & Sur. Co. of Am. v. IADA Servs., Inc.*, 497 F.3d 862, 867 (8th Cir. 2007) ("[W]e hold that ERISA does not create a right of contributions for Travelers against IADA Services, another fiduciary."), *with Chemung Canal Tr. Co. v. Sorvan Bank/Maryland*, 939 F.2d 12, 16 (2d Cir. 1991) (allowing contribution remedy based on "traditional trust law"), *and Free v. Briody*, 732 F.2d 1331, 1337 (7th Cir. 1984) ("We believe that in the case of ERISA Congress intended to protect trustees from being ruined by the actions of their cofiduciaries, both because the language of ERISA provides protection for co-trustees and because Congress evidenced an intent to apply general trust principles to the trustee provisions of ERISA").

16

The court also considers § 258 of the Restatement (Second) of Trusts which
provides:

> [W]here two trustees are liable to the beneficiary for a breach of
> trust, each of them is entitled to contribution to the other, except that
>
> (a) if one of them is substantially more at fault than the other, he
> is not entitled to contribution from the other but the other is
> entitled to indemnity from him; or
>
> (b) if one of them receives a benefit from the breach of trust, the
> other is entitled to indemnity from him to the extent of the
> benefit; and for any further liability, if neither is more at fault
> than the other, each is entitled to contribution.

Restatement (Second) of Trusts § 258(1). Comment d of § 258 of the Restatement
(Second) of Trusts offers the following factors for determining whether one fiduciary is
substantially more at fault than the other:

> In determining whether one trustee is so substantially more at fault that he
> should bear the whole of the loss resulting from a breach of trust, the
> following factors are to be considered: (1) whether he fraudulently induced
> the other to join in the breach of trust; (2) whether he intentionally
> committed a breach of trust and the other was at most guilty of negligence;
> (3) whether because of his greater experience he controlled the conduct of
> the other, as in the case where he was an attorney and the other was a
> person without business experience who was accustomed to rely upon his
> judgment; (4) whether he alone committed the breach of trust and the other
> is liable only because of an improper delegation, or failure to exercise
> reasonable care to prevent him from committing a breach of trust, or
> neglect to take proper steps to compel him to redress the breach of trust.

*Id.* cmt. d.

In this case, Defendant Laumeister and Plaintiff Launderville facilitated each
other's breaches of the Plan's terms in selecting Plan Participants without adhering to the
requirements of a top hat plan and by authorizing Plan distributions to Plan Participants
who had not satisfied Plan requirements. Each facilitated CTC's use of Plan assets for
payment of CTC's operating expenses. Each failed to apprise Plan Participants of the
Plan's termination. Although Plaintiffs argue that Plaintiff Launderville did not benefit
from the use of Plan assets for CTC's operating expenses, neither did Defendant
Laumeister who made substantial personal loans to CTC which were not repaid, who

17

received no tax deduction or tax credit for Plan contributions, and who could have personally retained CTC profits as opposed to using them to fund the Plan. While Defendant Laumeister made the decision to use Plan funds to pay CTC's operating expenses, Plaintiff Launderville facilitated that practice and interposed no objection to it. As CTC was losing money at the time, she, rather than Defendant Laumeister, had a greater financial interest in CTC's continued operations. Neither Defendant Laumeister nor Plaintiff Launderville acted with any greater degree of culpability than negligence, neither acted in bad faith, and there was no intent to defraud.

In other ways, however, Plaintiff Launderville and Defendant Laumeister are not similarly situated. Defendant Laumeister was the primary decision-maker for the Plan, its exclusive source of funding as CTC's sole shareholder, and the individual who decided to offer the Plan in the first instance. As an experienced and highly educated corporate executive, he was arguably in a better position to ascertain the Plan's compliance with "top hat" requirements and ERISA, and to seek legal advice if he was uncertain. At all times, he held a superior position to Plaintiff Launderville and was able to exert control over her Plan decision-making.

Plaintiff Launderville was primarily responsible for identifying CTC employees who merited Plan participation and communicating with Plan Participants once Wayne Massari left CTC's employ. It was Plaintiff Launderville who denied Beverly Burgess's beneficiaries' claim for benefits on Ms. Burgess's behalf. *See Russell*, 473 U.S. at 142 ("It is of course true that the fiduciary obligations of plan administrators are to serve the interest of participants and beneficiaries and, specifically, to provide them with the benefits authorized by the plan."). She provided no explanation for her decision to deny this claim, and described no factual or legal investigation she undertook to make that determination. *See* 29 U.S.C. § 1133 (requiring "adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant[]" and affording "a reasonable opportunity" for a "full and fair review by the appropriate named fiduciary of the decision denying the claim"); *see also Varity*

18

*Corp.*, 516 U.S. at 511 (observing that "a plan administrator engages in a fiduciary act when making a discretionary determination about whether a claimant is entitled to benefits under the terms of the plan documents."). She essentially blamed Defendant Laumeister for this decision and he blamed her. Both had a duty to ensure that they were making this important Plan determination correctly.

Although Plaintiff Launderville lacked Defendant Laumeister's education and experience, she was President of CTC, oversaw its daily operations, and had considerable decision-making authority. She was thus not a powerless neophyte forced to accede to Defendant Laumeister's control and she was neither defrauded nor deceived by him regarding any fiduciary breach. When faced with the prospect of losing her benefits under the Plan by leaving CTC's employment for another position before age sixty-five, Plaintiff Launderville sought to protect her own interests as opposed to the interests of the Plan or other Plan Participants. *See id.* at 506 ("ERISA requires a 'fiduciary' to 'discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.'") (quoting 29 U.S.C. § 1104(a)(1)). She notified Plan Participants that she believed they may have a claim against Defendants only when her own efforts to secure benefits directly from Defendant Laumeister proved unsuccessful. In doing so, it is not clear that she disclosed her role in Plan administration.[8]

On balance, the court finds Defendant Laumeister more culpable than Plaintiff Launderville but not substantially more at fault such that he, alone, should bear the full brunt of the Restoration Award. The court therefore declines to relieve Plaintiff Launderville of all responsibility for contribution and indemnification.

To fairly reflect their respective liability, the court hereby ORDERS a 60/40 apportionment of liability. Defendant Laumeister is hereby ORDERED to contribute $210,361.80 of the Restoration Award and Plaintiff Launderville is hereby ORDERED to contribute $140,241.20 of the Restoration Award. The court further ORDERS that Plaintiff Launderville may receive her per capita distribution under the Plan consistent

---

[8] The court has raised the issue of joint representation with Plaintiffs' counsel and was advised that all Plaintiffs waived any conflict of interest.

with this Opinion and Order. To hold otherwise would ignore her dual status as a Plan fiduciary and Plan Participant.

### G. Whether Plaintiffs are Entitled to Damages Because of the Absence of a Summary Plan Document and Other Plan Disclosures.

In light of the Plan Administrators' failure to comply with ERISA's reporting and disclosure requirements, Plaintiffs suggest a "possible statutory penalty for *each* participant[]" at $100 per day for each day of a six year limitation period or $766,500. (Doc. 213 at 7.) They point out that Defendants never provided a Summary Plan Document ("SPD") and that periodic account statements were provided at irregular intervals and not at all after Wayne Massari's stroke. Each Plan Participant, however, received a copy of the Plan and signed a statement that he or she had reviewed it as part of the Plan application. Plaintiffs identify no prejudice or damages suffered because of the absence of an SPD.

> An ERISA benefit-plan administrator has a duty to provide an SPD to its participants setting forth information such as the name and type of benefit plan, the plan's requirements with respect to eligibility for participation and benefits, and circumstances that may result in disqualification, ineligibility, or denial or loss of benefits. In fulfilling this duty, an administrator must also make reasonable efforts to ensure each plan participant's actual receipt of the plan documents. Moreover, where there is a conflict between the terms of the plan itself and the SPD, the terms of the SPD govern. This rule makes sense because the statute contemplates that the summary will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary.

*Weinreb*, 404 F.3d at 170 (citations and internal quotation marks omitted).

The Second Circuit has held that "an ERISA claim premised on the complete absence of an SPD also requires a showing of likely prejudice." *Id.* at 171. "Where a plan administrator fails to fulfill its statutory duty of furnishing an SPD, but where the evidence shows that the claimant had actual knowledge of the requirement at issue, any error is necessarily harmless." *Id.* at 171-72. The Second Circuit reasoned that "[a]lthough ERISA's SPD requirement places the burden of communicating eligibility

20

conditions on the employer, it would be unfair to hold the employer liable when a claimant fails to adhere to a known plan requirement[.]" *Id.* at 172 (citations omitted).

In this case, the absence of an SPD did not cause any prejudice or damages because Plaintiffs received a copy of the Plan itself which specified the terms on which Plan benefits would become available. Although they are correct that Defendants' destruction of Plan records rendered it more difficult to establish their claims, they proffered no explanation for their destruction of their own Plan records.

The most glaring failure to comply with ERISA's disclosure requirements was the failure to notify Plan Participants that CTC was effectively terminating the Plan and using Plan assets for its operating expenses. *See Varity Corp.*, 516 U.S. at 505 (observing that "plan administrators often have, and commonly exercise, discretionary authority to communicate with beneficiaries about the future of plan benefits"); *see also* 29 U.S.C. § 1426 (setting forth notice and suspension of benefits requirements for insolvent ERISA plans). However, Defendant Laumeister announced to CTC employees that CTC was in dire financial straits and he did not seek to affirmatively deceive Plan Participants regarding the status of the Plan. Instead, he believed he could use Plan assets without regard to ERISA.

Similarly, Defendants' destruction of CTC's records took place at a time when Defendants had no notice of any claims and no reason to believe CTC had outstanding obligations under the Plan. *See* Doc. 216 at 19, ¶¶ 83-85. There was no apparent motive to frustrate Plan Participants' ability to prove their claims and no reason why Plan Participants could not have maintained their own Plan documents if they reasonably believed they were entitled to benefits under the Plan.

In light of the totality of the circumstances, the court agrees that there should be a consequence for the Plan Administrators' failure to comply with ERISA's reporting and disclosure requirements but concludes that Plaintiffs' suggestion of a statutory penalty of $766,500 per Plan Participant is exorbitant and unsupported by the factual record. The court awards $2,000 in statutory penalties to be paid by Defendant Laumeister ($1,000)

21

and Plaintiff Launderville ($1,000) in addition to the Restoration Award.[9] This amount
shall be placed in the escrow account described herein within ninety (90) days of this
Opinion and Order and distributed on a per capita basis to Plan Participants who comply
with the terms and conditions of this Opinion and Order. In addition, as neither party has
addressed the issue of attorney's fees, the court grants them fourteen (14) days in which
to do so.[10]

## CONCLUSION

For the foregoing reasons, the court hereby GRANTS the following relief:

1. ORDERS a Restoration Award in the amount of $350,603 to be
deposited with an escrow agent no later than ninety (90) days from the date
of this Opinion and Order;

2. GRANTS the parties twenty (20) days to propose the names of no more
than three individuals for appointment as a special master;

3. ORDERS that Plan benefits shall be awarded to Plan Participants on a
per capita basis within a hundred and twenty (120) days of this Order
pursuant to the terms and conditions listed herein;

4. ORDERS Defendant Laumeister and Plaintiff Launderville to each
provide a declaration subject to the penalties of perjury documenting their
efforts to notify Plan Participants of this Opinion and Order sixty (60) days
of this Order;

5. ORDERS a 60/40 division of liability with Defendant Laumeister
hereby ORDERED to contribute $210,361.80 of the Restoration Award and

---

[9] Although Plaintiffs have argued that Plaintiff Launderville was not employed by CTC during
the applicable limitations period and cannot be held liable for any reporting or disclosure
violations under ERISA, she did not assert a statute of limitations defense in response to
Defendants' counterclaim and has thus waived that argument. *See Davis v. Bryan*, 810 F.2d 42,
44 (2d Cir. 1987) ("The statute of limitations is an affirmative defense under Fed. R. Civ. P. 8(c)
that must be asserted in a party's responsive pleading at the earliest possible moment and is a
personal defense that is waived if not promptly pleaded.") (internal quotation marks omitted).

[10] "In most lawsuits seeking relief under [ERISA], a reasonable attorney's fee and costs are
available to either party at the court's discretion." *Hardt v. Reliance Standard Life Ins. Co.*, 560
U.S. 242, 244 (2010) (internal quotation marks omitted). The Supreme Court has disavowed the
Courts of Appeals' use of a five factor test, reasoning that "[b]ecause these five factors bear no
obvious relation to [29 U.S.C.] § 1132(g)(1)'s text or to our fee-shifting jurisprudence, they are
not required for channeling a court's discretion when awarding fees under this section." *Id.* at
254-55.

Plaintiff Launderville hereby ORDERED to contribute $140,241.20 of the Restoration Award;

6. ORDERS that Plaintiff Launderville may receive her per capita distribution under the Plan consistent with this Opinion and Order; and

7. AWARDS $2,000 in statutory penalties to be paid equally by Defendant Laumeister ($1,000) and Plaintiff Launderville ($1,000), in addition to the Restoration Award, to be placed in the escrow account within ninety (90) days of this Opinion and Order;

8. GRANTS the parties fourteen (14) days to address the issue of attorney's fees and costs.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 18th day of October, 2018.

Christina Reiss, District Judge
United States District Court