UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2022 JUN -7 PM 4: 07

CLERK
BY_____
DEPUTY CLERK

DONNA BROWE, TYLER BURGESS,      )
BONNIE JAMIESON, PHILIP JORDAN,  )
LUCILLE LAUNDERVILLE, and        )
THE ESTATE OF BEVERLY BURGESS,   )
                                 )
       Plaintiffs,               )
                                 )
v.                               )   Case No. 2:15-cv-267
                                 )
CTC CORPORATION and              )
BRUCE LAUMEISTER,                )
                                 )
       Defendants.               )

## ENTRY ORDER
## RE: RULINGS OF THE COURT:

### PLAINTIFFS' REQUEST FOR INJUNCTIVE AND DECLARATORY RELIEF

1. The parties agree and the court so orders that Defendants and Ms. Launderville shall not act as Plan Administrators, which task shall be undertaken by the court unless it orders otherwise. Plaintiffs' requests for relief in Count II of their Second Amended Complaint are therefore DENIED AS MOOT.

### BASE AMOUNT AND CALCULATION OF RESTORATION AWARD

2. Based upon the mandate dated October 20, 2021 from the Court of Appeals for the Second Circuit (the "mandate"), the court adopts its Findings of Fact which were not challenged on appeal and are the law of the case. The court thus rejects Plaintiffs' request to adopt a new Base Amount for the calculation of the amount to be restored to the Plan. In its mandate, the Second Circuit approved the court's use of the Base Amount for purposes of remand:

> Although it was undisputed that CTC continued contributing to the Plan account after 1997, the district court determined that it could not estimate the amount of such contributions with sufficient confidence to include them in its calculation of damages and therefore declined to do so. Plaintiffs do not challenge this determination on appeal and instead seek damages based only on the 1997 balance of the Plan account.

(Doc. 245-1 at 21).

The Second Circuit directed the court to "recalculate [the Restoration Award] in order to capture losses through the date of judgment." *Id.* at 46. The court must follow this mandate and will do so. *See Havlish v. 650 Fifth Ave. Co.*, 934 F.3d 174, 181-82 (2d Cir. 2019) ("A district court must follow the mandate issued by an appellate court. Where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so. Where a mandate limits the issues open for consideration on remand, a district court ordinarily cannot consider additional issues.") (citations, footnote, brackets, and internal quotation marks omitted).

Because Plaintiffs offered no evidence of the Restoration Award as of the date of the Final Judgment using the Base Amount minus known distributions, there is presently insufficient evidence on this point. Plaintiffs may recall their expert witness or submit other evidence for the purposes of supplying this evidence.

## PLAN PERCENTAGES

3. The parties have stipulated that the Plan Participation percentages set forth in Exhibit 42 shall be used to determine the Restoration Award as of the date of the Final Judgment. The court hereby adopts those percentages as its Findings of Fact subject to correction through the claim form process described herein.

## CALCULATION METHODOLOGY

4. The court has ruled that the Restoration Award shall be calculated consistent with the methodology set forth in Richard Heaps's Table 4 with no adjustments for additional contributions (by employer or employee) based upon Plaintiffs' concession that there is no evidence of additional contributions.

Defendants shall be permitted to provide evidence of additional distributions consistent with this Entry Order and may challenge Mr. Heaps's rate of growth projections through briefing and through expert witness testimony at the court's next evidentiary hearing.

## CTC'S STATUS AS A DEFENDANT IN FINAL JUDGMENT

5. The parties agree that CTC Corporation shall be a Defendant responsible for the claims asserted against it and the court's Final Judgment shall reflect that status.

## PLAINTIFFS ARE VESTED

6. Consistent with the Second Circuit's mandate, the court rules that, pursuant to ERISA's minimum vesting schedules, 29 U.S.C. §§ 1053(a)(2)(B), 1053(b)(1)(C), Plaintiffs are vested. As the mandate states:

   > Given that the Plan was offered beginning in 1990 at the latest, the district court's own findings of fact confirm that all Plaintiffs' accrued benefits had fully vested irrespective of which vesting schedule applied, as each of them (or, in the case of Jamieson and Burgess, their mother) completed well over six years of full-time service with CTC after 1990.

   (Doc. 245-1 at 64-65.)

## WAIVER OF STRICT COMPLIANCE WITH PLAN ELIGIBILITY

7. The court finds Defendants have waived their right to insist upon strict compliance with the Plan's eligibility requirements other than the requirements set forth in ERISA's minimum vesting provisions because there is no evidence Defendants have ever insisted on strict compliance, Defendants destroyed virtually all records in their possession, custody, and control that might demonstrate such compliance, and because Defendants themselves failed to comply with the Plan's and ERISA's requirements. Accordingly, Plaintiffs and Plan Participants need not establish matching contributions to the Plan. Under such circumstances, the court finds that Defendants have waived and are estopped from insisting on strict compliance with Plan requirements, as observed in the mandate. *See* (Doc. 245-1 at 60) ("[T]he record demonstrates CTC itself . . . continued to deposit deferred compensation earmarked for each participant in the Plan account and took no steps to verify compliance with the 3% contribution requirement, suggesting that, even if the requirement were intended as a condition, CTC was content to waive it.") (footnote omitted).

## CLAIM FORM FOR PLAN PARTICIPANTS

8. Plan participants who are not Plaintiffs are entitled to notice and an opportunity to be heard. In consultation with Plaintiffs' counsel, Defendants' counsel shall draft a claim form for all Plan Participants that may seek relevant information including requesting Plan Participants to attest to their years of service at CTC Corporation, their status during that time period as full-time employees, any Plan distributions received to date, any evidence of CTC employment or Plan participation in their possession, custody, or control, and any information relevant to Defendants' affirmative defenses.

At Defendants' expense, Defendants shall cause personal service of this claim form upon any Plan Participant who has not received mailed notice of this proceeding as set forth in the Affidavit Regarding Service (Doc. 279) filed by Plaintiffs' counsel. Plan Participants who have previously received certified notice as set forth in the Affidavit Regarding Service need not be personally served with the claim form but may, instead, be again served by certified mail.

Service shall take place or shall be attempted no later than July 1, 2022 and shall require a return of the claim form to Defendants' counsel no later than July 20, 2022. Defendants' counsel shall promptly share each claim form received with Plaintiffs' counsel.

The court has DENIED Defendants' motion for joinder finding it was untimely filed and would unduly delay the proceedings.

## DEFENDANTS' AFFIRMATIVE DEFENSES

9. No later than August 4, 2022, Defendants shall notify Plaintiffs and the court as to the nature of their affirmative defenses, if any, they intend to raise with regard to each Plan Participant. Defendants, upon request, may elect to cross-examine Plan Participants by notifying the court in writing of their intention to do so by August 8, 2022. It shall be Defendants' responsibility to subpoena or otherwise present each witness for cross-examination and rebuttal examination by Plaintiffs' counsel at the court's next hearing.

## DISMISSAL OF BROWE AND LAUNDERVILLE BREACH OF FIDUCIARY DUTY CLAIMS

10. Over Plaintiffs' objection, the court hereby DISMISSES the breach of fiduciary duty claims of Plaintiffs Browe and Launderville consistent with the mandate:

    > We agree with Defendants that Launderville and Browe had knowledge of the fiduciary breaches underlying the claims. That conclusion flows directly from the district court's finding that both of them were actually aware of Laumeister's misappropriation of Plan assets. Moreover, Plaintiffs themselves alleged that "Laumeister admitted to Launderville that he had been using Plan assets to pay for CTC's business expenses." Thus, Browe's and Launderville's fiduciary claims are, as a formal matter, time-barred, and they would not have been able to bring those claims if they were the only Plaintiffs. . . . It may therefore be appropriate for the district

4

court, on remand, to dismiss Browe and Launderville as
plaintiffs with respect to the breach of fiduciary duty claim.

(Doc. 245-1 at 28-28 n.8) (citations omitted).

## INDEMNITY AND CONTRIBUTION

11. The parties agree that no further evidence shall be presented with regard to the issues of indemnity and contribution. As the proponents of these claims, Defendants must establish their entitlement to this form of relief and shall submit a memorandum in support of these claims no later than August 16, 2022. Plaintiffs shall have fourteen (14) days thereafter the filing of Defendants' memorandum to file their opposition.

## ATTORNEY'S FEES AND COSTS

12. After the court issues a Judgment in this matter, it will set a briefing schedule to resolve the issue of attorney's fees and costs.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 7th day of June, 2022.

Christina Reiss, District Judge
United States District Court