UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 APR 17  PM 3: 52

CLERK

BY _____
DEPUTY CLERK

DONNA BROWE, TYLER BURGESS,       )
BONNIE JAMIESON, PHILIP JORDAN,   )
LUCILLE LAUNDERVILLE, and         )
THE ESTATE OF BEVERLY BURGESS,    )
                                  )
        Plaintiffs,               )
                                  )
    v.                            )        Case No. 2:15-cv-267
                                  )
CTC CORPORATION and               )
BRUCE LAUMEISTER,                 )
                                  )
        Defendants.               )

**OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR**
**RECONSIDERATION, DENYING DEFENDANTS' MOTION FOR**
**RECONSIDERATION, AND DENYING WITHOUT PREJUDICE PLAINTIFFS'**
**MOTION FOR ATTORNEY'S FEES AND DEFENDANTS' MOTION FOR**
**ATTORNEY'S FEES**
(Docs. 341, 342, 343, & 347)

Pending before the court are Plaintiffs' motion for reconsideration (Doc. 342),

Defendants' motion for reconsideration (Doc. 343), Plaintiffs' motion for attorney's fees

and expenses (Doc. 341), and Defendants' motion for attorney's fees and expenses (Doc.

347).

Plaintiffs are represented by John D. Stasny, Esq. Defendants are represented by

Lon T. McClintock, Esq., and Nicole M. Bodoh, Esq.

**I.      Factual and Procedural Background.**

The parties do not challenge the court's findings of fact except with respect to

those pertaining to the Plan account for Eileen Bliss, which are set forth below.

**II.     Conclusions of Law and Analysis.**

**A.      Plaintiffs' Motion for Reconsideration.**

Plaintiffs ask the court to order Defendants to pay the Plan as opposed to Plan

participants and to name an interim administrator, escrow agent, special master, or receiver. Plaintiffs, however, have not proposed an entity or person who they believe should be the fiduciary in charge of Plan assets and have proffered no evidence for the court to consider.

Plaintiffs further seek reconsideration of the court's calculation of the account balance of Eileen Bliss which, in turn, affects the Plan's account balance. In doing so, Plaintiffs have abandoned their request that the court merely deduct Ms. Bliss's additional withdrawals from the Plan as if they occurred at the time of the court's hearing without reflecting their impact on the growth of the Plan account balance over time. Plaintiffs' approach was not endorsed by Plaintiffs' expert witness, Richard Heaps; was not supported by applicable law or the law of the case; would treat the additional Bliss withdrawals differently than all other withdrawals from the Plan; and would artificially inflate the amounts due to Ms. Bliss, facts known to Plaintiffs when they presented this approach. The court offered Plaintiffs the opportunity to provide a supplementary opinion by Mr. Heaps, which they declined to do.[1]

Plaintiffs now point to an alternative calculation they offered which represents "a recalculation of Ms. Bliss's account using the rates provided by Plaintiffs' expert, with withdrawals accounted for as of the years made." (Doc. 342 at 4) (citing Doc. 335 at 7). This calculation more closely hues to their expert witness's opinion and to the Second Circuit's ruling that "the district court should presume that Plan funds 'would have been treated like other funds being invested during the same period in proper transactions. Where several alternative investment strategies were equally plausible, the court should presume that the funds would have been used in the most profitable of these." *Browe v. CTC Corp.*, 15 F.4th 175, 199 (2d Cir. 2021 (quoting *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985)). As Defendants point out, however, Plaintiffs were previously offered the opportunity to have their expert witness calculate the correct amount of the

---

[1] The court agrees with Defendants' recitation of the facts set forth in Doc. 349, which reflect Defendants' good faith efforts to take a reasonable and expeditious approach to determining the Plan balance.

Bliss account, have relied instead on their counsel's calculations, and have thus arguably waived their argument that the account balance is in error. As Defendants concede, however, a finding of waiver would prejudice Ms. Bliss, who is entirely without fault in the matter.

"It is well-settled that a party may move for reconsideration and obtain relief only when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). This standard must be "narrowly construed and strictly applied so as to 'avoid duplicative rulings on previously considered issues' and prevent [motions for reconsideration] from being used to advance theories not previously argued or 'as a substitute for appealing a final judgment.'" *Merced Irrigation Dist. v. Barclays Bank PLC*, 178 F. Supp. 3d 181, 183 (S.D.N.Y. 2016) (quoting *Montanile v. Nat'l Broad. Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002)); *accord Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) ("[T]he standard for granting a []motion for reconsideration is strict[.]") (alteration adopted) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). A motion for reconsideration is not "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]'" *See Tonga Partners, L.P.*, 684 F.3d at 52 (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

With regard to Plaintiffs' first request for reconsideration, the court has ordered an immediate payment of the amounts due to Plan Participants and ordered Defendants to place the approximate amount due in Defendants' counsel's IOLTA account pending the court's remedial plan. Immediate disbursement is the best means of ensuring that Plan benefits are distributed to Plan participants, many of whom are elderly, as soon as possible. The court agrees, however, that if there is further delay in disbursement or if there is an appeal, the court should order disbursement to a person or entity for the funds' proper investment. It directs the parties to meet and confer for this purpose within thirty

3

(30) days of this Order and to advise the court of their proposed selection.

To the extent that the court has erred in calculating the proper amount due to Ms. Bliss, the parties have contributed to that error. Plaintiffs not only proffered an approach that lacked a good faith factual and legal basis but declined to have their expert witness opine as to how the additional withdrawals would affect the Bliss account and the Plan balance. Defendants, in turn, proffered no expert witness testimony of their own and instead relied upon a Department of Labor calculator. In light of Plaintiffs' alternative calculation that more closely reflects the treatment of all other Plan withdrawals, the court invited Defendants to respond to it and Defendants have done so. The court agrees with Defendants' suggestion that the court should order Plaintiffs to provide Mr. Heap's calculation of the proper Bliss account balance and Plan balance based on the court's determination of the additional Bliss withdrawals ($217.15 per month from May 2006 through December 2013).

For the reasons stated above, the court hereby GRANTS IN PART AND DENIES IN PART Plaintiffs' motion for reconsideration. Plaintiffs are hereby ORDERED within twenty (20) days to provide Mr. Heaps's calculation of the Bliss account balance and the Plan balance in light of the additional withdrawals found by the court ($217.15 per month from May 2006 through December 2013). Plaintiffs are hereby ORDERED to meet and confer with Defendants and to propose within thirty (30) days an individual or entity to act as an escrow agent or receiver and to advise the court of the same.

B.     Defendants' Motion to Reconsider.

Defendants seek reconsideration because the court found in their favor on their statute of limitations defense as to Plaintiffs Browe's and Launderville's claim to recover benefits under the Plan and yet allowed those plaintiffs to recover benefits on the same terms as other Plan participants under 29 U.S.C. § 1344. This is a difficult issue, one apparently of first impression, however, Defendants point to no new evidence or controlling law that the court has failed to consider. Defendants' supplemental authority does not address what happens when a failed top hat plan violates ERISA and a court must restore the Plan balance and fashion a remedial order for its disbursement when

4

some, but not all, Plan participants' claims for benefits are barred by the applicable statute of limitations.

On the one hand, the court agrees that Defendants have a valid statute of limitations defense against Plaintiffs Launderville and Browe and the court's remedial plan should reflect these parties are not similarly situated to other Plan participants. On the other hand, to require Plaintiffs Launderville and Browe to forfeit vested Plan benefits which Defendants wholly failed to safeguard as required by ERISA would effectively return those funds to Defendants in contravention of ERISA.

Contrary to Defendants' contention, the Second Circuit's ruling requiring the court to provide an appropriate distribution of excess funds, if any, remaining after the claims have been paid out did not clearly signal the Second Circuit's opinion that Plaintiffs Browe and Launderville had forfeited all claims to Plan benefits. The court's factual findings were undisturbed on appeal. The Second Circuit could have issued that ruling had it chosen to do so, but instead it held that the court should consider Defendants' defenses, adhere to 29 U.S.C. § 1344, and fashion a remedial plan.

To the extent Defendants claim that the statute of limitations has no import if the court fails to reconsider its ruling, that argument is without merit. Plaintiffs Launderville and Browe may not recover attorney's fees and costs for claims on which they did not prevail and may have an obligation to pay Defendants' attorney's fees on those issues. In addition, beyond the court's remedial order, they have no enforcement mechanism against Defendants.

Because Defendants have not satisfied the exacting standard for reconsideration, the court DENIES their motion for reconsideration on statute of limitations grounds.

## C.    Whether to Award Attorney's Fees.

The parties have filed cross-motions for attorney's fees. Plaintiffs assert they are the prevailing parties and contend $435,000 is a fair estimate of the fees they have incurred. Defendants ask the court to find they have prevailed on the key issues in this case and seek attorney's fees in the amount of $562,580.85. Both requests for attorney's fees reflect the duration of this case, the hard work and expertise of counsel, and the

lengthy proceedings and appeal. Unfortunately, the substantial attorney's fees requests also reflect an unnecessarily combative approach, especially by Plaintiffs' counsel, which materially and needlessly impacted the duration of the case, the resources expended, and the resolution of these proceedings.[2] The fees further reflect the difficult issues raised by this case which involved a purported "top hat" plan intended to be free from ERISA's many constraints, but which was not, and for which almost all of the records were destroyed.[3]

The court has "discretion [] to determine what constitutes a reasonable fee." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998)). "[W]hen a prevailing party is entitled to attorney's fees, the [] court 'must abide by the procedural requirements for calculating those fees articulated by [the Second Circuit] and the Supreme Court.'" *Id.*

The court calculates attorney's fees under the "lodestar" approach, whereby it calculates a "presumptively reasonable fee" based on a reasonable hourly rate and the reasonable number of hours required by the case. *Id.* (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)). The presumption of reasonableness is "strong[,]" and the lodestar may only be adjusted in "rare and exceptional circumstances." *Perdue*, 559 U.S. at 552-53 (internal quotation marks and citations omitted). "[T]he fee applicant bears the burden of establishing entitlement to an award[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

---

[2] Plaintiffs' counsel's advocacy in favor of his clients was commendably zealous. However, at times, he was unnecessarily uncooperative with both opposing counsel and with the court which made the proceedings needlessly adversarial. The court addressed this issue in open court, reminding counsel to keep his arguments respectful; in writing; and in a chambers conference at Defendants' counsel's request. Cooperation would have resulted in a better and more expeditious resolution consistent with Fed. R. Civ. P. 1.

[3] Although the court had virtually no wage information for CTC Corporation employees and the Plan participants other that Defendant Bruce Laumeister's memory, after the court had issued its first Findings of Fact, Plaintiffs' counsel advised that he had obtained Social Security Statements of Earnings for the Plaintiffs but chose not to present them as evidence to the court.

### 1.    Reasonable Hourly Rate.

"The reasonable hourly rate is the rate a paying client would be willing to pay[,] bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190; *accord Perdue*, 559 U.S. at 552 ("[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case."). In determining the hourly rate a reasonable client would be willing to pay, the court must consider case-specific variables, including:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184 (footnote omitted). Other relevant case-specific variables include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989) (clarifying that the fee arrangement factor is "but a single factor and not determinative" and "a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees")); *see also Arbor Hill*, 522 F.3d at 190 ("In determining what rate a paying client

would be willing to pay, the district court should consider, among others, the *Johnson* factors[.]"). As the Second Circuit has observed, "attorney's fees are to be awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees." *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 266 (2d Cir. 2014) (internal quotation marks and citation omitted). "[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained[.]" *Barfield v. N.Y.C. Health & Hosp. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)) (internal quotation marks omitted). The court is not limited to assessing success on individual claims, but rather must consider "the [overall] quantity and quality of relief obtained[.]" *Id.* (quoting *Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997)).

While the rate an attorney charges to paying clients may be evidence of a reasonable hourly rate, it is not dispositive. *See Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001) ("[T]he actual billing arrangement is a significant, though not necessarily controlling, factor in determining what fee is 'reasonable.'"). When calculating a presumptively reasonable fee, the court looks to the "approximate market rate" in the relevant community, *Arbor Hill*, 522 F.3d at 192, which is typically defined as the district in which the district court sits. *See Simmons v. New York City Transit Auth.*, 575 F.3d 170, 175 (2d Cir. 2009) ("[A] district court must first apply a presumption in favor of application of the forum rule."). District courts "may use an out-of-district hourly rate . . . in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates." *Arbor Hill*, 522 F.3d at 191. For example, a party may "establish that a reasonable client would have selected out-of-district counsel because doing so would likely produce a substantially better net result," *Simmons*, 575 F.3d at 175, or that "special expertise" of out-of-district counsel is required. *Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). Absent such a showing, the court presumes that a reasonable client would "in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." *Arbor Hill*, 522 F.3d at 191. A district court judge

8

may "rely in part on the judge's own knowledge of private firm hourly rates in the community." *See Miele v. New York State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987). Neither party has presented evidence of a reasonable market rate.

### 2.    Reasonable Number of Hours.

To determine whether the number of hours spent on a matter were reasonable, the court examines the party's contemporaneous time records. These records must "specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). The relevant question is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). "Hours that are excessive, redundant, or otherwise unnecessary are to be excluded; and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application[.]" *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal quotation marks and citations omitted). "[The Second Circuit] do[es] not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). Neither party has presented contemporaneous time records.

### 3.    Costs and Expenses.

In the Second Circuit, "attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989). These expenses must be "incidental and necessary" to the representation. *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987). At this juncture, the court has either limited or no evidence of the parties' costs.

### 4.    The Likelihood of an Appeal.

District courts in the Second Circuit are "not required to resolve the motion for attorney's fees before the appeal is completed. Indeed, [c]ourts in this Circuit regularly

defer the award of attorney's fees or deny the motion without prejudice pending the resolution of an appeal on the merits." *Apex Emps. Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.*, 2017 WL 456466, at *12 (S.D.N.Y. Feb. 1, 2017) (citing cases). As a result, when a party appeals the merits of a case and subsequently files a motion for attorney's fees, the court "may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing under [Rule 54] subdivision (d)(2)(B) a new period for filing after the appeal has been resolved." *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 226 (2d Cir. 2004) (quoting Fed. R. Civ. P. 54(d) advisory committee's note to 1993 amendment) (italics omitted); *see also Apex Emps. Wellness Servs., Inc.*, 2017 WL 456466, at *12 ("Deferring a ruling on [a] motion for attorney's fees until the Second Circuit resolves [the] appeal ensures that this [c]ourt only has to address the motion for attorney's fees by the party that ultimately prevails.").

Here, although no appeal is pending, if one is filed, it could materially impact the determination of prevailing party status. In the interest of conserving judicial and party resources, and because "immediate resolution of the collateral issue of whether [either party is] entitled to attorney[']s fees is unlikely to assist the Court of Appeals[,]" *Gill v. Bausch & Lomb Supplemental Ret. Income Plan I*, 2014 WL 1404902, at *1 (W.D.N.Y. Apr. 10, 2014) (internal quotation marks omitted), the court DENIES WITHOUT PREJUDICE the motions for attorney's fees until it is determined whether there will be an appeal. If there is no appeal, the parties may renew their motions for attorney's fees with the information that is currently lacking for the court's consideration.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for reconsideration is GRANTED IN PART AND DENIED IN PART (Doc. 342), and Defendants' motion for reconsideration is DENIED (Doc. 343). Plaintiffs are hereby ORDERED within twenty (20) days to provide Mr. Heaps's calculation of the Bliss account balance and the Plan balance in light of the additional withdrawals found by the court ($217.15 per month from May 2006 through December 2013). The parties are hereby ORDERED to meet and confer and to propose within thirty (30) days an individual or entity to act as an escrow agent or

receiver and to advise the court of the same.

The court DENIES WITHOUT PREJUDICE Plaintiffs' motion for attorney's fees and expenses (Doc. 341), and Defendants' motion for attorney's fees and expenses (Doc. 347).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this __17th__ day of April, 2023.

Christina Reiss, District Judge
United States District Court