U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 APR 23 PM 4: 50

CLERK
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

DONNA BROWE, TYLER BURGESS,                )
BONNIE JAMIESON, PHILIP JORDAN,            )
LUCILLE LAUNDERVILLE, and                  )
THE ESTATE OF BEVERLY BURGESS,             )
                                           )
            Plaintiffs,                    )
                                           )
      v.                                   )        Case No. 2:15-cv-00267-cr
                                           )
CTC CORPORATION and                        )
BRUCE LAUMEISTER,                          )
                                           )
            Defendants.                    )

**OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS' AMENDED
RENEWED MOTION FOR ATTORNEY'S FEES AND
GRANTING IN PART AND DENYING IN PART PLAINTIFFS' RENEWED
MOTION FOR ATTORNEY'S FEES**
(Docs. 401, 403)

Plaintiffs Donna Browe, Tyler Burgess, Bonnie Jamieson, Philip Jordan, Lucille Launderville, and the Estate of Beverly Burgess (collectively, "Plaintiffs") brought suit against Defendants CTC Corporation ("CTC") and Bruce Laumeister (collectively, "Defendants"), alleging that Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1191c, by failing to adequately fund and by wrongfully denying them benefits under 1990 and 1997 deferred compensation plans (collectively, the "Plan"). Plaintiffs further alleged that Defendants breached fiduciary duties and reporting and disclosure obligations owed to them under ERISA. Plaintiffs brought suit on behalf of themselves and other participants in the Plan ("Plan Participants"). Defendants asserted a counterclaim against Plaintiff Launderville for contribution and indemnification for her role as a breaching co-fiduciary.

Plaintiffs are represented by John D. Stasny, Esq. Defendants are represented by Alexandra E. Edelman, Esq., Lon T. McClintock, Esq., Nicole M. Bodoh, Esq., and Ryan M. Long, Esq.

## I.    Factual and Procedural Background.

The court's June 22, 2018 findings of fact, (Doc. 216); December 16, 2022 first supplemental findings of fact, (Doc. 337); and April 7, 2026 second supplemental findings of fact are reincorporated herein. (Doc. 413.) The court briefly summarizes the relevant facts and procedural history for purposes of the parties' pending motions for attorney's fees.

Defendant Laumeister created the Plan for certain employees of his company, CTC. Plaintiff Launderville, who was, at various times, a President, Director, and Chief Operating Officer at CTC, became an administrator of the Plan sometime thereafter. Starting in 2004, Defendant Laumeister, with the assistance of Plaintiffs Launderville and Browe, began withdrawing funds from the Plan in order to pay CTC's operating expenses. By 2008, Plaintiffs Launderville and Browe knew that CTC was struggling financially and entered into a side deal with Defendant Laumeister, in which Defendant Laumeister was to personally fund Plaintiffs Launderville's and Browe's Plan benefits. Plaintiffs Launderville and Browe remained silent regarding the Plan's shortfall and their side deal until 2015, when it fell through. Thereafter, together with other Plaintiffs, they filed this action.

The court held a five-day bench trial, from December 6-8, 2017, and March 5-6, 2018. On June 22, 2018, the court issued its findings of fact and conclusions of law, (Doc. 216), wherein it granted judgment in Defendants' favor on Count I, finding that they did not wrongfully deny Plaintiffs benefits under the Plan, and on Count II, denying Plaintiffs' request for declaratory judgment and injunctive relief. The court granted judgment in Plaintiffs' favor on Counts III through V, finding that Defendant Laumeister and Plaintiff Launderville breached their fiduciary duties with respect to the 1997 Plan. The court granted judgment in Plaintiffs' favor on Count VI, finding that Defendant Laumeister and Plaintiff Launderville violated their reporting and disclosure

requirements under ERISA. Finally, the court granted judgment in Defendants' favor with respect to their counterclaim seeking contribution from Plaintiff Launderville. The court declined to award attorney's fees to either Plaintiffs or Defendants.

The parties appealed the court's decision to the Second Circuit. *See Browe v. CTC Corp.* ("*Browe I*"), 15 F.4th 175 (2d Cir. 2021). After the Second Circuit's remand, on December 16, 2022, this court issued supplemental findings of fact, conclusions of law, and a remedial order (the "First Remedial Order"). (Doc. 337.) Therein, the court found for Plaintiffs on their wrongful denial of benefits claim. Consistent with the Second Circuit's opinion, the court held that Plaintiffs Launderville's and Browe's claims to recover benefits under the Plan were barred by the statute of limitations because "both knew that 'CTC's cash flow was insufficient to pay its general creditors or to fund its deferred compensation accounts[]'" but "sought to take advantage of their insider status to secure a side deal with Defendant Laumeister that was unavailable to other Plan Participants." *Id.* at 17. Based on the Second Circuit's mandate, the court found that "any reasonable person in their situation would have been aware of a cause of action, regardless of whether that person knew the precise legal claim to be advanced." *Id.* at 18. Notwithstanding that finding, the court held that Plaintiffs Launderville and Browe were entitled to receive their vested benefits as part of the court-ordered termination of the Plan because "denial of Plaintiffs Browe's and Launderville's rights to bring a claim against Defendants for recovery of benefits does not automatically forfeit their right to vested benefits pursuant to the court's remedial order[]" and "while Plaintiffs Browe and Launderville may be precluded from bringing a legal claim for recovery of benefits, they are otherwise similarly situated to all other Plan Participants and should be treated the same[.]" *Id.* at 18-19 (footnote omitted).

The court ordered that Defendants pay Plaintiffs a Restoration Award and ruled that Defendants were entitled to seek contribution from Plaintiff Launderville in the amount of one half of the Restoration Award because "she had considerable discretion in Plan management including proposing candidates for Plan participation and notifying at least one Plan Participant's heirs that no benefits were available[,]" and her participation

3

in Defendants' breaches of trust "was knowing, voluntary, and intentional and not merely negligent." *Id.* at 22.

In an April 17, 2023 Opinion and Order, the court denied both parties' motions for reconsideration and denied both parties' motions for attorney's fees without prejudice. The court, in relevant part, stated that "the substantial attorney's fees requests also reflect an unnecessarily combative approach, especially by Plaintiffs' counsel, which materially and needlessly impacted the duration of the case, the resources expended, and the resolution of these proceedings." (Doc. 359 at 6.) With respect to Plaintiffs' counsel, the court observed:

> Plaintiffs' counsel's advocacy in favor of his clients was commendably zealous. However, at times, he was unnecessarily uncooperative with both opposing counsel and with the court which made the proceedings needlessly adversarial. The court addressed this issue in open court, reminding counsel to keep his arguments respectful; in writing; and in a chambers conference at Defendants' counsel's request. Cooperation would have resulted in a better and more expeditious resolution consistent with Fed. R. Civ. P. 1.

*Id.* at 6 n.2.

The parties again appealed the court's decisions to the Second Circuit. *See Browe v. Laumeister* ("*Browe II*"), 2025 WL 471125 (2d Cir. Feb. 12, 2025). On appeal, the Second Circuit held that the court must "assess CTC's liability, if any[,]" and "may once again revisit the allocation of liability between [Plaintiff] Launderville and [Defendant] Laumeister in assessing the liability, if any, of CTC, but its reasoning in the [First Remedial Order] as to the two was not an abuse of discretion." *Id.* at *3 (internal quotation marks omitted). The Second Circuit also held that Plaintiffs Launderville and Browe "are not entitled to allocations pursuant to [29 U.S.C.] § 1344 upon termination of the Plan[]" "[b]ecause [their] claims are time-barred, they are not 'participants' in the Plan, as defined by ERISA, and are not entitled to recover benefits from the Plan.'" *Id.* at *5.

After the Second Circuit's remand, on April 7, 2026, this court issued supplemental findings of fact, conclusions of law, and a remedial order (the "Second

4

Remedial Order"), finding that CTC, Defendant Laumeister, and Plaintiff Launderville are "equally at fault[]" and that Plaintiff Launderville is thus "liable for an approximate one-third, 33.3%, contribution to Defendants Laumeister and CTC for their payment of the Restoration Award to date." (Doc. 413 at 7.) In accordance with the Second Circuit's ruling, the court also held that Plaintiffs Launderville and Browe "are not entitled to receive benefits under the Plan pursuant to 29 U.S.C. § 1344, whether those benefits are vested or unvested." *Id.*

On remand from *Browe II*, the court allowed the parties to renew their motions for attorney's fees. On September 24, 2025, Defendants filed an amended renewed motion for attorney's fees. (Doc. 401.) On October 24, 2025, Plaintiffs opposed the motion, (Doc. 407), and Defendants replied on November 7, 2025. (Doc. 412.) On September 24, 2025, Plaintiffs Burgess, Jamieson, Jordan, and the Estate of Beverly Burgess (the "Remaining Plaintiffs")[1] filed a renewed motion for attorney's fees. (Doc. 403.) On October 24, 2025, Defendants opposed the motion, (Doc. 406), and the Remaining Plaintiffs did not file a reply.

## II.    Conclusions of Law and Analysis.

### A.    Whether to Award Defendants Attorney's Fees.

Defendants request an award of attorney's fees and costs in the amount of $822,424.47, arguing that:

> After a decade of litigation needlessly driven by Plaintiffs' overly combative litigation approach and relentless refusal to compromise, demonstrated by two appeals and several motions for reconsideration, the Second Circuit concluded that Plaintiffs [] Browe . . . and Launderville . . . hold no colorable claims to ERISA benefits as their claims are time-barred by the applicable statute of limitations and that [Plaintiff] Launderville, as a breaching co-fiduciary, is liable in contribution to Defendants. All of the remaining participants and beneficiaries of the [Plan] . . . were paid by Defendants over two years ago.

---

[1] All Plaintiffs, except Plaintiffs Launderville and Browe, move for attorney's fees. As this court ruled in its April 17, 2023 Opinion and Order, in part denying Plaintiffs' and Defendants' motions for attorney's fees, "Plaintiffs Launderville and Browe may not recover attorney's fees and costs for claims on which they did not prevail and may have an obligation to pay Defendants' attorney's fees on those issues." (Doc. 359 at 5.)

> Defendants spent the majority of their time and resources in this matter defending against the unnecessary and aggressive pursuit of claims by [Plaintiffs] Browe and Launderville—who relentlessly refused to compromise with Defendants, despite many opportunities to do so. As set forth in detail below, based on the record, Defendants succeeded on the merits of their defenses and counterclaims, and the significant fees that Defendants incurred as a result of [Plaintiffs] Browe['s] and Launderville's litigious approach are reasonable under the circumstances which were noted by the [c]ourt in the April 17, 2023 Opinion and Order ([Doc.] 359). Fees incurred since that time relate to Defendants' defense of Plaintiff[s'] second appeal to the Second Circuit[] and Defendants' successful prosecution of its cross-appeal.

(Doc. 401 at 1-2.) Defendants submitted a chart in support of their calculation and state that, "[u]pon request, [they] will submit supporting billing records detailing the figures[.]" *Id.* at 13 n.2.

### 1.    Whether Defendants Have Standing to Obtain Attorney's Fees.

Under ERISA, "[i]n any action under this subchapter . . . *by a participant, beneficiary, or fiduciary*, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1) (emphasis supplied). Plaintiffs argue that Defendants are "former fiduciaries" and therefore not "one of the parties enumerated in § 1132(g)(1)." (Doc. 407 at 8) (emphasis omitted). "The express language of the statute authorizes an award of attorney's fees only when the action is brought by one of the parties enumerated in § 1132(g)(1)." *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 229 (9th Cir. 1994) (citation omitted). For this reason, courts "have refused to award attorney's fees in ERISA actions not brought by one of the enumerated parties." *Id.* (footnote and citation omitted).

Plaintiffs' contention that Defendants are "former fiduciaries" relies on a theory they raised in the parties' second appeal, wherein Plaintiffs argued that "Defendants . . . were removed from their role as administrators of the Plan after the first remand from [the Second Circuit]" and, therefore, lacked statutory standing to cross-appeal "[b]ecause they are no longer Plan administrators[.]" Response and Reply Brief for Appellants at 14-15, *Browe II*, 2025 WL 471125 (No. 23-1215). The Second Circuit rejected Plaintiffs' argument, explaining that:

6

> Statutory standing is not relevant to whether Defendants can bring this cross-appeal. [29 U.S.C. § 1132(a)(1)] limits the ability of plaintiffs to bring suit. One of the ways it does so is by limiting the defendants against whom suit may be brought. But statutory standing is "a question of whether the particular plaintiff has a cause of action under the statute." It neither limits who may defend a cause of action that exists under the statute, nor who may appeal a judgment once entered.

*Browe II*, 2025 WL 471125, at *4 (internal citations omitted).

Plaintiffs' "former fiduciary" theory appears to be based on a footnote in *Browe I*:

> Even if Laumeister had styled his counterclaim as seeking such relief [on behalf of the Plan], it is questionable whether he would have standing to pursue relief on behalf of the Plan given that he has consistently taken the position that the Plan no longer exists. *See Chemung [Canal Tr. Co. v. Sovran Bank/Maryland ("Chemung")]*, 939 F.2d [12,] 14 [(2d Cir. 1991)] ("[ERISA] names only three classes of persons who may commence an action [for fiduciary breaches], and a former fiduciary is not one of them.").

*Browe I*, 15 F.4th at 201 n.18. However, in its June 22, 2018 findings of fact and conclusions of law, the court determined that Defendants were fiduciaries of the Plan, *see* Doc. 216 at 62, and neither this court nor the Second Circuit has found that Defendants are now former fiduciaries. Even if they were declared former fiduciaries, Defendants do not lack standing to seek attorney's fees under ERISA.

In arguing that former fiduciaries cannot recover attorney's fees under ERISA, Plaintiffs rely on *Chemung*, 939 F.2d 12, and *Corder*, 53 F.3d 225. In *Chemung*, the Second Circuit addressed whether a former fiduciary could bring suit under 29 U.S.C. § 1132(a), which it answered in the negative, because the statute "names only three classes of persons who may commence an action, and a former fiduciary is not one of them. Those who can sue are: (1) a participant or beneficiary, (2) the Secretary of Labor, and (3) a fiduciary." *Chemung*, 939 F.2d at 14 (citation omitted). *Chemung*, however, did not address whether former fiduciaries can obtain attorney's fees under 29 U.S.C. § 1132(g)(1).

In *Corder*, plan participants brought suit for breach of fiduciary duties, and the ERISA plan crossclaimed for indemnity against a trustee. The district court dismissed the plan's crossclaim against the trustee and awarded the trustee attorney's fees, and the

Ninth Circuit reversed that decision, reasoning that "[t]he [p]lan was clearly not an enumerated party under § 1132(g)(1)" and "the [p]lan's possible status as a fiduciary did not survive summary judgment[.]" *Corder*, 53 F.3d at 231. In doing so, the Ninth Circuit recognized two exceptions to the rule that only an enumerated party under 29 U.S.C. § 1132(g)(1) may obtain attorney's fees in an ERISA action. "Under the first exception, a court may assess attorney's fees against a multi-employer benefit plan that unsuccessfully sues an employer for non-payment of ERISA contributions." *Id.* at 230 (citations omitted). Under the second exception, "when a party survives summary judgment and actually tries its case on the colorable theory that it is one of the enumerated parties specified in § 1132(g)(1), it may be subjected to an award of fees when it fails to prevail on that ground because its claim lacks any evidentiary basis." *Id.* at 230-31. The second exception arose out of *Credit Managers Association of Southern California v. Kennesaw Life & Accident Insurance Co.* ("*Kennesaw*"), 25 F.3d 743 (9th Cir. 1994), due to fairness concerns, which the Ninth Circuit explained as follows:

> During the eight years of litigation prior to this appeal, [the plaintiff] has purported to be a fiduciary to various ERISA plans and has asserted standing to pursue this case on behalf of the participants of those plans. We agree with [the defendant] that it would be unjust to permit [the plaintiff] to insulate itself from liability for attorney's fees simply because it failed to produce sufficient evidence to prevail on its claims. Indeed, the fact that [the plaintiff] pursued for so long a claim that lacked any evidentiary basis weighs in favor of awarding fees to [the defendant]. Accordingly, because [the plaintiff] colorably maintained that it was a fiduciary of an ERISA plan throughout the proceedings below, in a manner sufficient to withstand summary judgment, we conclude that the district court had authority to award attorney's fees under section 1132(g)(1) notwithstanding [the plaintiff]'s ultimate failure to prove its claims.

*Id.* at 747.

As Defendants point out, they "were brought into this case as fiduciaries and have been required to defend against fiduciary liability for the better part of a decade." (Doc. 412 at 4.) In *Kennesaw*, the Ninth Circuit found it was unjust to preclude the defendant from obtaining attorney's fees against the plaintiff because the plaintiff had "maintained that it was a fiduciary . . . in a manner sufficient to withstand summary judgment," and a

8

subsequent finding that the plaintiff was not a fiduciary should not enable it to avoid attorney's fees. 25 F.3d at 747. Adopting Plaintiffs' argument here would create an unjust and circular result in which Plaintiffs would escape any obligation to pay attorney's fees because they prevailed in ensuring Defendants lost their fiduciary status even though one Plaintiff lost her fiduciary status as well.

Plaintiffs further argue that Defendants' counterclaim cannot provide a basis to award attorney's fees under § 1132(g)(1) because a counterclaim for contribution is not "an 'action under this subchapter' for purposes of § 1132(g)(1)." (Doc. 407 at 7.) Within ERISA, "Congress created no explicit cause of action for contribution or indemnity." *Smith v. Loc. 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (citation omitted). However, in *Chemung*, using its "power to fashion a federal common law under ERISA," the Second Circuit held "that the traditional trust law right to contribution must also be recognized as a part of ERISA." *Chemung*, 939 F.2d at 16. In doing so, the Second Circuit recognized that a claim for contribution is not "the usual 'right of action'," because it "deals with allocating obligations among co-defendants and/or third parties[]" and is instead "a procedural device for equitably distributing responsibility for plaintiff's losses proportionally among those responsible for the losses, and without regard to which particular persons plaintiff chose to sue in the first instance." *Id.* at 15-16 (emphasis supplied). In so ruling, the Second Circuit did not recognize a new right of action for contribution under ERISA but recognized a right to contribution as an equitable remedy. *See Haddock v. Nationwide Fin. Servs., Inc.*, 570 F. Supp. 2d 355, 359 (D. Conn. 2008) (stating that in *Chemung*, the Second Circuit "rejected the suggestion that it was creating a new right of action under ERISA"); *H & R Convention & Catering Corp. v. Somerstein*, 2013 WL 1911335, at *8 (E.D.N.Y. May 8, 2013) ("As an 'equitable means of apportioning wrongdoing,' ERISA's right to contribution or indemnity is not an independent cause of action to sue for damages.") (citing *Chemung*, 939 F.2d at 15-16). As a result, Defendants' counterclaim for contribution is not a cause of action under ERISA for which attorney's fees are available pursuant to 29 U.S.C. §

9

1132(g)(1).[2]

For the reasons stated above, Defendants may not obtain attorney's fees arising from their counterclaim for contribution because it is not a cause of action under ERISA, but they have standing as fiduciaries to seek recovery of attorney's fees attributable to their defense of Plaintiffs' ERISA claims.

### 2. Whether Defendants Obtained Some Degree of Success on the Merits.

Under ERISA, "a court 'in its discretion' may award fees and costs 'to either party[]' as long as the fee claimant has achieved 'some degree of success on the merits[.]'" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010); *see also Scarangella v. Grp. Health, Inc.*, 731 F.3d 146, 152 (2d Cir. 2013) ("[T]he proper standard for finding a party eligible for attorney's fees in ERISA cases is 'some degree of success on the merits.'") (citations omitted). "A party does not meet this standard 'by achieving trivial success on the merits or a purely procedural victory,' but it does meet the standard 'if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue.'" *Scarangella*, 731 F.3d at 152 (quoting *Hardt*, 560 U.S. at 255).

As the Second Circuit has observed, "[t]he Supreme Court in *Hardt* appears to have left room for many factual scenarios to satisfy the standard of some success on the

---

[2] *See Harsch v. Eisenberg*, 956 F.2d 651, 663 (7th Cir. 1992) (denying plaintiff's request for attorney's fees "for that portion of the litigation that dealt with compensatory damages[]" because "an action for compensatory damages resulting from a plan fiduciary's breach of fiduciary duty is not an 'action under . . . Title I' of ERISA" and remanding with instructions that the district court "award the plaintiffs only those fees reasonably attributable to claims that may be brought under ERISA[;] that is, claims for benefits due, statutory penalties and the like[]") (alteration adopted); *Bos v. Bd. of Trs.*, 818 F.3d 486, 491 (9th Cir. 2016) ("[The plaintiff]'s attempt to invoke ERISA fails because the nondischargeability action—the action giving rise to his fee request—was not an 'action under' ERISA, and therefore § 1132(g)(1) does not make [the plaintiff] eligible to recover fees."); *see also Saks v. Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Benefit Plans*, 2013 WL 12170494, at *6 (C.D. Cal. Nov. 15, 2013) (allowing the defendants to recover attorney's fees related to their counterclaims under § 1132(g) because the "counterclaims were brought under ERISA[]").

merits." *Id.*; *see also Perlman v. Fid. Brokerage Servs. LLC*, 932 F. Supp. 2d 397, 418 (E.D.N.Y. 2013) (finding the defendants achieved some degree of success on the merits because they "have prevailed on summary judgment[]"); *Scarangella v. Grp. Health, Inc.*, 2016 WL 825530, at *4 (S.D.N.Y. Feb. 11, 2016) (finding a defendant achieved some degree of success on the merits because another defendant "voluntarily dismissed its crossclaims . . . based on the [c]ourt's skepticism of the merits of the claims as reflected in its Summary Judgment Order"), *aff'd*, 678 F. App'x 7 (2d Cir. 2017).

Defendants' success in defending against all of Plaintiffs Launderville's and Browe's ERISA claims and establishing that they are not entitled to any recovery under the Plan qualifies as "some degree of success on the merits." *See, e.g.*, *Scarangella*, 731 F.3d at 153 (finding that "both [defendants] obtained some degree of success by defeating the other's claim"). On the other hand, Defendants did not achieve any degree of success on the merits with respect to the Remaining Plaintiffs' claims. As Plaintiffs point out, "Defendants cite no case in which plaintiffs who succeed on the merits of their claims, for the benefit of an entire ERISA plan, are then penalized with an order to pay attorney['s] fees to the same ERISA fiduciaries who breached their duties." (Doc. 407 at 5.) The court therefore finds that it is possible for Defendants to recover attorney's fees from Plaintiffs Launderville and Browe,[3] but they may not recover attorney's fees from the Remaining Plaintiffs.

### 3.    The *Chambless* Factors.

"After *Hardt*, whether a plaintiff has obtained some degree of success on the merits is the sole factor that a court *must* consider in exercising its discretion." *Donachie v. Liberty Life Assurance Co. of Bos.*, 745 F.3d 41, 46 (2d Cir. 2014) (emphasis in

---

[3] The Second Circuit found that Plaintiffs "Launderville and Browe had knowledge of the fiduciary breaches underlying the claims[]" over three years before bringing suit, meaning their claims were barred by the applicable three-year statute of limitations. *Browe v. CTC Corp.*, 15 F.4th 175, 192 (2d Cir. 2021). "Because [Plaintiffs] Launderville['s] and Browe's claims are time-barred, they are not 'participants' in the Plan, as defined by ERISA, and are not entitled to recover benefits from the Plan." *Browe v. Laumeister*, 2025 WL 471125, at *5 (2d Cir. Feb. 12, 2025).

original) (citation omitted). "Although a court *may*, without further inquiry, award attorney['s] fees to a plaintiff who has had 'some degree of success on the merits,' *Hardt* also made clear that courts retain discretion to 'consider five additional factors in deciding whether to award attorney's fees.'" *Id.* (emphasis in original) (alterations adopted) (citations omitted). These five additional factors, as set out in *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869 (2d Cir. 1987), are the following:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Id.* at 871 (citation omitted).

"These factors are applicable regardless of which party seeks attorney's fees." *Salovaara v. Eckert*, 222 F.3d 19, 28 (2d Cir. 2000) (citation omitted). If a court decides to consider the *Chambless* factors in determining whether to grant attorney's fees, it "must deploy that useful framework in a manner consistent with our case law. A court cannot selectively consider some factors while ignoring others." *Donachie*, 745 F.3d at 47. "[A]ttorney's fees are to be awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees." *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 266 (2d Cir. 2014) (internal quotation marks and citation omitted).

### a.    The Degree of the Offending Party's Culpability or Bad Faith.

"Although the *Chambless* test applies to both plaintiffs and defendants in ERISA actions, [the Second Circuit] ha[s] cautioned that the five factors 'very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs.'" *Salovaara*, 222 F.3d at 28 (citations omitted). "[T]he 'favorable slant toward ERISA plaintiffs is necessary to prevent the chilling of suits brought in good faith—the purpose of ERISA being to promote the interests of plan beneficiaries and allow them to enforce their statutory rights.'" *Id.* (citations omitted); *see also Meredith v. Navistar Int'l Transp.*

12

*Corp.*, 935 F.2d 124, 128-29 (7th Cir. 1991) ("[W]e must keep in mind ERISA's essential remedial purpose: to protect beneficiaries of pension plans. 'Adherence to this policy often counsels against charging fees against ERISA beneficiaries since private actions by beneficiaries seeking in good faith to secure their rights under employee benefit plans are important mechanisms for furthering ERISA's remedial purpose.'") (citation omitted). "For this reason, when determining whether attorney's fees should be awarded to defendants, [courts] focus on the first *Chambless* factor: whether plaintiffs brought the complaint in good faith." *Toussaint v. JJ Weiser, Inc.*, 648 F.3d 108, 111 (2d Cir. 2011).

"[W]hile the degree of culpability and the relative merits 'are not dispositive under the *Chambless* five-factor test,' they do 'weigh heavily.'" *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 48 (2d Cir. 2009) (alteration adopted). "[C]ulpability and bad faith are distinct standards." *Id.* (internal quotation marks and citation omitted). Examples of bad faith include advocating "frivolous or improper arguments[,]" *Lauder v. First Unum Life Ins. Co.*, 284 F.3d 375, 383 (2d Cir. 2002), or presenting "deliberately false" testimony, *Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 485 (2d Cir. 2002). "Culpable conduct is commonly understood to mean conduct that is blameable; censurable; at fault; involving the breach of a legal duty or the commission of a fault." *Slupinski*, 554 F.3d at 48 (alterations adopted) (internal quotation marks and citations omitted). A party is culpable for purposes of this factor when they "violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate." *Salovaara*, 222 F.3d at 28 (internal quotation marks and citation omitted).

Defendants point out that this court, in its First Remedial Order, stated that Defendants' actions evidenced "gross negligence" and "Defendants' desire to create a plan that would benefit high performing and valuable CTC employees was laudable[,]" whereas Plaintiff Launderville's conduct "was knowing, voluntary, and intentional and not merely negligent." (Doc. 401 at 8) (citations and internal quotation marks omitted). Thereafter, in *Browe I*, the Second Circuit described Plaintiff Launderville's conduct as follows:

[A]fter learning of [Defendant] Laumeister's breach, [Plaintiff]

13

Launderville neither notified other [Plan P]articipants of [Defendant] Laumeister's efforts to use Plan assets to fund CTC's operating shortfalls nor endeavored to take any steps to prevent him from doing so. To the contrary, [Plaintiff] Launderville advised [Defendant] Laumeister of the extent of the shortfalls, knowing that [Defendant] Laumeister would then direct that Plan assets be used to cover them. That use of Plan assets directly benefit[]ed [Plaintiff] Launderville – she had a lucrative position at CTC, and it was in her interest for the company to remain afloat so that she could continue to collect her salary. Moreover, while she was furthering [Defendant] Laumeister's use of Plan assets to prop up CTC, [Plaintiff] Launderville was also working to secure her own interests, cutting a side deal with [Defendant] Laumeister to ensure that she received compensation from his estate in lieu of what she would have received through the Plan, while taking no steps to notify the other Plan [P]articipants of [Defendant] Laumeister's actions, or otherwise to protect their interests.

. . . Not only did [Plaintiff Launderville] take no steps to remedy [Defendant] Laumeister's breach, which is sufficient to impose co-fiduciary liability, but she also engaged in classic self[-]dealing, affirmatively furthering that breach in violation of her own fiduciary duties so as to secure a continuing benefit for herself. Though she may be less culpable than [Defendant] Laumeister, we cannot say on this record that she should escape liability entirely.

15 F.4th at 201 (internal citation and emphasis omitted).

In its First Remedial Order, the court found that: "[Defendant Laumeister and Plaintiff Launderville] are equally culpable on a 50/50 basis albeit for different reasons." (Doc. 337 at 24) (internal citation omitted). Although in its Second Remedial Order the court altered Plaintiff Launderville's share of contribution, it found Plaintiff Launderville, CTC, and Defendant Laumeister were equally at fault.

In light of her breaches of fiduciary duties and her efforts to bring this lawsuit only after her attempt to cut a side deal with Defendant Laumeister proved unsuccessful, the court finds Plaintiff Launderville commenced this lawsuit in bad faith.[4] *See Foley v. Bethlehem Steel Corp.*, 30 F. Supp. 2d 366, 368 (W.D.N.Y. 1998) ("Although plaintiff did not demonstrate any extreme instances of bad faith, he did pursue this meritless

---

[4] In so ruling, the court notes that Plaintiff Launderville was a valued and trusted employee at CTC. Her bad faith did not appear to involve any actual malice toward any Plan Participants. However, by the same token, neither did the bad faith of Defendant Laumeister and CTC.

14

litigation in an almost haphazard fashion, changing legal theories and defendants for the first several years of litigation, making an award of fees appropriate."). It cannot reach a similar conclusion with respect to Plaintiff Browe as she was not a Plan fiduciary and owed no fiduciary duties to her fellow Plan Participants. *See Perlman*, 932 F. Supp. 2d at 419 ("Although [plaintiff] failed to prove any of her claims, the [c]ourt cannot conclude that her claims . . . were made in bad faith. In essence, the [c]ourt concludes that [plaintiff] genuinely believed that [the] plan was an ERISA plan (and that claims made pursuant to ERISA would be timely), and further believed that discovery would prove that theory."); *Royal v. Ret. Bd. of Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2020 WL 6820750, at *3 (S.D.N.Y. Nov. 20, 2020) ("Courts [] view 'culpability' very narrowly when evaluating fee requests by defendants in an ERISA suit.") (citation omitted), *aff'd sub nom.*, *Royal v. Ret. Bd. of the Bert Bell/Pete Rozelle NFL Ret. Plan*, 2021 WL 4484925 (2d Cir. Oct. 1, 2021). Accordingly, the court finds that only Plaintiff Launderville acted in bad faith.[5]

> **b.    The Ability of the Offending Party to Satisfy an Award of Attorney's Fees.**

Defendants argue that this factor is neutral "because Plaintiffs' financial conditions have not been a relevant subject of discovery to date[]" and "request an opportunity to conduct limited discovery, if the [c]ourt is inclined to grant Defendants' [m]otion[.]" (Doc. 401 at 8.) Plaintiffs contend that "[Plaintiff] Launderville does not have the means to pay an award[]" and oppose any further discovery by Defendants because "Defendants have had years to conduct discovery[.]" (Doc. 407 at 11.) Although Plaintiffs claim that Plaintiff Launderville does not have the financial means to pay an award of attorney's fees, they do not present any evidence to support that assertion, and

---

[5] It is probable that Plaintiff Lunderville initiated this lawsuit with the advice of counsel. The court raised the potential conflict of interest of Plaintiffs' counsel representing both the victims of the fiduciary breaches and one of the individuals committing the breaches but was advised that Plaintiffs waived any conflict. *See* Doc. 221 at 19 n.8 ("The court has raised the issue of joint representation with Plaintiffs' counsel and was advised that all Plaintiffs waived any conflict of interest.").

15

this factor is therefore, at best, neutral.

### c.    Whether an Award of Fees Would Deter Other Persons From Acting Similarly Under Like Circumstances.

"Th[is] factor emphasizes the deterrence gained from the fee award, not the trial decision." *Leyda v. AlliedSignal, Inc.*, 322 F.3d 199, 210 (2d Cir. 2003). "[W]here . . . an ERISA plaintiff has pursued a colorable (albeit unsuccessful) claim, the third *Chambless* factor likely is not merely neutral, but weighs strongly against granting fees to the prevailing defendant[]" because "[a]warding fees in such a case would likely deter beneficiaries and trustees from bringing suits in good faith for fear that they would be saddled with their adversary's fees in addition to their own in the event that they failed to prevail; this, in turn, would undermine ERISA's essential remedial purpose of protecting beneficiaries of pension plans." *Salovaara*, 222 F.3d at 31 (emphasis omitted). For those reasons, the Second Circuit has instructed that "[t]he deterrence factor should be used 'as a shield, to protect beneficiaries from the fear of having to pay to pursue an important ERISA claim in the event of failing to prevail,' and not 'as a sword to discourage beneficiaries' from pursuing certain meritless claims." *Seitzman*, 311 F.3d at 486 (citations omitted).

Plaintiffs rely on *Salovaara*, wherein a fiduciary of an investment fund, who had not breached any fiduciary duties with respect to the fund, brought suit against his co-fiduciary whom he believed was breaching his fiduciary duties. The district court entered summary judgment for the defendant on all claims, finding that the plaintiff failed to establish damages for his ERISA claims, and granted the defendant an award of attorney's fees. The Second Circuit reversed the grant of attorney's fees for the defendant, observing that, with respect to the deterrence factor:

> [W]here, as in this case, an ERISA plaintiff has pursued a colorable (albeit unsuccessful) claim, the third *Chambless* factor likely is not merely neutral, but weighs strongly *against* granting fees to the prevailing defendant. Awarding fees in such a case would likely deter beneficiaries and trustees from bringing suits in good faith for fear that they would be saddled with their adversary's fees in addition to their own in the event that they failed to prevail; this, in turn, would undermine ERISA's essential remedial purpose

16

of protecting beneficiaries of pension plans. This consideration is even more significant in a case such as this, where the plaintiff is a fiduciary under ERISA. As a co-fiduciary, [the plaintiff] not only had an affirmative obligation to "use reasonable care to prevent a co-trustee from committing a breach," 29 U.S.C. § 1105(b)(1)(A), but he also faced the risk of personal liability if he knew of, and failed to remedy, his co-trustee's breach, *see id.* § 1105(a). To award fees in such a case, absent clear evidence of culpability, would create a Hobson's choice for the fiduciary with a good faith belief that his co-fiduciary has breached his duty: by bringing a lawsuit, he would risk the imposition of expensive attorney's fees if he were to lose, but by doing nothing, he would risk the imposition of liability under § 1105(a).

*Salovaara*, 222 F.3d at 31 (emphasis in original) (first internal citation omitted).

Unlike the plaintiff in *Salovaara*, who was a non-breaching co-fiduciary, this court and the Second Circuit have found Plaintiff Launderville breached her fiduciary duties and has further found Plaintiff Launderville revealed Defendant Laumeister's breaches of fiduciary duties only when it served her purpose to do so because her efforts to strike a side deal proved unsatisfactory. Plaintiff Launderville therefore did not face the same Hobson's choice as the plaintiff in *Salovaara* of becoming liable for the breaches of her co-fiduciaries or bringing suit and risking the imposition of attorney's fees against her when the suit proved unsuccessful.

In determining whether Plaintiffs Launderville and Browe could recover from the Plan in *Browe II*, the Second Circuit found that Plaintiffs "Launderville and Browe d[id] not have a colorable claim for benefits because their claims are time-barred." *Browe II*, 2025 WL 471125, at *5; *see also Brennan v. Metro. Life Ins. Co.*, 275 F. Supp. 2d 406, 411 (S.D.N.Y. 2003) ("It is axiomatic that an individual whose claim for benefits is time-barred does not have a colorable claim for benefits."). Awarding Defendants attorney's fees will therefore provide deterrence by discouraging similarly situated plaintiffs from bringing meritless ERISA claims. *See Foley*, 30 F. Supp. 2d at 368 (awarding a fee award to defendant because "a [] fee award in the present case, which is clearly without merit, may deter the future filing of meritless suits without discouraging those plaintiffs with colorable claims[]"); *Sewell v. 1199 Nat'l Benefit Fund for Health & Hum. Servs.*, 2007

17

WL 1434952, at *1 (S.D.N.Y. May 15, 2007) ("The award of attorney[']s fees in this case will not have any chilling effect on good faith claimants but rather will simply serve to discourage bad faith claimants from filing meritless suits."), *aff'd sub nom., Sewell v. 1199 Nat'l Benefit Fund for Health Hum. Servs.*, 303 F. App'x 902 (2d Cir. 2008).

### d.    The Relative Merits of the Parties' Positions.

"The degree[]of[]culpability and relative[]merits factors are closely related." *Slupinski*, 554 F.3d at 48. "Something more . . . than success on the merits is required for this factor to weigh in favor of a prevailing ERISA defendant." *Mahoney v. J.J. Weiser & Co.*, 646 F. Supp. 2d 582, 593 (S.D.N.Y. 2009), *aff'd sub nom., Toussaint*, 648 F.3d 108. When analyzing the relative merits factor, a plaintiff's "losing claims should be considered in the context of the absence of culpability or bad faith as determined in assessing the first factor." *Mahoney*, 646 F. Supp. 2d 586.

This factor weighs in favor of Defendants because Plaintiffs Launderville and Browe were ultimately unsuccessful in pursuing claims against them. Defendants, however, also breached their fiduciary duties, and at least Plaintiff Browe did not act in bad faith in bringing this ERISA action against them. *See Critelli v. Fid. Nat'l Title Ins. Co. of N.Y.*, 554 F. Supp. 2d 360, 368 (E.D.N.Y. 2008) ("As to the fourth factor, this issue cuts in favor of the [d]efendant for the obvious reason that [it] prevailed on achieving summary judgment. However, the [c]ourt has already determined that [p]laintiff did not act in bad faith in asserting the specific theory of an ERISA violation when this litigation commenced."); *Caccavo by Caccavo v. Reliance Standard Life Ins. Co.*, 2022 WL 16631101, at *6 (S.D.N.Y. Nov. 2, 2022) ("Although [defendant] succeeded at summary judgment, it has not—for the reasons described above—shown that [p]laintiff pursued his claim in bad faith or was otherwise culpable. Accordingly, because [p]laintiff's 'claims were not entirely devoid of merit,' the [c]ourt declines to find that this factor weighs heavily in [defendant]'s favor.") (internal citation omitted).

Although the Remaining Plaintiffs achieved success on the merits, Plaintiffs Launderville and Browe did not. Indeed, while this court found they should share in the Plan benefits, the Second Circuit rejected that conclusion and directed the court to award

18

them nothing. *See Browe II*, 2025 WL 471125, at *5. This factor weighs in favor of Defendants because, as between Defendants and Plaintiffs Launderville and Browe, Defendants' position had more merit.

### e.    Whether the Action Conferred a Common Benefit on a Group of Pension Plan Participants.

"[T]he fifth *Chambless* factor, whether the action conferred a common benefit on a group of plan participants, is generally regarded as either inapplicable or neutral where an ERISA defendant is seeking attorney's fees." *Mahoney*, 646 F. Supp. 2d at 594 (collecting cases); *see also Salovaara*, 222 F.3d at 28-29 ("The [d]istrict [c]ourt held that the fifth factor (whether the action conferred or sought to confer a 'common benefit') was inapplicable to [the] ERISA defendant[.]"); *Anita Founds., Inc. v. ILGWU Nat'l Ret. Fund*, 902 F.2d 185, 191 (2d Cir. 1990) ("The district court concluded that the fifth factor—benefit to others—was not applicable to cases where an employer seeks attorney's fees. This factor has been described in terms of the benefit conferred on pension plan participants and is not wholly applicable where it is the employer seeking fees."). The common benefit factor is therefore neutral here.

### f.    Weighing the Factors

"[P]rivate actions by beneficiaries seeking in good faith to secure their rights under employee benefit plans are important mechanisms for furthering ERISA's remedial purpose[.]" *Slupinski*, 554 F.3d at 47 (quoting *Salovaara*, 222 F.3d at 28). "Congress intended the fee provisions of ERISA to encourage beneficiaries to enforce their statutory rights[,]" *id.*, and "ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights[.]" *Chambless*, 815 F.2d at 872. In light of these principles, there is a "general rule that 'attorney's fees should not be charged against ERISA plaintiffs.'" *Celardo v. GNY Auto. Dealers Health & Welfare Tr.*, 318 F.3d 142, 147 (2d Cir. 2003) (quoting *Salovaara*, 222 F.3d at 28); *cf. Anita Founds., Inc.*, 902 F.2d at 189-91 (affirming the district court's award of attorney's fees for the employer because all five *Chambless* factors weighed in favor of the award).

With respect to Plaintiff Browe, the third and fourth *Chambless* factors weigh in

favor of an award of attorney's fees for Defendants, the first factor weighs against an award, and the second and fifth factors are neutral. Because of "the favorable slant towards ERISA plaintiffs[,]" and the desire to prevent "the chilling of suits brought in good faith[,]" the court does not award Defendants attorney's fees against Plaintiff Browe. *Salovaara*, 222 F.3d at 28 (internal quotation marks and citation omitted).[6]

In contrast, with respect to Plaintiff Launderville, the first, third, and fourth *Chambless* factors weigh in favor of an award of attorney's fees for Defendants, and the second and fifth factors are neutral. The court thus finds that an award of attorney's fees against Plaintiff Launderville is appropriate because she did not act in good faith in bringing this lawsuit and because Defendants prevailed in demonstrating she was not entitled to any recovery.

For the foregoing reasons, Defendants' renewed motion for attorney's fees is GRANTED IN PART and DENIED IN PART. The court grants Defendants thirty (30) days to renew their request for attorney's fees in accordance with this Order.

### B.    Whether to Award the Remaining Plaintiffs Attorney's Fees.

The Remaining Plaintiffs request an award of attorney's fees and costs in the amount of $465,000, which they contend is a reasonable estimate of attorney's fees

---

[6] *See Salovaara v. Eckert*, 222 F.3d 19, 29-30 (2d Cir. 2000) (reversing the district court's grant of attorney's fees to defendant because plaintiff did not act in bad faith and the first and third *Chambless* factors weighed against such award); *Perlman v. Fid. Brokerage Servs. LLC*, 932 F. Supp. 2d 397, 419 (E.D.N.Y. 2013) (refusing to award attorney's fees to defendant because, "[a]lthough [plaintiff] failed to prove any of her claims, the [c]ourt cannot conclude that her claims were frivolous or that they were made in bad faith[]"); *Critelli v. Fid. Nat'l Title Ins. Co. of N.Y.*, 554 F. Supp. 2d 360, 369 (E.D.N.Y. 2008) ("Having no definitive basis for establishing bad faith, the [c]ourt finds that a fee award is unwarranted and the 'possible disincentive to potentially meritorious ERISA plaintiffs overrides [d]efendants' interest in not paying to defend the lawsuit.'") (citation omitted); *Royal v. Ret. Bd. of Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2020 WL 6820750, at *3 (S.D.N.Y. Nov. 20, 2020) ("[D]eterrence of good[]faith suits, even unmeritorious ones, generally does not effectuate ERISA's essential remedial purpose."), *aff'd sub nom.*, *Royal v. Ret. Bd. of the Bert Bell/Pete Rozelle NFL Ret. Plan*, 2021 WL 4484925 (2d Cir. Oct. 1, 2021); *Kazazian v. Bartlett & Bartlett LLP*, 2007 WL 4563909, at *4 (S.D.N.Y. Dec. 19, 2007) ("Perceiving no bad faith, the [c]ourt finds that the possible disincentive to potentially meritorious ERISA plaintiffs overrides Defendants' interest in not paying to defend the lawsuit.").

incurred in this action. If the court awards the Remaining Plaintiffs attorney's fees, they request "an opportunity to present the precise amount by supplemental submission to the [c]ourt." (Doc. 403 at 9.)

As a threshold issue, Defendants point out that all Plaintiffs, including Plaintiffs Launderville and Browe, previously moved for attorney's fees on January 16, 2023, seeking an estimated amount of $435,000. Even though Plaintiffs Launderville and Browe are omitted from the Remaining Plaintiffs' pending motion for attorney's fees, Defendants argue that "[f]rom the substantial magnitude and substantial similarity of the fees requested in [the Remaining] Plaintiffs' instant [m]otion—$435,000 is 93% of $465,000—it is evident that the $435,000 of estimated fees requested by *all* Plaintiffs in 2023 is included within the request currently before the [c]ourt[]" and "[the Remaining] Plaintiffs' instant [m]otion cannot be granted to the extent that it requests fees incurred in the cases of Plaintiffs Donna Browe and Lucille Launderville." (Doc. 406 at 4) (emphasis in original). The court agrees. Because the Remaining Plaintiffs' estimation of attorney's fees appears to include fees for Plaintiffs Launderville and Browe, it is DENIED IN PART. Fed. R. Civ. P. 54(d)(2)(B)(iii) requires that a party submit, with their motion, "a fair estimate" of attorney's fees sought. The court will therefore allow the Remaining Plaintiffs to file supplemental submissions to advise the court of the attorney's fees requested by them in accordance with this Order.

### 1.    Whether the Remaining Plaintiffs Obtained Some Degree of Success on the Merits.

The Remaining Plaintiffs undisputedly obtained some degree of success on the merits, as required by *Hardt*, and in fact obtained a substantial degree of success because they prevailed on their claims of denial of benefits, breach of fiduciary duties, and violations of reporting and disclosure requirements under ERISA. The court must also consider the fact that Defendants paid the Remaining Plaintiffs in full on March 18, 2024, *see* Doc. 389, and the Remaining Plaintiffs nonetheless chose to continue this litigation thereafter.

2.    The *Chambless* Factors.

    a.    **The Degree of the Offending Party's Culpability or Bad Faith.**

The Remaining Plaintiffs did not act in bad faith in bringing and pursuing their ERISA claims, nor were they found to have engaged in any culpable conduct, and Defendants do not argue otherwise. Defendants were found to be culpable by breaching their fiduciary duties and wrongfully denying the Remaining Plaintiffs their benefits. *See Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 450 (2d Cir. 2006) ("[A] defendant is 'culpable' under *Chambless* where it 'violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate.'") (quoting *Salovaara*, 222 F.3d at 28). This factor weighs heavily in favor of awarding the Remaining Plaintiffs attorney's fees.

    b.    **The Ability of the Offending Party to Satisfy an Award of Attorney's Fees.**

The Remaining Plaintiffs argue that Defendants are able to satisfy an award of attorney's fees because "Mr. Laumeister swore in 2016 that as of that time[,] Defendants had assets valued in total at approximately $2,496,249[,]" "Mr. Laumeister's Monument Avenue real estate in Bennington, Vermont, valued at $560,400 on Mr. Laumeister's certification[] was liquidated, with the proceeds applied to pay the judgment against Defendants[,]" and Mr. Laumeister's art collection is self-valued at $3 million to $7 million. (Doc. 403 at 6-7) (citations omitted). Defendants do not contest these assertions. Defendant Laumeister is now deceased, and over two years ago, he and CTC paid the Remaining Plaintiffs all Plan benefits owed to them. The court finds this factor weighs in favor of awarding the Remaining Plaintiffs attorney's fees up to Defendants' March 18, 2024 payment of the court's December 16, 2022 Remedial Award but not thereafter, as none of the proceedings that followed pertained to the Remaining Plaintiffs' claims or involved their benefits.

    c.    **Whether an Award of Fees Would Deter Other Persons From Acting Similarly Under Like Circumstances.**

An award of attorney's fees for the Remaining Plaintiffs would deter other

employers from breaching fiduciary duties and violating reporting and disclosure requirements with respect to ERISA plans as Defendants did in this case. *See Trs. of Sheet Metal Workers Int'l Ass'n Loc. No. 38 Vacation Fund v. Hopwood*, 2013 WL 12445038, at *4 (S.D.N.Y. May 30, 2013) ("Awarding fees in this action would deter other employers from avoiding their obligations to pay fringe benefits to employees, and also deter plan fiduciaries from under-reporting such benefits."); *Montefiore Med. Ctr. v. Loc. 272 Welfare Fund*, 2019 WL 4565099, at *4 (S.D.N.Y. Sept. 19, 2019) ("Awarding attorney['s] fees in this case will discourage ERISA plans from ignoring their reimbursement obligations in the future."). Defendants argue that an award of attorney's fees would not provide deterrence because they "were found to have acted according to good intentions, which nevertheless fell short of what a reasonably diligent party would have done to ensure compliance with ERISA." (Doc. 406 at 8-9.) This overstates the court's findings with respect to Defendants' culpability, as the court found that Defendants acted with "gross negligence" in drafting and administering the Plan as exempt from ERISA when they had access to legal counsel. (Doc. 337 at 23.) In any event, deterrence does not require subjective bad faith on the part of Defendants. *See, e.g., Schuman v. Aetna Life Ins. Co.*, 2017 WL 2662191, at *6 (D. Conn. June 20, 2017) (finding the deterrence factor weighed in favor of awarding plaintiff attorney's fees because, although the court found the defendants' breaches of fiduciary duties were "caused by 'incompetence' rather than bad faith or malign intent, an award of attorney['s] fees likely would incentivize the defendants to improve their procedures to avoid violating the regulation in the future[]") (internal citation omitted). It is enough that ERISA fiduciaries be deterred from acting in a similar fashion. As between Defendants and the Remaining Plaintiffs, the Remaining Plaintiffs were innocent and unsuspecting victims of significant violations of ERISA.

Against this backdrop, declining to award the Remaining Plaintiffs attorney's fees would create perverse incentives and improperly deter similarly situated ERISA plaintiffs from bringing meritorious suits. *See LaScala v. Scrufari*, 859 F. Supp. 2d 509, 515 (W.D.N.Y. 2012) ("[R]equiring successful plaintiffs to pay their own fees when they win

a highly contested multi-year struggle to recoup significant amounts wrongfully diverted from [an ERISA plan] would likely deter other trustees, participants, or beneficiaries from pursuing private actions to protect their contractually defined benefits."). On balance, this factor weighs in favor of awarding the Remaining Plaintiffs attorney's fees.

> **d.    The Relative Merits of the Parties' Positions.**

The Remaining Plaintiffs prevailed and achieved success on the merits for their claims of denial of benefits, breach of fiduciary duties, and violations of reporting and disclosure requirements under ERISA. This factor therefore weighs heavily in favor of awarding the Remaining Plaintiffs attorney's fees.

> **e.    Whether the Action Conferred a Common Benefit on a Group of Pension Plan Participants.**

The Remaining Plaintiffs produced a common benefit for the Plan and Plan Participants, who each recovered benefits through the Restoration Award. *See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 113 F. Supp. 3d 601, 609 (N.D.N.Y. 2015) ("[F]inally, the plaintiffs' decision to pursue this action conferred a common benefit on the pension plan participants when plaintiffs were awarded withheld benefit contributions, liquidated damages, prejudgment interest, and attorney['s] fees and costs."); *Hopwood*, 2013 WL 12445038, at *5 ("The [c]ourt's judgments enable the [union trust funds] to collect money from [d]efendants in order to repay fringe benefits, thus conferring a common benefit on participants of the [union trust funds].").

Defendants nonetheless argue that this factor is neutral because, in its April 17, 2023 Opinion and Order, the court observed "that the substantial cost of litigating this matter 'reflects an unnecessarily combative approach, especially by Plaintiffs' counsel, which materially and needlessly impacted the duration of the case, the resources expended, and the resolution of these proceedings.'" (Doc. 406 at 10) (alteration adopted) (quoting Doc. 359 at 6). Defendants also point out that "the primary focus of the litigation did not center around the largely non-participating Plaintiffs, but around the claims of [Plaintiffs] Launderville and Browe, whose account balances were the two

24

largest within the Plan, and whose claims which were time-barred led to disproportionate expense and multiple appeals." *Id.* at 10 (internal citation omitted). The court agrees that these concerns should be reflected in any fee award but disagrees that they negate a fee award entirely.

### f.　Weighing the Factors

All five *Chambless* factors weigh in favor of granting the Remaining Plaintiffs' request for attorney's fees, and a fee award for the Remaining Plaintiffs would further ERISA's central purpose "to protect beneficiaries of employee benefit plans." *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 63 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Slupinski*, 554 F.3d at 47). The Remaining Plaintiffs' renewed motion for attorney's fees is therefore GRANTED IN PART. The court grants the Remaining Plaintiffs thirty (30) days to renew their request for attorney's fees in accordance with this Order.

### CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART Defendants' amended renewed motion for attorney's fees, (Doc. 401), and GRANTS IN PART and DENIES IN PART the Remaining Plaintiffs' renewed motion for attorney's fees. (Doc. 403.) Defendants and Remaining Plaintiffs are hereby ORDERED to renew their motions for attorney's fees and submit supplemental documentation regarding the amount of attorney's fees sought in accordance with the court's rulings within thirty (30) days of this Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this _23rd_ day of April, 2026.

Christina Reiss, Chief Judge
United States District Court