U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 SEP 10 A 9:38

CLERK
BY ____ DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| DONNA BROWE, TYLER BURGESS, BONNIE JAMIESON, PHILIP JORDAN, LUCILLE LAUNDERVILLE, and THE ESTATE OF BEVERLY BURGESS, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 2:15-cv-00267-cr |
| CTC CORPORATION and BRUCE LAUMEISTER, | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANTS' SUPPLEMENTAL RENEWED MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' RENEWED MOTION FOR ATTORNEY'S FEES**
(Docs. 419, 420)

Donna Browe, Tyler Burgess, Bonnie Jamieson, Philip Jordan, Lucille Launderville, and the Estate of Beverly Burgess (collectively, "Plaintiffs") brought suit against CTC Corporation ("CTC") and Bruce Laumeister (collectively, "Defendants"), alleging that Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1191c, by failing to adequately fund the 1990 and 1997 deferred compensation plans (collectively, the "Plan") and by wrongfully denying them benefits. Plaintiffs further alleged that Defendants breached fiduciary duties and reporting and disclosure obligations owed to them under ERISA. Plaintiffs brought suit on behalf of themselves and other participants in the Plan (collectively, the "Plan Participants"). Defendants asserted a counterclaim against Plaintiff Launderville for contribution and indemnification for her role as a breaching co-fiduciary.

On June 25, 2026, Tyler Burgess, Bonnie Jamieson, Philip Jordan, and the Estate

of Beverly Burgess (collectively, the "Remaining Plaintiffs") filed a renewed motion for attorney's fees, (Doc. 420), and on the same day, Defendants filed a supplemental renewed motion for attorney's fees. (Doc. 419.)[1]

Plaintiffs are represented by John D. Stasny, Esq. Defendants are represented by Alexandra E. Edelman, Esq., Lon T. McClintock, Esq., Nicole M. Bodoh, Esq., and Ryan M. Long, Esq.

## I. Factual and Procedural Background.

The court has set forth the relevant facts in its April 23, 2026 Opinion and Order granting in part and denying in part Defendants' renewed motion for attorney's fees and granting in part and denying in part the Remaining Plaintiffs' renewed motion for attorney's fees ("April 23, 2026 Opinion and Order"), which it incorporates herein. *See* Doc. 414.

In its April 23, 2026 Opinion and Order, the court held that Defendants were entitled to an award of reasonable attorney's fees against Plaintiff Launderville for those fees incurred defending against her claims. In doing so, the court ruled that Defendants could not obtain attorney's fees against the Remaining Plaintiffs or Plaintiff Browe "as she was not a Plan fiduciary and owed no fiduciary duties to her fellow Plan Participants[,]" nor could they "obtain attorney's fees arising from their counterclaim for contribution" against Plaintiff Launderville "because it is not a cause of action under ERISA[.]" *Id.* at 10, 15.

With respect to the Remaining Plaintiffs' motion for attorney's fees, the court found they were entitled to an award of reasonable attorney's fees against Defendants for those fees incurred pursuing their successful claims. Fees sustained in connection with Plaintiff Launderville's and Plaintiff Browe's claims, however, could not be recovered by

[1] On July 9, 2026, Defendants opposed the Remaining Plaintiffs' motion, (Doc. 423), and Plaintiff Launderville opposed Defendants' motion. (Doc. 424.) On July 23, 2026, the Remaining Plaintiffs replied, (Doc. 425), as did Defendants. (Doc. 426.)

the Remaining Plaintiffs because those claims were meritless.[2] The court instructed Defendants and the Remaining Plaintiffs to file renewed motions for attorney's fees in accordance with its rulings.

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

In ERISA actions, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The court has "discretion to determine [] what constitutes a reasonable fee." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks and citation omitted). "However, this discretion is not unfettered, and when a prevailing party is entitled to attorney['s] fees, the district court must abide by the procedural requirements for calculating those fees articulated by [the Second Circuit] and the Supreme Court." *Id.*

A court begins its analysis by calculating a "presumptively reasonable fee" based on a reasonable hourly rate and a reasonable number of hours required by the case. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008) (internal quotation marks omitted). "[T]he fee applicant bears the burden of establishing entitlement to an award[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

"[A]ttorney's fees are to be awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees." *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 266 (2d Cir. 2014) (internal quotation marks and citation omitted). Determining the award "should not result in a second major litigation." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (internal quotation marks omitted) (quoting *Hensley*, 461 U.S. at 437). As the Supreme Court has instructed:

> [T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in

---

[2] The Second Circuit did not disturb this court's finding that Defendant Laumeister acted in good faith, but it found that Plaintiff Launderville "engaged in classic self[-]dealing, affirmatively furthering th[e] breach in violation of her own fiduciary duties so as to secure a continuing benefit for herself." *Browe v. CTC Corp.*, 15 F.4th 175, 201 (2d Cir. 2021) (citation omitted).

calculating and allocating an attorney's time.

*Id.*

**B. Defendants' Motion for Attorney's Fees.**

Defendants request an award of attorney's fees of $406,234.16,[3] which they contend reflects a "reasonable, evidence-based estimate of fees allocable to work related to defense against [Plaintiff] Launderville's claims[.]" (Doc. 419 at 1.) With their request, Defendants provide the following charts to the court:

| | **District Court** | |
|---|---|---|
| **Timekeeper** | **Total Hours** | **Total Fees** |
| Attorney Kenlan | 1,666.96 | $352,111.05 |
| Attorney Bodoh | 267.60 | $98,202.50 |
| Attorney Lax | 1.30 | $468.00 |
| Attorney Theodore | 0.30 | $69.00 |
| Attorney Mattson | 9.80 | $2,881.80 |
| Attorney Galle | 2.40 | $540.00 |
| Attorney Gillis | 12.30 | $2,767.50 |
| Attorney Winer | 34.30 | $8,212.50 |
| Attorney Zaharias | 0.80 | $230.40 |
| Attorney Corwin | 1.40 | $490.00 |
| Attorney McClintock | 277.10 | $62,347.50 |
| Attorney Edelman | 52.10 | $22,551.00 |
| Attorney Long | 71.90 | $30,079.50 |
| Attorney Strehlow | 63.10 | $19,725.00 |
| Paralegal Devoid-Siel | 3.70 | $740.00 |
| **District Court Subtotal** | **2,465.06** | **$601,415.75** |

| | **Second Circuit Court of Appeals** | |
|---|---|---|
| **Timekeeper** | **Total Hours** | **Total Fees** |
| Attorney Kenlan | 303.03 | $86,815.55 |
| Attorney Bodoh | 135.60 | $56,997.50 |
| Attorney Johnson | 0.80 | $320.00 |
| Attorney Quarles | 0.80 | $340.00 |
| Attorney Galle | 3.20 | $720.00 |
| Attorney Edelman | 163.00 | $95,832.00 |
| Attorney Long | 50.90 | $18,163.50 |
| Attorney Lebel | 43.60 | $13,080.00 |

[3] Defendants do not seek to recover any costs or expenses with their fee motion.

| | | |
|---|---|---|
| Attorney Debeaupuis | 1.00 | $310.00 |
| Paralegal Pinkham | 9.00 | $1,575.00 |
| **Second Circuit Subtotal** | **710.93** | **$274,153.55** |
| **Total** | **3175.99** | **$875,569.30** |

### 1. The Reasonable Hourly Rate.

"The reasonable hourly rate is the rate a paying client would be willing to pay[,] . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190; *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) ("[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case."). In determining the hourly rate a reasonable client would be willing to pay, the court must consider case-specific variables, including:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184 (footnote omitted). Other relevant factors to consider are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (citation omitted).

Defendants request an award of attorney's fees based on "the average hourly rate paid by Defendants in connection with defending this action[,]" which they claim is

$324.97. (Doc. 419 at 8.) Plaintiff Launderville counters that she "does not dispute that the individual rates charged by Defendants' various attorneys are reasonable, but averaging all of those rates into a single rate applied to the hours of all attorneys at all times throughout the case improperly inflates the calculation." (Doc. 424 at 6.)

"A blended rate is 'meant to account for the different billing rates of partners and associates by taking an average of the two.'" *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 98 (2d Cir. 2006) (citation omitted). Applying "a blended hourly rate" to calculate the presumptively fee "has not been endorsed" by the Second Circuit. *Id.* Nonetheless, courts in the Second Circuit "have awarded attorney['s] fees using blended rates where appropriate." *United Realty Advisors, LP v. Verschleiser*, 2023 WL 4141545, at *12 (S.D.N.Y. June 23, 2023) (internal quotation marks and citation omitted); *see also Mhany Mgmt. Inc. v. Cnty. of Nassau*, 2018 WL 11605900, at *9 (E.D.N.Y. Dec. 13, 2018) (explaining that, in some cases, "district courts in this Circuit have awarded attorney's fees based on blended rates") (collecting cases).

"Generally, blended rates are disfavored in attorney['s] fee applications because more junior attorneys may be billed at much higher rates than would otherwise be appropriate for such attorneys' experience under the prevailing rates in this district." *Canon Fin. Servs., Inc. v. Ambulatory Surgery Ctrs., LLC*, 2025 WL 3451846, at *11 (E.D.N.Y. Sept. 5, 2025) (citation omitted); *see also Alcon Vision, LLC v. Lens.com, Inc.*, 2023 WL 8072507, at *8 (E.D.N.Y. Nov. 21, 2023) (same). As articulated by one court:

> [T]he use of a "blended rate" is at odds with the "presumptively reasonable fee" framework, which incorporates both the rate reasonably billed and the hours reasonably expended. This opposition is illustrated by the following hypothetical: a senior associate bills at a rate of $350, and a junior associate bills at a rate of $300; the senior associate devotes one hour to an action, while the junior associate devotes nineteen hours. In this instance, imposing fees at an average rate ($325) would unfairly enrich the law firm, because the firm would receive a portion of the senior associate's rate for hours not proportionate to that attorney's efforts on the case.

*Trs. of Leather Goods, Handbags, & Novelty Workers' Union Loc. 1 Joint Ret. Fund v.*

*Cent. Fur Storage Co.*, 2019 WL 3937132, at *11 (E.D.N.Y. Aug. 2, 2019) (footnote omitted), *report & recommendation adopted*, 2019 WL 3936676 (E.D.N.Y. Aug. 20, 2019).

As Plaintiff Launderville points out, "[i]f Defendants['] proposed average rate were applied to the total hours in the case ($324.97 x 3175.99), it would result in total fees of $1,032,101.47. This is much greater than the fees of $875,569.30 actually paid by Defendants." (Doc. 424 at 6.) Moreover, Defendants fail to explain how they calculated their average hourly rate, including whether it encompasses the rates of their paralegals, whether it accounts for the ratio of hours that each attorney billed, and whether it reflects the fact that the hourly rates of multiple attorneys increased during the litigation. *See Cent. Fur Storage Co.*, 2019 WL 3937132, at *11 ("Without knowing how the blended rate was calculated, the district court is impotent to make necessary adjustments; it cannot discern whether individual attorneys are billing at rates not justified by their experience, because those rates are subsumed into a nebulous whole."); *see also Alcon Vision, LLC*, 2023 WL 8072507, at *8 (declining to use plaintiff's blended hourly rate because "there is no basis . . . from which it would be possible to assess the reasonableness of [it] or appropriately adjust it[]").

For the reasons stated above, the court declines to use the blended hourly rate provided by Defendants. In light of Plaintiff Launderville's concession that "the individual rates charged by Defendants' various attorneys are reasonable," (Doc. 424 at 6), and based on the prevailing rates in this district; the complexity of this ERISA case; the time and labor required by this lengthy litigation; and the experience, reputation, and ability of the attorneys, the court finds the rates charged by Defendants' attorneys are reasonable.[4] Using Defendants' chart, the actual and reasonable hourly rate of each

[4] In contending their fees are reasonable, Defendants note that "the steadfastly unreasonable positions by Plaintiffs and Plaintiffs' counsel[] contributed to substantial difficulty and substantial complexity requiring Defendants to secure the services of experienced attorneys[]" and that their attorneys "committed significant time and effort to this matter[,]" as the court has observed "'unnecessarily combative' tactics by Plaintiffs[' counsel] which 'needlessly impacted the duration of the case, the resources expended, and the resolution of the proceedings[.]'" (Doc.

attorney is as follows:[5]

| Timekeeper | Law Office | Hourly Rate |
|---|---|---|
| Attorney Kenlan[6] | Kenlan, Schwiebert, Facey & Goss | $223 |
| Attorney Bodoh[7] | Devine, Millimet & Branch | $385 |
| Attorney Lax | Devine, Millimet & Branch | $360 |
| Attorney Theodore | Devine, Millimet & Branch | $230 |
| Attorney Mattson[8] | Devine, Millimet & Branch | $294 |
| Attorney Galle | Devine, Millimet & Branch | $225 |
| Attorney Gillis | Devine, Millimet & Branch | $225 |
| Attorney Winer | Devine, Millimet & Branch | $239 |
| Attorney Zaharias[9] | Devine, Millimet & Branch | $360 |
| Attorney Corwin[10] | Devine, Millimet & Branch | $250 |
| Attorney Johnson | Devine, Millimet & Branch | $400 |
| Attorney Quarles | Devine, Millimet & Branch | $425 |
| Attorney McClintock | McClintock Law Office, P.C. | $225 |
| Attorney Edelman[11] | Primmer, Piper, Eggleston & Cramer | $450 |
| Attorney Long | Primmer, Piper, Eggleston & Cramer | $393 |

419 at 4-5) (citation omitted). They further observe that they "successfully reduced" the Restoration Award "by no less than $283,975 through successful defense" of Plaintiff Browe's and Plaintiff Launderville's ERISA claims. *Id.* at 6. The court agrees that Defendants' counsel achieved significant success in Phases II and III of the litigation.

[5] These rates were calculated by dividing each attorney's total charged fees by their total hours as represented in Defendants' chart, *see supra* page 4. The court notes that Defendants have not requested use of their attorneys' current rates or submitted evidence of those rates to the court. *See Gesualdi v. Reid*, 198 F. Supp. 3d 211, 222 (E.D.N.Y. 2016) ("[E]ven though counsel's hourly rates have increased during the pendency of this litigation, and plaintiffs are entitled to current rather than historic rates under Second Circuit case law, plaintiffs only seek the hourly rates charged at the time of the completion of tasks.") (internal citations omitted).

[6] The court calculated Attorney Kenlan's rate by adding his total fees charged, at the district court and Second Circuit level, and dividing that by his total hours billed.

[7] *See supra* note 4.

[8] *See supra* note 4.

[9] Defendants' chart indicates Attorney Zaharias's hourly rate was $288, but the billing records show that he billed at an hourly rate of $360. *See* Doc. 419-3 at 150.

[10] Defendants' chart indicates Attorney Corwin's hourly rate was $350, but the billing records show that he billed at an hourly rate of $250. *See* Doc. 419-3 at 150.

[11] Applying the calculation set forth in note 4 to Defendants' chart results in an hourly rate of $550 for Attorney Edelman. The billing records, however, show that Attorney Edelman's highest hourly rate was $450.

| | | |
|---|---|---|
| Attorney Strehlow | Primmer, Piper, Eggleston & Cramer | $313 |
| Attorney Lebel | Primmer, Piper, Eggleston & Cramer | $300 |
| Attorney Debeaupuis | Primmer, Piper, Eggleston & Cramer | $310 |
| Paralegal Devoid-Siel | Primmer, Piper, Eggleston & Cramer | $200 |
| Paralegal Pinkham | Primmer, Piper, Eggleston & Cramer | $175 |

### 2. Reasonable Number of Hours.

To determine whether the number of hours spent on a matter was reasonable, a court examines the party's contemporaneous time records. These records must "specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). The relevant question is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).

The Second Circuit "do[es] not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items[,]" *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994), especially where, as here, the movants submit a large volume of billing records. *See Porter v. Dartmouth-Hitchcock Med. Ctr.*, 2025 WL 3295806, at *13 (D. Vt. Nov. 26, 2025). "Hours that are excessive, redundant, or otherwise unnecessary[] are to be excluded; and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application[.]" *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal quotation marks and citations omitted); *see also Carey*, 711 F.2d at 1146 ("In [] cases with voluminous fee applications, courts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application. These courts have endorsed percentage cuts as a practical means of trimming fat from a fee application.") (internal citations omitted); *E.S. v. Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011) ("A court has discretion to make across-the-board percentage reductions to exclude unreasonable hours.") (citation omitted), *aff'd sub nom. E.S. ex rel. B.S. v. Katonah-Lewisboro Sch. Dist.*, 487 F. App'x 619 (2d Cir. 2012).

Defendants calculate the hours for which they seek attorney's fees against Plaintiff Launderville using what they deem "a phase[-]based approach[.]" (Doc. 419 at 8) (emphasis omitted). Phase I spans "[f]rom the initiation of this action to the first appeal" to the Second Circuit "in April 2019"; Phase II spans from April 2019 to August 2023, "reflecting the time between the first and second appeals in this action"; and Phase III spans from August 18, 2023 to the present, including the second appeal of this action and the remand proceedings. (Doc. 419 at 10-11.) Defendants contend that they are entitled to attorney's fees for the following number of hours at each phase:

- Phase I: "[T]he reasonable hours involved in defending [Plaintiff] Launderville's claims reflected no less than one-sixth of all hours involved in Defendants' representation."
- Phase II: "[T]he reasonable time associated with defending Plaintiff Launderville's claims reflected one-third of all hours involved in Defendants' representation."
- Phase III: "All attorney time involved in Defendants' representation after August 18, 2023 were reasonably necessary in defending Plaintiff Launderville's claims."

*Id.* at 10-12.

Defendants argue that one-sixth of all hours at Phase I is reasonable because there are six Plaintiffs in this case and the "issues litigated" during Phase I "were generally applicable to the claims of each Plaintiff[] and thus did not relate more closely to the defense of [Plaintiff] Launderville's claims than any other" Plaintiff's claims. *Id.* at 11. At Phase II, Defendants claim one-third of all hours expended is reasonable because "two out of six issues addressed in the Second Circuit opinion" concerned Plaintiff Launderville's claims. *Id.* For Phase III, they request attorney's fees based on all hours billed because, by that point, all of the Remaining Plaintiffs "had been fully compensated under the Plan" and "the litigation continued over issues that exclusively pertained to Plaintiff Launderville's claims." *Id.* at 12. Defendants provide a chart reflecting these ratio adjustments at each phase:

| Phase | Total Hours | Ratio Adjustment | Adjusted Hours |
|---|---|---|---|
| Phase I | 1139.80 | 1/6 | 190.00 |
| Phase II | 923.70 | 1/3 | 307.90 |
| Phase III | 752.20 | 1/1 | 752.20 |
| **Total** | **2815.70** | | **1250.10** |

The total hours, and adjusted hours, that each attorney billed at each phase is as follows:[12]

| Phase I | | | |
|---|---|---|---|
| **Timekeeper** | **Hours Billed** | **Ratio Adjustment** | **Adjusted Hours** |
| Attorney Kenlan | 1139.80 | 1/6 | 190.00 |
| **Total** | **1139.80** | | **190.00** |

| Phase II | | | |
|---|---|---|---|
| **Timekeeper** | **Hours Billed** | **Ratio Adjustment** | **Adjusted Hours** |
| Attorney Kenlan | 387.60 | 1/3 | 129.20 |
| Attorney McClintock | 266.10 | 1/3 | 88.70 |
| Attorney Bodoh | 246.30 | 1/3 | 82.10 |
| Attorney Lax | 1.30 | 1/3 | 0.43 |
| Attorney Theodore | 0.30 | 1/3 | 0.10 |
| Attorney Mattson | 9.80 | 1/3 | 3.27 |
| Attorney Gillis | 12.30 | 1/3 | 4.10 |
| **Total** | **923.70** | | **307.90** |

| Phase III | | | |
|---|---|---|---|
| **Timekeeper** | **Hours Billed** | **Ratio Adjustment** | **Adjusted Hours** |
| Attorney McClintock | 11.00 | 1/1 | 11.00 |
| Attorney Galle | 5.60 | 1/1 | 5.60 |
| Attorney Winer | 34.30 | 1/1 | 34.30 |
| Attorney Zaharias | 0.80 | 1/1 | 0.80 |
| Attorney Corwin | 1.40 | 1/1 | 1.40 |
| Attorney Johnson | 0.80 | 1/1 | 0.80 |
| Attorney Quarles | 0.80 | 1/1 | 0.80 |
| Attorney Bodoh | 156.90 | 1/1 | 156.90 |
| Attorney Edelman | 215.10 | 1/1 | 215.10 |
| Attorney Long | 122.80 | 1/1 | 122.80 |
| Attorney Strehlow | 63.10 | 1/1 | 63.10 |

[12] The court calculated each attorney's hours billed based on Defendants' initial chart, Defendants' representations as to which law offices represented them at each phase, and the billing entries. Defendants bear the consequences of any imprecision.

| | | | |
|---|---|---|---|
| Attorney Lebel | 43.60 | 1/1 | 43.60 |
| Attorney Debeaupuis | 1.00 | 1/1 | 1.00 |
| Paralegal Devoid-Siel | 3.70 | 1/1 | 3.70 |
| Paralegal Pinkham | 9.00 | 1/1 | 9.00 |
| **Total** | **669.90**[13] | | **669.90** |

**a. Duplicative Hours.**

Plaintiff Launderville argues that Defendants' requested hours "must be adjusted" because they "employed a total of 18 attorneys in this case[]" and "[t]he work of that many attorneys on a case of this kind necessarily results in some duplication and excess[.]" (Doc. 424 at 7.) "[A] reduction in a fee award is appropriate where overstaffing of a case results 'in needless duplication of work and retention of unnecessary personnel.'" *New York State Rifle & Pistol Ass'n, Inc. v. Nigrelli*, 2023 WL 6200195, at *15 (N.D.N.Y. Sept. 22, 2023) (citations omitted). However, "many tasks require or benefit from the attention of more than one attorney[,]" and "the presence and collaboration of multiple lawyers do not, by themselves, indicate needless duplication." *Broome v. Biondi*, 17 F. Supp. 2d 230, 235 (S.D.N.Y. 1997); *see also Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989) ("[T]he participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.") (citation omitted).

As Defendants point out, this case involved complex ERISA issues and has been litigated for over ten years, including two appeals, which has led to difficulty in retaining consistent counsel due to attorney retirements. Defendants changed counsel during the litigation period, which, from the court's perspective, furthered the goals of Fed. R. Civ. P. 1. Plaintiff Launderville does not identify any instances of excessive or duplicative billing, and Defendants' sizeable team of attorneys alone does not warrant a reduction in the claimed hours. *Cf. Carey*, 711 F.2d at 1146 (finding a reduction in the claimed hours was appropriate because defendant "points to numerous entries in plaintiffs' fee

[13] Defendants represent that 752.20 hours is the total for Phase III. As part of their calculation, Defendants claim their Primmer, Piper, Eggleston & Cramer, PC ("PPEC") attorneys billed 540.60 hours. However, in Defendants' initial chart, *see supra* page 4, the hours of all PPEC attorneys total 458.30. The court uses the latter amount rather than combing through hundreds of billing entries to determine the exact hours that each PPEC attorney billed.

application that were either excessive or duplicative[]").

**b. Phase-Based Approach.**

Plaintiff Launderville contends that Defendants' phase-based calculation "must be rejected because it reflects the sort of simplistic mathematical approach that was rejected by" the Supreme Court in *Hensley*, 461 U.S. 424. (Doc. 424 at 3.) There, the plaintiffs brought multiple civil rights claims against the defendants and were successful on some claims but unsuccessful on others. The district court, when calculating an award of attorney's fees for the plaintiffs under 42 U.S.C. § 1988, "refused to eliminate from the award hours spent on unsuccessful claims[,]" explaining:

> [The defendants'] suggested method of calculating fees is based strictly on a mathematical approach comparing the total number of issues in the case with those actually prevailed upon. Under this method no consideration is given for the relative importance of various issues, the interrelation of the issues, the difficulty in identifying issues, or the extent to which a party may prevail on various issues.

*Hensley*, 461 U.S. at 428 (internal quotation marks omitted). The Supreme Court held the district court "did not err in refusing to apportion the fee award mechanically on the basis of [plaintiffs'] success or failure on particular issues." *Hensley*, 461 U.S. at 438. In doing so, it reasoned that, in some cases, "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories[]" and "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* at 435.

Although *Hensley* advised against "claim counting" in certain circumstances, (Doc. 424 at 4) (internal quotation marks omitted), it involved an award of attorney's fees for multiple plaintiffs based on interconnected and inseparable civil rights claims and issues. Here, the court is awarding Defendants attorney's fees only for hours spent defending against Plaintiff Launderville's ERISA claims which were "distinct" from the Remaining Plaintiffs' ERISA claims. *Hensley*, 461 U.S. at 440. This exercise necessitates separating the hours spent defending those claims from hours spent on other matters. Defendants' method of doing so is reasonable, and although the court does not adopt their purely phase-based approach, their methodology provides useful reference points.

c. **Non-Recoverable Hours.**

Plaintiff Launderville claims that one-sixth of the total hours billed at Phase I is an unreasonable amount because, although she was one of six Plaintiffs, the trial stage "was driven by issues affecting the claims for relief to the whole deferred compensation [P]lan and its [Plan P]articipants generally." (Doc. 424 at 4.) The court agrees that Phase I predominantly involved adjudicating the rights of the Plan Participants generally, of which Plaintiff Launderville was only one of sixteen, including issues such as whether the Plan was a "top hat plan," what happens when a "top hat plan" fails, and the vesting of the Plan Participants' rights where the underlying employment records have been destroyed. This phase of the litigation involved calculating the Restoration Award, identifying the Plan Participants, and notifying them of the action. *Id.*

Many of Defendants' requested hours in Phase I pertain to issues for which they cannot recover attorney's fees, including their contribution counterclaim against Plaintiff Launderville, which was the topic of extensive motion to amend briefing, motion to strike briefing, and post-trial briefing. *See* Docs. 101, 118, 119, 120, 135, 147, 214, 218. Accordingly, the court will not award one-sixth of Defendants' attorney's fees incurred in Phase I, finding this percentage is imprecise and unjustified.

Regarding Phase II, Defendants seek one-third of the total hours because they claim two out of six issues on appeal involved Plaintiff Launderville. However, a mathematical, claim-counting approach for the first appeal is inappropriate because few issues solely concerned Plaintiff Launderville, whereas most of the litigation applied to Plaintiffs' claims collectively.[14] The appeal also involved Defendants' contribution claim. *See Browe v. CTC Corp.* ("*Browe I*"), 15 F.4th 175, 199 (2d Cir. 2021) (determining whether the district court erred in ordering Defendant Laumeister and Plaintiff Launderville "to pay 60% and 40% of th[e] award, respectively, directly to the Plan[]").

---

[14] These issues included whether the statute of limitations barred Plaintiffs' claims, whether the Plan was a "top hat plan," how the Restoration Award was to be calculated, how the Restoration Award was to be distributed, and whether the court properly admitted Plaintiffs' Exhibit 3 at trial. *See Browe v. CTC Corp.*, 15 F.4th at 175.

For Phase III, Defendants request attorney's fees for all hours spent on this case after August 18, 2023, including the second appeal to the Second Circuit. They reason that by that point, all the Plan Participants who were entitled to payment had been paid in full. One of the predominant issues on the second appeal, however, was whether this court properly allocated the degrees of fault for Defendants' contribution claim. Another issue on appeal concerned Defendants' standing to appeal. *See Browe v. Laumeister* ("*Browe II*"), 2025 WL 471125, at *4 (2d Cir. Feb. 12, 2025) (extensively briefing "Defendants' statutory and constitutional standing to bring their cross-appeal[]"). The portion that involved Plaintiff Launderville's ERISA claims was equally dedicated to Plaintiff Browe's ERISA claims. *See id.* ("Defendants argue that the district court erred by allowing [Plaintiffs] Launderville *and Browe* to receive benefits because they are no longer participants in the Plan due to the running of the statute of limitations on their claims for wrongful denial of benefits.") (emphasis supplied). Defendants cannot obtain attorney's fees from Plaintiff Browe. Accordingly, awarding Defendants attorney's fees based on all hours billed during Phase III is inconsistent with the record.

Because many of Defendants' claimed hours for all three phases were spent on matters for which they cannot recover attorney's fees, the court finds a fifty percent across-the-board reduction to be reasonable.[15] The fifty percent reduction reflects Plaintiff Launderville's status as the lead Plaintiff in this case, the focus on numerous complicated issues pertaining to her claims,[16] and the payment to the Plan Participants in

---

[15] *See, e.g.*, *Chaparro v. John Varvatos Enters., Inc.*, 2021 WL 5121140, at *2 (2d Cir. Nov. 4, 2021) (finding "the district court acted well within its discretion in reducing . . . [a]ppellants' claimed hourly total by 50%[]"); *Schuman v. Aetna Life Ins. Co.*, 2017 WL 2662191, at *9 (D. Conn. June 20, 2017) (applying a seventy-five percent reduction to plaintiff's claimed hours because "[m]any of the hours billed by [plaintiff]'s attorneys clearly were spent on unsuccessful claims[]" for which he cannot recover attorney's fees); *Derhem v. Bay House Miami Condo. Ass'n*, 2025 WL 4684462, at *8 (S.D. Fla. Dec. 29, 2025) (applying a forty percent reduction to defendant's claimed hours "given the need to deduct the healthy portion of work that went towards the non-recoverable claims[]"), *report & recommendation adopted*, 2026 WL 628233 (S.D. Fla. Mar. 6, 2026).

[16] As this court previously recognized, "the primary focus of the litigation" centered "around the claims of Plaintiffs Launderville and Browe, whose account balances were the two largest within

August 2023. Defendants could have taken the position that they would pay none of the Plan Participants until the litigation was finally resolved. Many of the Plan Participants were elderly, and this would have deprived them of a recovery from the Plan in their lifetime. Defendants took the reasonable position that all claims which could be paid in full should be paid in full. This narrowed the issues for litigation and produced a just result for the Plan Participants. The court also considers the fact that Defendants have exercised moderation in seeking fees based on historic rates instead of current ones. In addition, after Phase I, Defendants' approach to the litigation became more pragmatic, reasonable, and efficient, and any delay was not attributable to litigation strategies employed by them.[17] At Phases II and III, Defendants' counsel's work was exemplary and achieved an excellent result for their clients.

Applying a fifty percent across-the-board reduction to the adjusted hours at each phase results in the following reasonable number of hours:

| Phase | Adjusted Hours | Court's Reduction | Reasonable Hours |
|---|---|---|---|
| Phase I | 190.00 | 50% | 95.00 |
| Phase II | 307.90 | 50% | 153.95 |
| Phase III | 669.90 | 50% | 334.95 |
| **Total** | **1167.80** | | **583.90** |

Applying the reasonable hourly rates to the reasonable number of hours results in a presumptively reasonable fee at each stage in the litigation as follows:

| | | | **Phase I** | | |
|---|---|---|---|---|---|
| **Timekeeper** | **Adjusted Hours** | **Court's Reduction** | **Reasonable Hours** | **Reasonable Rate** | **Presumptively Reasonable Fee** |

---

the Plan, and whose claims which were time-barred led to disproportionate expense and multiple appeals." (Doc. 414 at 24-25) (alteration adopted) (internal quotation marks and citation omitted).

[17] Defendants' original counsel's conduct during Phase I of the litigation was problematic. On August 16, 2016, the court imposed a sanction of attorney's fees against Defendants due to Attorney Kenlan's failure to comply with a court order requiring him to provide a certification of assets to Plaintiffs. *See* Doc. 53. On December 1, 2017, the court ordered Defendants to pay Plaintiffs' costs associated with deposing Defendants' expert witness due to Attorney Kenlan's over three-months late disclosure of the expert witness. *See* Doc. 182.

| | | | | | |
|---|---|---|---|---|---|
| Attorney Kenlan | 190.00 | 50% | 95.00 | $223 | $21,185.00 |
| **Total** | **190.00** | | **95.00** | | **$21,185.00** |

| **Phase II** | | | | | |
|---|---|---|---|---|---|
| **Timekeeper** | **Adjusted Hours** | **Court's Reduction** | **Reasonable Hours** | **Reasonable Rate** | **Presumptively Reasonable Fee** |
| Attorney Kenlan | 129.20 | 50% | 64.60 | $223 | $14,405.80 |
| Attorney McClintock | 88.70 | 50% | 44.35 | $225 | $9,978.75 |
| Attorney Bodoh | 82.10 | 50% | 41.05 | $385 | $15,804.25 |
| Attorney Lax | 0.43 | 50% | 0.22 | $360 | $79.20 |
| Attorney Theodore | 0.10 | 50% | 0.05 | $230 | $11.50 |
| Attorney Mattson | 3.27 | 50% | 1.63 | $294 | $479.22 |
| Attorney Gillis | 4.10 | 50% | 2.05 | $225 | $461.25 |
| **Total** | **307.90** | | **153.95** | | **$41,219.97** |

| **Phase III** | | | | | |
|---|---|---|---|---|---|
| **Timekeeper** | **Adjusted Hours** | **Court's Reduction** | **Reasonable Hours** | **Reasonable Rate** | **Presumptively Reasonable Fee** |
| Attorney McClintock | 11.00 | 50% | 5.50 | $225 | $1,237.50 |
| Attorney Galle | 5.60 | 50% | 2.80 | $225 | $630.00 |
| Attorney Winer | 34.30 | 50% | 17.15 | $239 | $4,098.85 |
| Attorney Zaharias | 0.80 | 50% | 0.40 | $360 | $144.00 |
| Attorney Corwin | 1.40 | 50% | 0.70 | $250 | $175.00 |
| Attorney Johnson | 0.80 | 50% | 0.40 | $400 | $160.00 |
| Attorney Quarles | 0.80 | 50% | 0.40 | $425 | $170.00 |
| Attorney Bodoh | 156.90 | 50% | 78.45 | $385 | $30,203.25 |
| Attorney | 215.10 | 50% | 107.55 | $450 | $48,397.50 |

| | | | | | |
|---|---|---|---|---|---|
| Edelman | | | | | |
| Attorney Long | 122.80 | 50% | 61.40 | $393 | $24,130.20 |
| Attorney Strehlow | 63.10 | 50% | 31.55 | $313 | $9,875.15 |
| Attorney Lebel | 43.60 | 50% | 21.80 | $300 | $6,540.00 |
| Attorney Debeaupuis | 1.00 | 50% | 0.50 | $310 | $155.00 |
| Paralegal Devoid-Siel | 3.70 | 50% | 1.85 | $200 | $370.00 |
| Paralegal Pinkham | 9.00 | 50% | 4.50 | $175 | $787.50 |
| **Total** | **669.90** | | **334.95** | | **$127,073.95** |

Defendants are thus awarded a total of $189,478.92 in attorney's fees against Plaintiff Launderville.

**C. The Remaining Plaintiffs' Motion for Attorney's Fees and Costs.**

The Remaining Plaintiffs request an award of $657,160.00 in attorney's fees[18] and $24,547.89 in costs and expenses, totaling $681,707.89.[19] They break down their attorney's fees request as follows:

| Timekeeper | Hours | Hourly Rate | Fees |
|---|---|---|---|
| Attorney Woolmington | 4.80 | $350 | $1,680.00 |
| Attorney Stasny | 1,243.70 | $350 | $435,295.00 |
| Attorney Bernal | 538.20 | $350 | $188,370.00 |
| Administrative Staff | 212.10 | $150 | $31,815.00 |
| **Total** | **1,998.80** | | **$657,160.00** |

**1. Attorney's Fees.**

[18] Defendants point out that, in the Remaining Plaintiffs' September 24, 2025 fee motion, they sought $465,000 in attorney's fees. Although the Remaining Plaintiffs now request an increased amount, they are permitted to do so because their prior request was only "a fair estimate of the amount sought[.]" (Doc. 403 at 2.)

[19] In their motion, the Remaining Plaintiffs initially sought $682,940.39 in attorney's fees and costs. However, they filed supplemental documents, reducing their request by $1,232.50 because they had collected from Defendants $567.50 that the court "ordered Defendants to pay as a sanction for willful disobedience of the [c]ourt's order to disclose certain information" and $665.00 "pursuant to a second order of the [c]ourt for violating the scheduling order[.]" (Doc. 422-1 at 1.)

As a threshold issue, Defendants argue that any award of attorney's fees to the Remaining Plaintiffs should be offset by the amount still due and unpaid to Defendants for their contribution counterclaim. They cite *Merigan v. Liberty Life Assurance Co. of Bos.*, 839 F. Supp. 2d 445 (D. Mass. 2012), wherein the court offset the plaintiff's award of attorney's fees under ERISA by the amount that the plaintiff still owed the defendant for its counterclaim. Defendants in this case, however, are not entitled to an offset because Plaintiff Launderville, not the Remaining Plaintiffs, owes Defendants the contribution payment. *Cf. id.* at 448 ("The right of setoff (also called offset) allows parties that owe each other money to apply their mutual debts against each other thereby avoiding the absurdity of making A pay B when B owes A.") (internal quotation marks and citation omitted); *see also In re Ampal-Am. Israel Corp.*, 545 B.R. 802, 814 (Bankr. S.D.N.Y. 2016) (explaining that, to apply an offset, the debts must be "due to and from the same persons in the same capacity[]") (internal quotation marks and citation omitted).

Defendants further claim the Remaining Plaintiffs' fee award "should be initially set at $53,236.50, what Plaintiffs would likely pay counsel on a 30% contingent fee agreement[,]" contending that "if [the Remaining] Plaintiffs' representation was on a contingency basis, as Defendants believe it is, and an ordinary 30% of gross recovery model were used, because [the Remaining] Plaintiffs recovered $174,293.33, [they] would pay counsel no more than $53,236.50." (Doc. 423 at 12 & n.11.) The Remaining Plaintiffs' counsel is silent on the issue of whether the case was taken on a contingency fee arrangement. "[T]he actual billing arrangement" between a party and their counsel "is a significant, though not necessarily controlling, factor in determining what fee is 'reasonable.'" *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001) (footnote omitted). The court thus considers a thirty percent contingency agreement as a potential benchmark but does not accord it dispositive effect because no authority constrains an award of reasonable attorney's fees to the arrangement between the parties and their counsel. At the same time, it is undisputed that the Remaining Plaintiffs' attorney's fees request is many times higher than they would otherwise pay. Defendants concede that the Remaining Plaintiffs can obtain attorney's fees for hours

expended on their prior and current fee motions.

The Second Circuit has "repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation." *Cole v. Foxmar, Inc.*, 160 F.4th 28, 36 (2d Cir. 2025) (internal quotation marks and citation omitted); *Barbour v. City of White Plains*, 700 F.3d 631, 635 (2d Cir. 2012) (stating that in the civil rights context, the Second Circuit has "repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation[]") (internal quotation marks and citation omitted); *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 602 (2d Cir. 2020) (same in the Fair Labor Standards Act context). "[P]roportionality should never be 'outcome determinative' in assessing the reasonableness of a fee award under a fee-shifting statute[,]" such as 29 U.S.C. § 1132(g)(1). *Cole*, 160 F.4th at 36-37 (quoting *Fisher*, 948 F.3d at 606); *see also Millea*, 658 F.3d at 169 ("The whole purpose of fee-shifting statutes is to generate attorney['s] fees that are *disproportionate* to the plaintiff's recovery.") (emphasis in original). In addition, a "fee award 'should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.'" *Raja v. Burns*, 43 F.4th 80, 88 (2d Cir. 2022) (quoting *Hensley*, 461 U.S. at 435).

**a. Reasonable Hourly Rate.**

The Remaining Plaintiffs' attorneys are employed at the law firm Witten, Woolmington, Campbell & Bernal, P.C. ("WWCB").[20] In an affidavit, Attorney Woolmington asserts that he was a named partner at WWCB and practiced civil litigation in Vermont federal and state courts from 1983 until 2022. According to Attorney Stasny's affidavit, he has practiced civil litigation at the trial and appellate level in Vermont since 2016. He began working on this case while an associate at WWCB, but he became a named partner in 2018. Attorney Bernal was also a named partner at WWCB and had practiced civil litigation at the trial and appellate level in New York from 2005 until 2012 and in Vermont from 2012 until 2018.

[20] WWCB was later renamed several times.

In his affidavit, Attorney Stasny represents that, "[a]t the commencement of our representation of Plaintiffs in this case in 2015, our firm charged hourly rates of $210 for attorney time and $110 for paralegals' time[,]" but over time, WWCB "has raised hourly rates periodically, with incremental increases taking effect in different years for different clients." (Doc. 420-3 at 5, ¶¶ 23-24.) Since 2025, WWCB's "standard hourly rates have been $350 for attorneys' time and $150 for paralegals' time[.]" *Id.* at ¶ 25.

Defendants argue that a $350 hourly rate is unreasonable because the Remaining Plaintiffs "were never charged that rate, nor was that rate effective at any relevant time." (Doc. 423 at 2.) Although Defendants contend that WWCB's 2015 rates should be applied, "compensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed[.]" *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989). "Compensation for this delay is generally made 'either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.'" *Perdue*, 559 U.S. at 556 (quoting *Jenkins*, 491 U.S. at 282).[21]

"[I]n order to provide adequate compensation where the services were performed many years before the award is made, the rates used by the court to calculate the lodestar should be 'current rather than historic hourly rates[.]'" *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998); *see also Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) ("The rates used by the court should be current rather than historic hourly rates.") (internal quotation marks and citation omitted); *Lochren v. Cnty. of Suffolk*, 344

[21] Defendants argue that *Perdue* and *Jenkins* involved fee enhancements under 42 U.S.C. § 1988 and thus do not apply here. However, their holdings have been consistently applied in ERISA cases. *See, e.g.*, *Gesualdi v. Reid*, 198 F. Supp. 3d 211, 222 (E.D.N.Y. 2016) (acknowledging that, in the ERISA context, "plaintiffs are entitled to current rather than historic rates under Second Circuit case law"); *LaScala v. Scrufari*, 859 F. Supp. 2d 509, 516 (W.D.N.Y. 2012) (explaining that, in an ERISA action, "the rates used by the court to calculate the lodestar should be current rather than historic hourly rates[]") (internal quotation marks and citation omitted); *Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Coop. Funds v. Tiki Indus., Inc.*, 2021 WL 242266, at *6 (E.D.N.Y. Jan. 25, 2021) (explaining that, in an ERISA action, "[r]ates should be current rather than historic hourly rates[]") (internal quotation marks and citation omitted).

F. App'x 706, 710 (2d Cir. 2009) (finding the district court erred in failing to apply the "current rates as of 2008, the year of the fee award[]" and remanding "for the district court to determine and apply current rates"). Defendants contend that the delays in this case were "caused in no small part by Plaintiffs' own over-litigation." (Doc. 423 at 4.) They are correct that "[t]he court is not necessarily required . . . to award attorney['s] fees based on current hourly rates when the delay is due in whole or in substantial part to the fault of the party seeking fees." *Gierlinger*, 160 F.3d at 882. The court will thus consider this as well.

ERISA litigation is a distinct practice area that involves bench trials, limited or no discovery, and often difficult issues of interpretation. This case has involved over ten years of vigorous and at times unnecessarily contentious litigation, two appeals, and complex and novel issues concerning contribution, the Plan's status as a top hat plan, the aftermath of a failed top hat plan, statute of limitations issues, breaches of fiduciary and statutory duties, and the calculation of the Restoration Award all in the context of a case in which the vast majority of the underlying records had been destroyed. This district has recently found hourly rates similar to $350 for experienced senior attorneys and $150 for administrative staff to be reasonable.[22] Moreover, the $350 hourly rate for the Remaining Plaintiffs' partner-level attorneys is less than the hourly rates of Defendants' attorneys who billed the majority of hours, including Attorney Bodoh who had a $385 hourly rate, Attorney Long who had a $393 hourly rate, and Attorney Edelman who had a $450 hourly rate. The court found those rates to be reasonable.

[22] *See Courthouse News Serv. v. Gabel*, 2026 WL 1694596, at *11 (D. Vt. June 11, 2026) (finding an hourly rate of $135 for paralegals to be reasonable and an hourly rate of $300 for Vermont local counsel to be reasonable even though they performed administrative tasks and had "limited involvement"); *Concepts NREC, LLC v. Qiu*, 2025 WL 2793049, at *3 (D. Vt. July 21, 2025) (finding an hourly rate of $350 for an experienced attorney to be reasonable in light of "the complexity of the legal issues"), *report & recommendation adopted*, 2025 WL 3012209 (D. Vt. Oct. 28, 2025); *Jankowski v. Centurion of Vt., LLC*, 2024 WL 3755347, at *9 (D. Vt. Aug. 12, 2024) (finding an hourly rate of $375 for an experienced partner to be reasonable); *Sullivan v. Saint-Gobain Performance Plastics Corp.*, 2021 WL 1851404, at *2 (D. Vt. May 10, 2021) (finding hourly rates of $350 for a partner and $110 for paralegals to be reasonable).

For the foregoing reasons, the court finds an hourly rate of $350 for Attorneys Woolmington, Stasny, and Bernal and an hourly rate of $150 for the administrative staff to be reasonable.

**b. Reasonable Number of Hours.**

The Remaining Plaintiffs claim 1,998.80 represents the reasonable number of hours that their attorneys spent pursuing their claims in this case. In calculating this amount, the Remaining Plaintiffs excluded 267.60 attorney hours and 23.30 administrative staff hours, as those hours were spent on Plaintiff Launderville's and Plaintiff Browe's claims, for which they cannot recover attorney's fees. The court agrees with Defendants that it is inconceivable that only approximately thirteen percent of the Remaining Plaintiffs' counsel's time was spent on the two lead Plaintiffs' claims, which had factual and legal complexities and complications shared by no other Plaintiffs or Plan Participants. The court therefore rejects the Remaining Plaintiffs' calculation of hours expended on recoverable claims.

In its April 23, 2026 Opinion and Order, the court found that Defendants' ability to satisfy an award of attorney's fees "weighs in favor of awarding the Remaining Plaintiffs attorney's fees up to Defendants' March 18, 2024 payment of the court's December 16, 2022 Remedial Award but not thereafter, as none of the proceedings that followed pertained to the Remaining Plaintiffs' claims or involved their benefits." (Doc. 414 at 22.) Defendants point out that "[t]he receipts signed by each Remaining Plaintiff and filed in support of Defendants' Affidavit of Payment to Plan Participants show that each payment had been made and certified by the last day of August[] 2023." (Doc. 419 at 8.) They thus argue "the claims of each Remaining Plaintiff had been fully resolved" by that point, *id.* at 9, and "[a]ll hours incurred after August 28, 2023 . . . should be denied." (Doc. 423 at 6.) While not adopting that stark of an approach, the court agrees that as of August 2023, Defendants had satisfied their obligation to every Plan Participant.

**i. Pre-Suit Fees.**

Defendants contend that the Remaining Plaintiffs included hours "pre-dating the

filing of this case[]" when "[p]re-suit fees in ERISA matters are not compensable." *Id.* at 5. However, only pre-suit fees "incurred during the initial administrative process[]" are unrecoverable in ERISA actions. *Peterson v. Cont'l Cas. Co.*, 282 F.3d 112, 121 (2d Cir. 2002). Otherwise, a plaintiff "is entitled to collect a reasonable amount for fees and costs incurred in initiating suit in the [d]istrict [c]ourt. For example, time spent drafting the complaint is properly considered part of the litigation in a district court, even though it occurs prior to filing." *Id.* at n.5. The Remaining Plaintiffs' pre-suit hours involved the initiation of this action, including researching and drafting the complaint, rather than any administrative proceedings. They are thus entitled to receive attorney's fees for these hours.

**ii. Non-Recoverable Hours.**

The Remaining Plaintiffs assert they have excluded "the majority of time" spent in connection with their second appeal, (Doc. 420 at 3), because in *Browe II* only the calculation of the Restoration Award, an issue on which the Remaining Plaintiffs did not prevail, involved the Remaining Plaintiffs' claims.[23] They also assert that they have excluded all hours related to Defendants' contribution claim against Plaintiff Launderville.

Despite these alleged reductions, the Remaining Plaintiffs seek fees for all hours spent during the trial stage of this litigation and nearly every hour associated with the first appeal in *Browe I* even though a central issue on appeal involved Plaintiff Launderville's liability to the Plan. Approximately one hundred timesheet entries include Plaintiff Launderville, and approximately fifty entries include Plaintiff Browe.[24]

[23] The calculation of the Restoration Award occupied four pages of Plaintiffs' fifty-two-page opening brief and one page of their forty-three-page reply brief. Otherwise, Plaintiffs' briefings and the Second Circuit's decision concerned issues for which the Remaining Plaintiffs cannot recover attorney's fees.

[24] As some examples, the Remaining Plaintiffs' counsel billed the following hours with the following descriptions:

- On May 17, 2016, he billed 7.10 hours: "Outline remaining issues for presentation at the hearing on Plaintiffs' Motion for Non-Possessory Writ of Attachment. Consult with client Lucille Launderville via telephone

Because the Second Circuit found Plaintiffs Launderville and Browe were "not 'participants' in the Plan" and were "not entitled to recover benefits from the Plan[,]" *Browe II*, 2025 WL 471125, at *5, time spent litigating their claims is not compensable. The court finds an across-the-board reduction is appropriate for this purpose and notes the four Remaining Plaintiffs played a relatively passive role in the litigation. The court assesses a thirty percent reduction on this basis, finding the Remaining Plaintiffs' calculation of hours expended is unreliable and not supported by the record.

**iii. Excessive Billing.**

With their motion, the Remaining Plaintiffs submitted timesheets, rather than invoices, which is proper. However, their counsel's block billing style makes it difficult for the court to discern whether certain hours are reasonable. *See Cole v. Foxmar, Inc.*, 2026 WL 2056451, at *7 (D. Vt. July 16, 2026) ("Block billing is not automatically

---

regarding her knowledge of facts relevant to issues at the hearing. Consult with client Donna Browe via telephone regarding the same. Research substantive issues relevant to the hearing. Review new information sent by client L. Launderville."

- On September 23, 2016, he billed 0.20 hours: "Research legal issues affecting case strategy and negotiations in mediation. Call clients D. Browe and L. Launderville regarding discovery."
- On December 12, 2016, he billed 0.20 hours: "Review discovery responses to assist in preparing clients D. Browe and L. Launderville for their depositions."
- On January 5, 2017, he billed 0.40 hours: "Review e-mail correspondence with attorney P. Bernal and client L. Launderville regarding the deposition of Defendant Laumeister. Review the PDF transcripts of D. Browe and L. Launderville's depositions[.]"
- On January 12, 2017, he billed 0.40 hours: "E-mail client L. Launderville and call client D. Browe regarding deposition transcripts."
- On March 4, 2018, he billed 4.50 hours: "Travel to Burlington for the continuation of trial. Meet with clients Lucille Launderville and Donna Browe for trial preparation. Prepare for Monday trial proceedings."
- On December 14, 2020, he billed 0.30 hours: "Emails with L. Launderville and with D. Browe about the appeal."

(Doc. 420-4 at 12, 17, 21, 22, 35, 43.)

prohibited; however, the practice 'makes it difficult for the court to assess the reasonableness of individual activities.'") (alteration adopted) (citation omitted). The court imposes an additional ten percent reduction to the Remaining Plaintiffs' claimed hours for billing entries related to administrative tasks. *See, e.g.*, *Torcivia v. Suffolk Cnty.*, 437 F. Supp. 3d 239, 253 (E.D.N.Y. 2020) ("The [c]ourt applies a 10% reduction of all hours billed to reflect time spent on clerical tasks.") (citation omitted); *Cole*, 2026 WL 2056451, at *6 (reducing attorney's hourly rate to $75 for administrative tasks).

**iv. Counsel's Conduct.**

Finally, Defendants are correct that this case was over-litigated and unnecessarily contentious. Routine matters which could have been resolved without judicial involvement took a much more acrimonious path. Plaintiffs' counsel elicited complaints of incivility from opposing counsel, which the court witnessed firsthand:

> [A]t times, [Plaintiffs' counsel] was unnecessarily uncooperative with both opposing counsel and with the court which made the proceedings needlessly adversarial. The court addressed this issue in open court, reminding counsel to keep his arguments respectful; in writing; and in a chambers conference at Defendants' counsel's request. Cooperation would have resulted in a better and more expeditious resolution consistent with Fed. R. Civ. P. 1.

(Doc. 359 at 6 n.2.)

Although litigation often involves conflict, in the undersigned's over twenty years of judicial experience, this case was in the top three percent of contentious cases. For the most part, it was Plaintiffs' counsel's combative litigation style and Defendants' original counsel's vacation schedule that caused the friction. Once Defendants' counsel was changed, their conduct generally ceased to be problematic. The court therefore finds a further across-the-board reduction of fifteen percent to be appropriate on this basis, not as a punishment or a sanction but to reflect excessive billing for issues that could and should have been resolved by consent.

For the reasons stated above, the court finds a total fifty-five percent across-the-board reduction is reasonable. *See Charles v. Seinfeld*, 2022 WL 889162, at *7 (S.D.N.Y. Mar. 25, 2022) (recognizing that courts have applied around fifty percent reductions "to

address overbilling issues, driven by case and billing specifics[]") (collecting cases); *see also Degreenia-Harris v. Life Ins. Co. of N. Am.*, 2021 WL 5979683, at *12 (D. Vt. Dec. 17, 2021) ("Because the documentation of hours submitted by [p]laintiff is deficient and reflects excessive or unauthorized hours, the court finds it appropriate to apply an across-the-board 70% reduction in requested hours."). This results in the following presumptively reasonable fee:

| Timekeeper | Hours | Court's Reduction | Reasonable Hours | Reasonable Rate | Presumptively Reasonable Fee |
|---|---|---|---|---|---|
| Attorney Woolmington | 4.80 | 55% | 2.16 | $350 | $756.00 |
| Attorney Stasny | 1,243.70 | 55% | 559.67 | $350 | $195,884.50 |
| Attorney Bernal | 538.20 | 55% | 242.19 | $350 | $84,766.50 |
| Administrative Staff | 212.10 | 55% | 95.45 | $150 | $14,317.50 |
| **Total** | **1,998.80** | | **899.47** | | **$295,724.50** |

The court therefore awards the Remaining Plaintiffs attorney's fees in the amount of $295,724.50.

**2. Costs and Expenses.**

The Remaining Plaintiffs seek to recover $24,547.89 in costs and expenses related to court costs, courier costs, travel costs, and other general litigation costs. In calculating this amount, they properly excluded certain costs and expenses associated with *Browe II*.

In the Second Circuit, "attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989). These expenses must be "incidental and necessary" to the representation. *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987). Recoverable expenses include "[i]dentifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs[.]" *Kuzma v. I.R.S.*, 821 F.2d 930, 933 (2d Cir. 1987).

Defendants do not object to the Remaining Plaintiffs' requested costs and expenses. The court finds the costs and expenses to be reasonable and thus awards the Remaining Plaintiffs $24,547.89 for costs and expenses for a total award of $320,272.39.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART Defendants' supplemental renewed motion for attorney's fees, (Doc. 419), and GRANTS IN PART and DENIES IN PART the Remaining Plaintiffs' renewed motion for attorney's fees (Doc. 420.) Judgment shall be entered for Defendants in the amount of $189,478.92 for attorney's fees against Plaintiff Launderville. Judgment shall be entered for Plaintiffs Tyler Burgess, Bonnie Jamieson, Philip Jordan, and the Estate of Beverly Burgess in the amount of $320,272.39 for attorney's fees and costs against Defendants.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 10th day of September, 2026.

Christina Reiss, Chief Judge
United States District Court